ORIGINAL

FILED
SEP 22 2006
U.S. COURT OF FEDERAL CLAIMS

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
BID PROTEST

COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, *et al.*, :

Plaintiffs, :

v. : Case No. 06-666 C

THE UNITED STATES OF AMERICA, :

Defendant. :

* * * ooo0ooo * * *

**MEMORANDUM IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

In violation of the requirement of the Randolph-Sheppard Act, 20 U.S.C. § 107 *et. seq.*, that State licensing agencies for the blind and their licensed blind vendors receive a priority to operate all cafeterias on federal property, the United States Department of the Air Force ("the Air Force") has refused to renew its contract with the Colorado Department of Human Services, Division of Vocational Rehabilitation ("Colorado DVR") to operate the cafeteria at Buckley Air Force Base and, by letter of September 18, 2006, further refused to apply the Randolph-Sheppard priority to the renovated cafeteria that the Air Force plans to re-open at the same location in or about December 2006. After repeated unsuccessful attempts to resolve this dispute informally, Colorado DVR has invoked its right under the Randolph-Sheppard Act to arbitrate this dispute with the Air Force.

As explained below, because (1) plaintiffs are very likely to prevail on the merits, (2) without injunctive relief, plaintiffs will be irreparably harmed and have no adequate remedy at law, (3) a change from the status quo of Colorado DVR and its blind vendor operating the

cafeteria at Buckley will harm plaintiffs far more than it will harm the Air Force, and (4) the public interest favors enforcement of the Randolph-Sheppard priority, this Court should issue a preliminary injunction to prevent the Air Force from awarding any contract to operate the renovated cafeteria at Buckley Air Force Base to any entity other than the Colorado DVR and its licensed blind vendor, or from entering into any other arrangement for the operation of that cafeteria by any entity other than Colorado DVR and Mr. Rightsell, until the Randolph-Sheppard arbitration is concluded.

## APPLICABLE LAW AND FACTS

Congress enacted the Randolph-Sheppard Act "for the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting . . . ."[1] To achieve this goal, Congress mandated that all federal agencies provide a priority to blind persons to operate vending facilities on federal properties.[2] Vending facilities include cafeterias.[3]

The Randolph-Sheppard Act is administered at the federal level by the Department of Education and its Rehabilitation Services Administration, which authorizes a "state licensing agency" in each state to train and license blind entrepreneurs and negotiate with federal agencies located within the state to create sites on which a business can be operated.[4] The Colorado

---

[1] 20 U.S.C. § 107(a).

[2] 20 U.S.C. § 107(b).

[3] 20 U.S.C. § 107e(7); *see NISH v. Cohen*, 247 F.3d 197, 201-06 (4th Cir. 2001); *NISH v. Rumsfeld*, 348 F.3d 1263, 1270-71 (10th Cir. 2003); *see also Washington State Dep't of Servs. for the Blind v. United States*, 58 Fed. Cl. 781, 788-89 (2003).

[4] 20 U.S.C. §§ 107a, 107b

Department of Human Services, Division of Vocational Rehabilitation is the state licensing agency for Colorado.[5]

In October 1999, the Air Force awarded to Colorado DVR the contract to operate the High Frontier Dining Facility at Buckley Air Force Base.[6] The High Frontier Dining Facility is a cafeteria that serves as the main dining facility for all personnel stationed at Buckley.[7] Since October 2005, Colorado DVR has assigned Steven Rightsell, a licensed blind vendor, to operate the High Frontier Dining Facility.[8]

In or about May 2006, the Air Force informed Colorado DVR and Mr. Rightsell that it planned to close the High Frontier Dining Facility on October 1, 2006, as part of the "Air Force's plan to reduce service costs."[9] The Air Force also stated that its personnel would be measuring the cafeteria during its last four months of operation. When asked why the Air Force would be taking measurements in a building that would soon be closed,[10] the Air Force failed to respond. On July 25, 2006, the Air Force formally notified Colorado DVR that the Air Force would not exercise the next option year on the contract, which would otherwise begin October 1, 2006.[11]

---

[5] Morgan Decl. ¶ 2, attached as Ex. 1.

[6] *Id.* ¶ 4.

[7] Rightsell Decl. ¶ 3, attached as Ex. 2.

[8] *Id.*; Morgan Decl. ¶ 5.

[9] Record of Attendance and Meeting Minutes (May 22, 2006), Ex. 3; Rightsell Decl. ¶ 5.

[10] E-mail from J. Blackstone to S. Welch (May 22, 2006), Ex. 4.

[11] Notification, Ex. 5.

In or about July 2006, Colorado DVR and Mr. Rightsell learned that the Air Force did not intend, and had never intended, to close the cafeteria.[12] Instead, the Air Force plans to close the cafeteria for two months of renovations and then re-open it in December 2006. The renovated cafeteria will offer different food selections, but will continue to be the main dining facility at Buckley A.F.B.[13] Plaintiffs have been told the renovated cafeteria will contain a Starbucks, a Mexican grill, and a pasta station; that customers will go through a line or lines, place their orders for food and beverages, pay for their food and beverages, and then return to pick up their orders; and that table seating will continue to be available.[14]

Colorado DVR and Mr. Rightsell want to continue to operate the renovated cafeteria, as is their right under the Randolph-Sheppard Act, and have so informed the Air Force repeatedly, both orally and in writing.[15] On September 18, 2006, the Air Force informed DVR that it would not honor the Randolph-Sheppard priority for the operation of the renovated cafeteria.[16] The Air Force erroneously asserts that it can exempt the cafeteria from the Randolph-Sheppard Act by funding it from non-appropriated funds.[17] The Air Force plans to operate the cafeteria through its Services Division, which apparently will enter into no-bid contracts with private entities,

---

[12] Rightsell Decl. ¶ 6.

[13] *Id.* ¶¶ 7, 8; letter from D. Ziegler to T. Poole (Sept. 18, 2006), Ex. 6 ("Ziegler Letter").

[14] Rightsell Decl. ¶ 7.

[15] Letter from T. Poole to D. Ziegler (July 28, 2006), Ex. 7; E-mail from T. Poole to R. Henline (Aug. 9, 2006) Ex. 8; E-mail from Poole to J. Carter (Aug. 9, 2006) Ex. 9; Rightsell Decl. ¶ 9.

[16] Ziegler Letter ¶ 4.

[17] *Id.* ¶ 3.

including Starbucks or its franchisee, to provide food service.[18] Because the Service Division will be the official operator of the cafeteria, the Air Force erroneously asserts that it is "not a contract operation or a vending facility within the meaning of the provisions of the Randolph-Sheppard Act."[19]

Colorado DVR has requested that the Secretary of Education convene a Randolph-Sheppard arbitration to determine whether the Air Force is violating the Randolph-Sheppard Act by renovating and operating a cafeteria without first attempting to enter into an agreement with the state licensing agency.[20]

## ARGUMENT

Colorado DVR and Mr. Rightsell are entitled to a preliminary injunction to prevent the Air Force from disrupting the status quo until the Randolph-Sheppard arbitration panel can rule in this case. In the absence of an injunction, Mr. Rightsell will lose his only source of income. Colorado DVR and Mr. Rightsell are very likely to succeed in the arbitration, as all cafeterias on federal property are covered by the Randolph-Sheppard Act. The Air Force cannot exempt itself from the Randolph-Sheppard Act by renovating a cafeteria on one of its bases, nor by changing the source of funds for the operation of such a cafeteria, nor by operating the cafeteria through its Services Division. The public interest favors requiring the Air Force to comply with the law. The Air Force can proceed with its renovations and re-open the cafeteria with Colorado DVR and Mr. Rightsell as the operators, thereby suffering no harm from the injunction.

---

[18] *Id.*; Rightsell Decl. ¶ 7.

[19] Ziegler Letter ¶ 4.

[20] Letter from K. Gwinn to M. Spellings, Sec'y of Education (Sept. 20, 2006), Ex. 10.

Because (1) the plaintiffs have a strong likelihood of success on the merits, (2) they will be irreparably harmed without injunctive relief and have no adequate remedy at law, (3) the balance of hardships favors the plaintiffs, and (4) the public interest favors granting injunctive relief, plaintiffs are entitled to a preliminary injunction.[21] No one factor in the analysis is dispositive, and a weakness in one factor may be overborne by the strength of the others.[22]

## I. BECAUSE THE RANDOLPH-SHEPPARD ACT APPLIES TO ALL CAFETERIAS ON FEDERAL PROPERTY, PLAINTIFFS WILL LIKELY SUCCEED IN ARBITRATION.

The Randolph-Sheppard Act gives blind vendors a priority to operate vending facilities on "any Federal property" and requires that "one or more vending facilities be established on all Federal property . . . ."[23] A "'vending facility' means automatic vending machines, cafeterias, snack bars, cart services, shelters, counters, and such other appropriate auxiliary equipment" necessary to operate the business.[24] The Department of Defense has agreed, and the courts have consistently held, that dining facilities at military bases are "cafeterias" within the scope of the Randolph-Sheppard Act.[25]

"Priority in the operation of cafeterias by blind vendors on Federal property shall be afforded when . . . such operation can be provided at a reasonable cost, with food of a high

---

[21] *Anton/Bauer, Inc. v. PAG, Ltd.*, 329 F.3d 1343 (Fed. Cir. 2003).

[22] *Impressa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed. Cl. 826, 828 (2002).

[23] 20 U.S.C. § 107 (emphasis added).

[24] 20 U.S.C. § 107e(7) (emphasis added).

[25] *See NISH v. Cohen*, 247 F.3d 197, 205 (4th Cir. 2001); *NISH v. Rumsfeld*, 348 F.3d 1263 (10th Cir. 2003); *Matter of Intermark*, B-290925, 2002 WL 31399028 (Comp. Gen.) (2002); *Matter of Cantu Services, Inc.*, B-289666.2, B-289666.3, 2002 WL 31572230 (Comp. Gen) (2002).

quality comparable to that currently provided employees, whether by contract or otherwise."[26] Federal agencies cannot operate a cafeteria through an internal division or contract with a private entity to operate a cafeteria without first determining whether a blind manager can run the cafeteria at a comparable price and quality. The federal agency may make this determination in one of two ways: (1) issue a competitive solicitation seeking offers to run the cafeteria and invite the state licensing agency to respond, or (2) engage in direct negotiations with the state licensing agency for a cafeteria contract.[27] If direct negotiations are unsuccessful, the federal agency must issue a competitive solicitation to which the state licensing agency must be invited to respond.[28]

So strong is the priority under the Randolph-Sheppard Act that "[a]ll contracts or other existing arrangements pertaining to the operation of cafeterias on Federal property not covered by contract with, or by permit to, State licensing agencies shall be renegotiated . . . pursuant to the provisions of [the Randolph-Sheppard Act.]"[29] Here, the Air Force has done the exact opposite – it has taken a cafeteria operated under contract to the state licensing agency and taken steps to enter into other arrangements without applying the Randolph-Sheppard priority.

At Buckley, the Air Force is ignoring – or attempting to evade – the requirements of the Randolph-Sheppard Act. It plans to take a cafeteria that is currently operated by a blind manager and use an internal division to enter into new arrangements, apparently including arrangements with private entities. It has made no effort to negotiate with the state licensing agency to

---

[26] 34 C.F.R. § 395.33(a) (emphasis added).

[27] 34 C.F.R. § 395.33(b) & (d).

[28] *Id.* § 395.33(d).

[29] 34 C.F.R. § 395.33(c).

continue providing services and has not issued a competitive solicitation to which the state agency can respond.

The Air Force asserts that because the renovated cafeteria is to be operated by the Services Division, the cafeteria "will not be contracted out,"[30] but this distinction has no effect on the Randolph-Sheppard priority, which applies to all cafeterias, whether operated "by contract or otherwise."[31] Designating a particular division as the "operator" of the cafeteria does not excuse the Air Force from determining whether that division can contract with Colorado DVR and Mr. Rightsell to run the cafeteria, particularly when the division apparently plans to enter into a no-bid contract or contracts with other companies, depriving the state licensing agency of any opportunity to exercise its priority to operate the cafeteria.

The Air Force also points to the change in the source of operating funds for the renovated cafeteria from appropriated to non-appropriated funds,[32] but the Randolph-Sheppard Act and its regulations apply to all cafeterias on federal property, without regard for their funding.[33] The courts have repeatedly rejected attempts to limit the application of the Act based on the source of funds for the cafeteria.[34] The United States Commissioner of Rehabilitation Services (the federal official charged by Congress with promulgating regulations regarding the priority for the operation of cafeterias on federal property) has issued a formal opinion explicitly finding that the

---

[30] Ziegler Letter ¶ 3.

[31] 34 C.F.R. § 395.33(a)

[32] Ziegler Letter ¶ 3.

[33] 20 U.S.C. §§ 107d-3(e), 107e(7); 34 C.F.R. §§ 395.33, 395.1(d).

[34] *NISH v. Cohen*, 247 F.3d at 203-04 & n.6; *NISH v. Rumsfeld*, 348 F.3d at 1267-68.

Randolph-Sheppard Act applies to "cafeterias" without regard to the funding source. The Commissioner opined that the Act "clearly covers all types of food service operations on military bases" and that "[a]ny attempt to draw a distinction between appropriated funded cafeterias and concession cafeterias is merely a fiction . . . ."[35] Congress designated the Rehabilitation Services Administration of the United States Department of Education as "the principal agency" to interpret and implement the Act, and charged the Commissioner of Rehabilitation Services with prescribing regulations relating to the operation of cafeterias on federal property.[36] As such, their opinions are entitled to deference.[37]

The Department of Defense has previously spoken out against using non-appropriated funds to circumvent the Randolph-Sheppard Act. Less than two years ago, the Under Secretary of Defense prohibited the arrangement the Air Force proposes here, instructing all military departments that they "shall not enter into contracts or agreements" with non-appropriated fund instrumentalities when to do so "will result in the loss of jobs created pursuant to the RSA [Randolph-Sheppard Act], JWOD, or small business programs."[38] The General Services Administration has also advised contracting officers under its supervision that when a cafeteria

---

[35] Mem. of F. Schroeder, Comm'r of Rehabilitation Servs. Admin., (Aug. 14, 1997) at 1, 4, attached as Ex. 11, *quoted in NISH v. Cohen*, 247 F.3d 197, 205 (4th Cir. 2001).

[36] 20 U.S.C. §§ 107a, 107d-3(e).

[37] *NISH v. Rumsfeld*, 348 F.3d at 1270-71; *NISH v. Cohen*, 247 F.3d at 201-02; *Washington State Dep't of Servs. for the Blind v. United States*, 58 Fed. Cl. at 785-86 & n.7.

[38] Mem. of D. Chu, Under Sec'y of Defense, to Secretaries of the Military Dep'ts (Dec. 29, 2004), Ex. 12.

will be operated through a non-appropriated fund concession contract, the federal agency must first pursue negotiations with the state licensing agency before making other arrangements.[39]

The Air Force also attempts to excuse its refusal to apply the Randolph-Sheppard priority with the cryptic statement that the renovated cafeteria will be a "restaurant" and "not a vending facility operation,"[40] but denominating a food service facility as a "restaurant" does not remove it from application of the Randolph-Sheppard Act's priority. The Act defines a cafeteria as a "facility capable of providing a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a line where the customer serves himself from displayed selections."[41] The renovated Buckley cafeteria will be exactly that. Customers will proceed through a line (or lines) to order their food from the available selections, pay for their orders, and then pick up their food.[42] They will not be served by waiters or waitresses. The cafeteria will serve a broad variety of foods and beverages to include Starbucks, Mexican food, pasta, and alcoholic drinks.[43] Regardless of what the Air Force chooses to call the cafeteria, the Randolph-Sheppard priority applies.

In addition to the Act's broad application to all cafeterias, the Randolph-Sheppard Act imposes heightened obligations on federal agencies that renovate a building. The Act requires that a building may not be renovated unless "the design for such construction, substantial

---

[39] *In re: Good Food Service, Inc.*, 1993 Comp. Gen. B-263-161.

[40] Ziegler Letter ¶ 3.

[41] 34 C.F.R. § 395.1(d).

[42] Rightsell Decl. ¶ 7.

[43] *Id.*; Ziegler Letter ¶ 3.

alteration, or renovation includes a satisfactory site or sites for the location and operation of a vending facility by a blind person."[44] The Act also requires that "no department, agency, or instrumentality of the United States shall undertake to . . . occupy, in whole or in part, any building unless . . . such building includes a satisfactory site or sites for the location and operation of a vending facility by a blind person."[45] Here, the Air Force is renovating and occupying a building in which a satisfactory site for a vending facility already exists, but no site will be available in the renovated building, even though similar food services will be provided. Thus, the planned result of the renovation runs directly contrary to the Randolph-Sheppard Act's requirements regarding renovation and occupancy of buildings by federal departments.

## II. THE BALANCE OF HARMS FAVORS COLORADO DVR AND MR. RIGHTSELL.

The balance-of-hardship test requires the trial court to balance the likelihood of irreparable harm to the plaintiffs if interim relief is not granted against the likelihood of harm to the defendant if interim relief is granted. If, on balance, the likelihood of harm to the plaintiffs is greater than the likelihood of harm to the defendant, injunctive relief should be granted to allow investigation and adjudication of the plaintiffs' claims.

### A. If an injunction does not issue, Colorado DVR and Mr. Rightsell will be irreparably harmed and will have no adequate remedy at law.

If the Air Force displaces Mr. Rightsell from his vending facility, Mr. Rightsell will lose his only source of income and Colorado DVR will lose an important opportunity to further its mission to provide employment opportunities for the blind and maximize their vocational potential (as well as a source of income to support its program). Under the Air Force's plan to

---

[44] 20 U.S.C. § 107a(d)(1)(B); see also 34 C.F.R. § 395.31(b).

[45] 20 U.S.C. § 107a(d)(1)(A); *see also* 34 C.F.R. § 395.30.

award a no-bid contract to another entity, Colorado DVR and Mr. Rightsell will be prevented from competing for a new contract to operate the renovated cafeteria. This Court has held that the loss of the "opportunity to compete on a level playing field for a contract is sufficient to establish irreparable harm." [46]

Colorado DVR and Mr. Rightsell have no adequate remedy to prevent or adequately compensate for the loss of the income they will sustain if the Air Force awards the Buckley contract to another bidder. Colorado DVR has requested that the Department of Education convene a Randolph-Sheppard arbitration to rule on the Air Force's plan to evict Mr. Rightsell from Buckley's cafeteria. No decision is likely to be rendered for at least a year.[47] No procedures exist for obtaining an expedited ruling, and the arbitration panel has no power to issue a preliminary injunction.

Even when the arbitration is concluded, Colorado DVR and Mr. Rightsell may have no remedy if they prevail. While they believe that they should be compensated for the loss of this opportunity, the Fourth Circuit has held that arbitrators under the Randolph-Sheppard Act have no authority to order a federal agency to take specific measures, such as pay damages, to remedy its violation of the Act.[48] The inability to collect lost profits creates irreparable harm.[49] Unless

---

[46] *Impressa,* 52 Fed. Cl at 828; *see also Seattle Security Services, Inc. v United States*, 45 Fed. Cl. 560, 571 (1999).

[47] *See, e.g.* 68 F.R. 36979 (request for arbitration filed sometime after May 30, 2000, hearing held July 21, 2001, decision rendered April 30, 2002); 68 FR 5627 (request for arbitration filed November 16, 2000, hearing held November 29, 2001, decision rendered January 23, 2002).

[48] *Maryland State Dep't of Educ. v. United States Dep't of Veterans Affairs*, 98 F.3d 165 (4th Cir. 1996).

the Air Force agrees to compensate Colorado DVR and Mr. Rightsell for any loss they suffer, they will be irreparably harmed. In similar circumstances, other federal courts have issued injunctions to keep blind vendors in their vending facilities pending the conclusion of arbitration.[50]

**B. The Potential Harm to the Air Force is Minimal.**

The Air Force will not be harmed by the requested injunction. The High Frontier Dining Facility can continue to operate under the current contract, and the Air Force can renovate the building after the arbitration has concluded. Alternatively, the Air Force can proceed with the renovations, but allow Colorado DVR and Mr. Rightsell to operate the renovated cafeteria once it re-opens until the conclusion of the arbitration. In either event, the Air Force will continue to receive food services at a reasonable cost, with food of high quality comparable to that currently provided employees – exactly what the Randolph-Sheppard Act requires.[51]

**III. GRANTING THE PRELIMINARY INJUNCTION WOULD SERVE THE PUBLIC INTEREST.**

The public interest will be served by enjoining the Air Force from using any entity other than Colorado DVR and Mr. Rightsell to operate the cafeteria at Buckley A.F.B. As Congress determined in enacting the Randolph-Sheppard Act, it is in the public's interest to provide blind

---

[49] *Informatics Corp. v. United States*, 40 Fed. Cl. 508, 518 (1998) (irreparable harm is shown where plaintiff suffers lost profits, but later remedies will be limited to bid preparation costs); *Howe v. Bolger*, 1984 WL 1131 (E.D. Wis. July 20, 1984) (stating that possibility that Randolph-Sheppard arbitration panel may not have ability to award damages could result in irreparable injury with no adequate remedy at law) (attached as Ex. 13).

[50] *Minnesota v. Veterans Admin.*, Civil Action No. 4-87-540 (D. Minn. July 2, 1987), (attached as Ex. 14), *aff'd sub nom. Minnesota v. Riley*, 18 F.3d 606 (8th Cir. 1994); *Howe v. Bolger*, 1984 WL 1131; *Hudson v. Boxer*, 632 F. Supp. 1569 (D. Col. 1986).

[51] 34 C.F.R. § 395.33(a).

persons with remunerative employment, enlarge their economic opportunities, and stimulate them to greater effort in striving to make themselves self-supporting by operating vending facilities on federal properties.[52] If an injunction does not issue "others, who are not blind vendors will be allowed to bid for the contract to operate the same business . . . This, too, is contrary to the intent of the Randolph-Sheppard Act and leads the court to find that the public interest would best be served by allowing [the blind vendor] to continue his business pending the outcome of the administrative proceedings."[53]

## CONCLUSION

Because Colorado DVR and Mr. Rightsell are likely to prevail on the merits, because a change from the status quo will irreparably harm plaintiffs and will harm them far more than it will harm defendants, and because the public interest favors enforcement of the Randolph-Sheppard priority, this Court should issue a preliminary injunction forbidding the defendant from allowing any entity other than the Colorado DVR, through its licensed blind vendor, to operate any food service facility in the building currently occupied by the High Country Dining Facility while the Randolph-Sheppard arbitration is pending. A proposed order is attached.

---

[52] 20 U.S.C. § 107(a).

[53] *Howe v. Bolger*, 1984 WL 1131, *3.

Respectfully submitted,

JOHN W. SUTHERS
Attorney General
State of Colorado

By: Kathryne Gwinn (by Shelly Marie Martin)
Kathryne C. Gwinn
First Assistant Attorney General
State Services Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
Telephone: (303) 866-56549
Facsimile: (303) 866-5671 (fax)
E-mail: kc.gwinn@state.co.us

Attorneys for plaintiff Colorado Department of Human Services/Division of Vocational Rehabilitation

Andrew Freeman (by Shelly Marie Martin)
Andrew D. Freeman
Shelly Marie Martin (of counsel)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
(410) 962-1030
(410) 385-0869 (fax)
E-mail: adf@browngold.com
smm@browngold.com

Attorneys for plaintiff Steven Rightsell

Dated: September 22, 2006