COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 1

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, *et al.*, | : |
| Plaintiffs, | : |
| v. | : Case No. |
| THE UNITED STATES OF AMERICA, | : |
| Defendant. | : |

* * * ooo0ooo * * *

**DECLARATION OF MARILYN MORGAN**

1. My name is Marilyn Morgan. I am over the age of 18 and am competent to testify.

2. The Colorado Department of Human Services, Division of Vocational Rehabilitation, specifically the Business Enterprise Program is the designated state licensing agency responsible for the administration of Randolph Sheppard Act for Colorado.

3. I am the Supervisor of the Business Enterprise Program. As such, I am responsible for the administration of Randolph-Sheppard.

4. In October 1999, the Colorado Department of Human Services, Division of Vocational Rehabilitation, was awarded the contract to operate the High Frontier Dining Facility at Buckley Air Force Base.

5. In October 2005, the licensed blind vendor, Steve Rightsell, was assigned to operate the High Frontier Dining Facility.

I declare under penalty of perjury that the foregoing is true and correct.

DATED this 20 day of September, 2006.

Marilyn Morgan

Marilyn Morgan, Supervisor
Business Enterprise Program
Colorado Dept. of Human Services
Division of Vocational Rehabilitation
2211 W. Evans Avenue, Bldg. B
Denver, CO 80223
Phone: (303) 866-3485

STATE OF COLORADO )
)ss.
CITY AND COUNTY OF DENVER )

SUBSCRIBED, SWORN TO AND ACKNOWLEDGED BEFORE ME by Marilyn Morgan this 20 day of September, ~~2005~~. 2006

WITNESS my hand and official seal.

My Commission Expires:

Angela Scavone

Notary Public

ANGELA SCAVONE NOTARY PUBLIC STATE OF COLORADO

MY COMMISSION EXPIRES: MARCH 27, 2010

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 2

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

| | | |
|---|---|---|
| COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, *et al.*, | : | |
| Plaintiffs, | : | |
| v. | : | Case No. |
| THE UNITED STATES OF AMERICA, | : | |
| Defendant. | : | |

* * * ooo0ooo * * *

**DECLARATION OF STEVEN P. RIGHTSELL**

1. My name is Steven P. Rightsell. I am over the age of 18 and am competent to testify.

2. I am a licensed blind manager in the Colorado Randolph-Sheppard program.

3. I currently operate the High Frontier Dining Facility ("the Cafeteria") at Buckley Air Force Base, the main dining facility for all personnel stationed at Buckley. I have operated the Cafeteria since October 2005.

4. The Cafeteria provides high quality food at a reasonable price. I am not aware of any complaints from the Air Force about the quality of our food or service.

5. In or about May 2006, the Air Force informed me that it intended to close the Cafeteria as of October 1, 2006, because of budget cuts.

6. In or about July 2006, I learned that the Air Force does not intend to close the Cafeteria. I have learned that the Air Force plans to renovate the Cafeteria during October and November 2006 and re-open it in December 2006.

7. In or about September 2006, I learned that the Air Force plans for the renovated Cafeteria to include a Starbucks, a Mexican grill, and a pasta station operated by a company or companies that will receive no-bid contracts. The plan calls for customers to go through a line or lines, place their orders for food and beverages, pay for their food and beverages, and then return to pick up their orders. Table seating will continue to be available in the renovated Cafeteria.

8. The renovated Cafeteria will continue to be the main dining facility for personnel at Buckley.

9. I would like to continue operating the Cafeteria once renovations are completed, and both the State licensing agency and I have informed the Air Force of that desire repeatedly since July.

10. The Air Force has not offered the Colorado Division of Vocational Rehabilitation or me the opportunity to operate the renovated Cafeteria, or even to bid on that operation.

11. The Air Force has informed us that we cannot operate the Cafeteria after September 30, 2006, because the Cafeteria will be operated with non-appropriated funds – to which, the Air Force claims, the Randolph-Sheppard Act does not apply.

12. The Cafeteria is my only source of income. I relinquished another Randolph-Sheppard facility to take the opportunity to operate the High Frontier Dining Facility. Another blind manager has successfully completed training at my old facility, and I cannot return to that facility. The state licensing agency has told me that it does not currently have any vacant facilities to which it can assign me if I am displaced from Buckley Air Force Base.

I declare under penalty of perjury that the foregoing is true and correct.

Steven P. Rightsell

Steven P. Rightsell

September 20, 2006

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 3

# RECORD OF ATTENDANCE AND MEETING MINUTES

**Solicitation/Contract No.: FA2543-03-C-0002 DATE: 22 May 2006 TIME: 1300**

**Project Title: HIGH FRONTIER DINING FACILITY CLOSURE FY2007**

| | | |
|---|---|---|
| | **Training** | **Bid Opening** |
| | **Negotiation Conference** | **Pre-performance Conference** |
| | **Pre-proposal/Pre-bid site visit** | **Business Strategy Panel** |
| | **Pre-proposal/Pre-bid conference** | **Pre-Final Inspection** |
| | **Informal Meeting** | **Final Inspection** |
| X | **Other: AF Services Spending Reduction** | |

| NAME | ORGANIZATION | TELEPHONE/E-MAIL |
|---|---|---|
| Susan Welch | 460CONS/LGCB | 720 847-6447 |
| Maj Bonnie Ward | 460MSG/SVD | 720 847-6919 |
| Maj Richard Bailey | 60CONS/CC | 720 847-6438 |
| Steve Rightsell | BCI Worley | 303 744-4205 |
| Kimberly Jones | CO Dept of Human Services | 303 866-3466 |
| * Joe Blackstone | Blackstone Consulting | 310 826-4389 |
| * Leatora Jefferson | Blackstone Consulting | 310 826-4689 |
| * Greg Shinn | Blackstone Consulting | 310 826-4689 |

*Phone in

COMMENTS:

Meeting held to inform State of Colorado and Blackstone Consulting management team of the Air Force's plan to reduce service costs. The High Frontier Dining Facility, Buckley AFB has been tagged to be closed NLT 30 Sep 06. It was explained the government would not modify the contract to decrease the option years at this time. The contractor is responsible to complete the contract, with the same level of service it has been providing up to this date.

Contractor questioned the possibility of the dining facility staying open. At this point in time it is 100% certain the dining facility will close its doors 30 Sep 06. The government will retain the right to exercise an option, if necessary. Proper notification will be given according to the terms of the contract, if that is necessary. At this point exercising an option does not appear likely.

Mr. Blackstone stated his staff will inform the dining facility personnel tomorrow of the closing. His staff will inform Services and Contracting when the news has been given to his personnel. Maj Ward stated, she and Mr. Henline will speak to the High Frontier Dining Facility employees also sometime after official notification.

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 4

>>> "Joe Blackstone" <joe@blackstone-consulting.com> 5/22/2006 5:15:33 PM >>>
Susan,

Thanks so much for your accurate summary of this afternoon's meeting.

I had two questions that have come to mind in the meantime:

1. You mentioned that there would be personnel measuring in the dining facility during our final four months at the location. We do not anticipate any disruptions to services but as you indicated we wouldn't hesitate to advise you and your team if there were any difficulties. As a point of information, for what future purpose of the dining facility are the measurements being made?

2. Let's say that everything proceeds forward as it is anticipated right now. In other words no additional funding becomes available and the 60 day period for the Intent To Exercise the Option Year goes by on 8/2/06 and then the actual 30 day timeframe to exercise the option year also goes by on 9/1/06. We reach the date of 9/30/06 and the Rightsell/BCI team closes the dining facility. Is contract FA2543-03-C-0002 null and void on 10/1/06?

Thanks as always for your time today and in advance for clarification on the above questions.

Joe Blackstone

This e-mail, including attachments, may include confidential and/or proprietary information, and may be used only by the person or entity to which it is addressed. If the reader of this e-mail is not the intended recipient or his or her authorized agent, the reader is hereby notified that any dissemination, distribution, or copying of this e-mail is prohibited. If you have received this e-mail in error, please notify the sender by replying to this message and delete this e-mail immediately.

-----Original Message-----
From: Welch, Susan J Civ 460 CONS/LGCB [mailto:Susan.Welch@Buckley.af.mil]
Sent: Monday, May 22, 2006 2:51 PM
To: joe@blackstone-consulting.com; srightsell@juno.com; Kimberly.Jones@state.co.us
Cc: Bailey, Richard W Maj 460 CONS/CC; Ward, Bonnie S Maj 460 MSG/SVD; Nolte, Eric K Civ 460 CONS/LGC; Kovacs, Attila Z Civ 460 CONS/LGCB; Carter,

Jacqueline E TSgt 460 CONS/LGCP
Subject: FA2543-03-C-0002 HIGH FRONTIER DINING FACILITY

All,
Attached you will find the attendance sheet and minutes for today's meeting. If you have any questions or concerns, feel free to call me, Team Lead Attila Kovacs 720 847-9952 or Contract Administrator TSgt Carter 720 847-6677.
Susan

//SIGNED//
Susan J. Welch
Chief, Base Infrastructure Flight
460CONS/LGCB
720 847-6447/DSN 847-6447
720 847-6443/DSN 847-6443 FAX
susan.welch@buckley.af.mil

<<Closing of Dining Facility.doc>>

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 5

DEPARTMENT OF THE AIR FORCE
460TH SPACE WING (AFSPC)

25 July 2006

MEMORANDUM FOR STATE OF COLORADO BUSINESS ENTERPRISE PROGRAM
2211 W. Evans B
Denver, CO 80223-3817

FROM: 460 CONS/LGCB
510 S. Aspen St (MS92)
Buckley AFB CO 80011-9551

SUBJECT: Contract FA2543-03-C-0002, Full Food Service, Buckley AFB, Notice of Intent Not to Exercise Option Period 4

1. In accordance with Federal Acquisition Regulation and contract FA2543-03-C-0002, you are hereby notified of the Government's intent not to exercise Option Year 4 (CLINs 4001 – 4017), period of performance 1 October 2006 – 30 September 2007. The Government's decision not to exericse this option is for Government's convenience based on budgetary constraints.

2. Final Notification will be made by unilateral contract modification removing the option period of performance from the contract.

3. Request acknowledgement of this notice within three days of receipt by signing and returning. Return an original to address 460 CONS/LGCB, Attn: TSgt Jacqueline Carter, 510 S. Aspen St (MS 92), Buckley AFB, CO 80011, and facsimile to 720-847-6443.

4. Questions regarding this correspondence should be directed to the undersigned at (720) 847-9952 or TSgt Jacqueline Carter (720) 847-6677, email: jacqueline.carter@buckley.af.mil.

ATTILA KOVACS, Civ
Contracting Officer

1st Ind,

To: 460 CONS/LGCB
510 S Aspen Street (MS 92)
Buckley AFB CO 80011

SUBJECT: Receipt acknowledged

Nancy Smith, Director — Aug. 3, 2006

Signature/Print Name/Title — Date

NANCY SMITH

GUARDIANS OF THE HIGH FRONTIER

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

06-666 C
Judge G.W. Miller

USA

# Exhibit 6

**DEPARTMENT OF THE AIR FORCE**
**460TH SPACE WING (AFSPC)**

SEP 1 8 2006

Colonel David W. Ziegler
Commander, 460th Space Wing
510 South Aspen Street (Stop 88)
Buckley AFB CO 80011-9551

Mr. T. A. Poole
State of Colorado
Department of Human Services
2211 West Evens Avenue, Bldg B
Denver CO 80223

Dear Mr. Poole

I have reviewed your memo, dated 28 July 2006, notifying me that the Colorado Business Enterprise Program wishes to exercise statutory priority under the Randolph-Sheppard Act to operate the food service at the High Frontier Inn (HFI) at Buckley AFB.

As you know, the High Frontier Dining Facility (HFDF) will cease operations effective 1 October 2006. To that end, the 460th Services Division staff is working on close-out procedures for that function, a function that is operated under the provisions of the Randolph-Sheppard Act and funded with Government Appropriated Funds (tax dollars).

The HFI is being established in an effort to provide the entire Buckley AFB community an on-base restaurant with full service meals and alcoholic drinks. This will not be a vending facility operation. This facility will be operated internally by the Services Division as a Nonappropriated Fund (NAF) activity and will not be contracted out. NAF dollars are those that are generated locally through user fees, program fees and other resale operations. NAF business activities, such as this, are operated at most every military installation in the world.

As this is not a contract operation or a vending facility within the meaning of the provisions of the Randolph-Sheppard Act, the priorities established by the act do not apply.

If you have additional questions or concerns, please call Mr. Randy Henline at (720) 847-6899.

Sincerely

David W. Ziegler

DAVID W. ZIEGLER, Colonel, USAF

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 7

# STATE OF COLORADO

cdhs
Colorado Department of Human Services
*people who help people*

OFFICE OF ADULT, DISABILITY, AND REHABILITATION SERVICES
John P. Daurio, Manager

DIVISION OF VOCATIONAL REHABILITATION
BUSINESS ENTERPRISE PROGRAM
2211 West Evans Avenue, Building B
Denver, Colorado 80223
Phone: (303) 866-3484
TTY: (303) 866-3484
FAX: (303) 866-3933
Nancy Smith
Director

Bill Owens
Governor

Marva Livingston Hammons
Executive Director

July 28, 2006

Mr. Randy Henline
400 North Beaver Creek Street
Stop 90
Buckley Air Force Base
Aurora, CO 80011

Dear Mr. Henline:

I am writing to you on the behalf of the State of Colorado, Colorado Business Enterprise Program. This letter is to officially notify you that the Colorado Business Enterprise Program wishes to exercise its statutory priority under the Randolph-Sheppard Act to operate the food service at the High Frontier Inn at Buckley Air Force Base. As you know, the Colorado Business Enterprise Program, through our licensed blind vendor, Steve Rightsell, operates the High Frontier Inn at Buckley Air Force Base. We are very proud of Mr. Rightsell's operation and the high quality food and service he provides. We were disappointed that Buckley Air Force Base did not wish to exercise option period 4.

It is our understanding that Services for the base will be remodeling the High Frontier operation and turning this location into a grill, sports bar. As you may be aware, under the provision of the Randolph-Sheppard Act, 20 USC 107-107e, licensed blind vendors are afforded statutory priority to operate cafeterias, sports bar operations on Department of Defense and Homeland Security properties. Procedural guidance is found in DoD Directive 1125.3, in Title 32 Code of Federal Regulations, Part 260 (Department of Defense), and in Title 34 Code of Federal Regulations Part 395.33 (Department of Education).

The Colorado Business Enterprise Program would like to help you develop the High Frontier Dining facility and run this sports bar for you. The Colorado Business Enterprise Program is the State Licensing Agency for the State of Colorado under the Act. Your organization would contract directly with our agency for the requirement that you would need, then our agency would assign an experienced licensed blind vendor to manage this location. Mr. Rightsell would be perfect for this assignment, as he has a very strong understanding of the current operation and has extensive knowledge of running profitable food service operations. The Colorado Business

Enterprise Program also has funds available to assist you in your remodeling and to purchase additional equipment that you may need.

The Colorado Business Enterprise Program and Mr. Rightsell continue to believe that we can provide Buckley Air Force Base with the high quality food service it desires. We hope for a true good faith negotiation on your current project. We request a meeting at the earliest possible date to discuss these options with you.

You can reach me at (303) 866-3463 or by e-mail at tim.poole@state.co.us. I am writing in anticipation of a timely response to confirm the Department of the Air Force's desire to recognize the Randolph-Sheppard priority. I will await your response and appreciate your time and consideration.

Respectfully,

Tim A. Poole

Tim A. Poole
Business Enterprise Program
Division of Vocational Rehabilitation
State of Colorado

Cc: Ms. Marilyn Morgan, Business Enterprise Program Supervisor
Dr. Kenneth Schmidt, Director of Field Services
Ms. Kathryne C. Gwinn, Assistant Attorney General, State of Colorado
Mr. Steve Rightsell, Licensed Vendor
Mr. Joe Blackstone, Blackstone Consulting

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 8

>>> "Henline, Randy L Civ 460 MSG/SV" <Randy.Henline@BUCKLEY.AF.MIL> 8/9/2006 10:04:02 AM >>>
Tim
Yes, I received your letter and am staffing it through legal channels as required by Air Force Instruction. A response will be forthcoming in the next week or so.
Thanks

Randy

---

**From:** Tim Poole [mailto:Tim.Poole@state.co.us]
**Sent:** Wednesday, August 09, 2006 8:24 AM
**To:** Henline, Randy L Civ 460 MSG/SV
**Cc:** Tim Poole
**Subject:** Fwd: Additional information.

Hi Mr. Henline, my original e-mail sent to you on the 8-7-06 was returned, I had your e-mail address wrong, please review the following, thanks Tim

>>> Tim Poole 8/7/2006 2:36:04 PM >>>
Dear Mr. Henline, hopefully you received the certified letter I sent to you approximately a week ago regarding the High Frontier Inn Dining facility. The State of Colorado has obtained some additional information that is attached for your review. The State of Colorado believes that this Memorandum is applicable to the current situation at the High Frontier Dining facility, and we are requesting to meet to discuss further. Thank you for your attention to this matter. Tim

Mr. Tim A. Poole, M.A., C.R.C.
Division of Vocational Rehabilitation
Business Consultant, Vocational Specialist
2211 West Evans Avenue
Denver, CO 80223
PH# 303-866-3463
CELL# 303-917-2306
FAX# 303-866-3933
tim.poole@state.co.us
Confidentiality Statement
This email message, and any attachments from the Colorado Department of Human Services, are confidential and intended solely for the use of the individual or entity to which it is addressed. The information contained herein may include protected or otherwise privileged information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. If you have received this message in error, please notify the sender by replying to this message, and delete the email without disclosure. Thank you.

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 9

**From:** Tim Poole [mailto:Tim.Poole@state.co.us]
**Sent:** Wednesday, August 09, 2006 8:59 AM
**To:** jacqueline.carter@buckley.af.mil
**Cc:** joe@blackstone-consulting.com; srightsell@juno.com; kc.gwinn@state.co.us; Ken Schmidt; Marilyn Morgan; Tim Poole
**Subject:** Not to Exercise Option

Hi Ms. Carter, sorry for the delay on the Notice of Intent Not to Exercise Option period #4. Please find the attached Notice signed. Although we have signed this document the State of Colorado is not in agreement with this document. The State of Colorado believes that the closing of the Dining facility and re-opening it as a non-appropriated funds location is harmful to the Randolph-Sheppard program. Please see the attached Memorandum that explains our view point. The State of Colorado and specifically the Business Enterprise Program is currently asking for a meeting with Mr. Henline to discuss our options. Thank you for your time and consideration to this matter. Tim

Mr. Tim A. Poole, M.A., C.R.C.
Division of Vocational Rehabilitation
Business Consultant, Vocational Specialist
2211 West Evans Avenue
Denver, CO 80223
PH# 303-866-3463
CELL# 303-917-2306
FAX# 303-866-3933
tim.poole@state.co.us
Confidentiality Statement
This email message, and any attachments from the Colorado

Department of Human Services, are confidential and intended solely for the use of the individual or entity to which it is addressed. The information contained herein may include protected or otherwise privileged information. Unauthorized review, forwarding, printing, copying, distributing, or using such information is strictly prohibited and may be unlawful. If you have received this message in error, please notify the sender by replying to this message, and delete the email without disclosure. Thank you.

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 10

FILE COPY

JOHN W. SUTHERS
Attorney General

CYNTHIA H. COFFMAN
Chief Deputy Attorney General

DANIEL D. DOMENICO
Solicitor General

STATE OF COLORADO
DEPARTMENT OF LAW

OFFICE OF THE ATTORNEY GENERAL

STATE SERVICES BUILDING
1525 Sherman Street - 7th Floor
Denver, Colorado 80203
Phone (303) 866-4500

September 20, 2006

The Hon. Margaret Spellings
Secretary of Education
United States Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202

The Hon. Edward Anthony
Commissioner, Rehabilitation Services Administration
United States Department of Education
400 Maryland Avenue, SW
Washington, D.C. 20202

**Re: Request for Randolph-Sheppard Arbitration regarding the cafeteria at Buckley Air Force Base**

Dear Secretary Spellings and Commissioner Anthony:

This letter is the Colorado Department of Human Services, Division of Vocational Rehabilitation's formal request for Randolph-Sheppard arbitration pursuant to 20 U.S.C. § 107d-1(b) regarding the Department of the Air Force's decision to operate a cafeteria at Buckley Air Force Base without applying the Randolph-Sheppard priority.

The Colorado Department of Human Services, Division of Vocational Rehabilitation ("Colorado DVR") is the state licensing agency for the state of Colorado. The Colorado Randolph-Sheppard program has operated the High Frontier Inn dining facility, the main cafeteria at Buckley Air Force Base, since October 1999. The cafeteria is operated under contract pursuant to 34 C.F.R. § 395.33. Steven Rightsell is the licensed blind vendor currently operating the cafeteria.

In May 2006, the Air Force informed the Department that it was closing the cafeteria effective October 1, 2006, for budget reasons, and would not exercise the remaining option years on the contract with the Department. The Air Force later admitted that, contrary to its

earlier representations, the cafeteria will not be closed, but will undergo two months of renovation and re-open in December 2006. The renovated cafeteria will offer a different selection of foods than currently provided.

Colorado DVR and Mr. Rightsell are capable of providing cafeteria services in the renovated building and offering the selection of foods and beverages the Air Force desires at a reasonable price.

The Air Force is proceeding to end its contract with Colorado DVR and to install a new cafeteria operator without issuing a competitive solicitation for the renovated cafeteria under 34 C.F.R. § 395.33(b) and without engaging in direct negotiations with the State Licensing Agency under 34 C.F.R. § 395.33(d). It has incorrectly asserted that the Randolph-Sheppard Act will no longer apply to the Buckley A.F.B. cafeteria. Although the Air Force has not formally explained its reasoning, it apparently believes that because it is changing the source of funds from which the cafeteria contractor will be paid, it is no longer required to comply with the Randolph-Sheppard Act.

Nowhere in the Randolph-Sheppard Act is the priority for blind vendors conditioned upon the source of funds from which a cafeteria is operated. The regulations require that "Priority in the operation of cafeterias, " *i.e.*, all cafeterias, not a subset of cafeterias, "shall be afforded . . . ." 34 C.F.R. § 395.33(a). They also require that "All contracts or other existing arrangements pertaining to the operation of cafeterias on Federal property not covered by contract with, or by permits issued to, State licensing agencies shall be renegotiated . . . pursuant to the provisions of [the Randolph-Sheppard Act]." 34 C.F.R. § 395.33(c).

Additionally, the Randolph-Sheppard Act requires that a building may not be renovated unless "the design for such construction, substantial alteration, or renovation includes a satisfactory site or sites for the location and operation of a vending facility by a blind person." 20 U.S.C. § 107a(d)(1)(B); see also 34 C.F.R. § 395.31(b). The Act also requires that "no department, agency, or instrumentality of the United States shall undertake to . . . occupy, in whole or in part, any building unless . . . such building includes a satisfactory site or sites for the location and operation of a vending facility by a blind person." 20 U.S.C. § 107a(d)(1)(A); see also 34 C.F.R. § 395.30. Here, the Air Force is renovating and occupying a building in which a satisfactory site for a vending facility already exists, but no site will be available in the renovated building, even though similar food services will be provided.

On behalf of the Colorado Department of Human Services, Division of Vocational Rehabilitation, I request that the Secretary convene a Randolph-Sheppard arbitration to determine whether the Air Force and Buckley A.F.B. are violating the Randolph-Sheppard Act by refusing to allow the state licensing agency and its licensed blind vendor the opportunity to operate the renovated cafeteria.

Thank you for your attention to this matter. Please call me if you have any questions.

Sincerely,

FOR THE ATTORNEY GENERAL

KATHRYNE C. GWINN
Assistant Attorney General
Human Services Unit
State Services Section
303-866-6549 Telephone
303-866-5671 Facsimile

Cc: Marilyn Morgan
Scott Lebarre, Esq.
Andrew Freeman, Esq.

AG File: DOCUMENT1

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

USA

06-666 C
Judge G.W. Miller

# Exhibit 11

UNITED STATES DEPARTMENT OF EDUCATION

OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES

AUG 14 1997

MEMORANDUM

To : Committee for Purchase

From : Frederic K. Schroeder
Commissioner
Rehabilitation Services Administration

Fred Schroeder

Subject : Applicability of the Randolph-Sheppard Act to Military Troop Mess Halls

This memorandum is issued by the Rehabilitation Services Administration (RSA), U.S. Department of Education (ED), in response to the Committee for Purchase July 2, 1997 issue paper and the July 8, 1997 addendum concerning the applicability of the Randolph-Sheppard Act (Act) to military troop dining facilities. According to section 2(a)(1) of the Act, RSA is the "principal agency for carrying out this Act . . ." Thus, the members of the Committee should grant deference to ED and strongly consider the arguments contained herein before responding to the vote letter.

The position of the Committee is that there is no indication that the Act extends beyond employee cafeterias that are operated on a concession basis to reach military troop mess halls that are supported by appropriated funds. However, the Act clearly covers all types of food service operations on military bases, including military troop mess halls, and the legislative history fully supports this interpretation.

The Committee attempts to support its position by focusing on a portion of the language in section 7(e) of the Act, which addresses the issue of blind vendors operating cafeterias on Federal property:

> The Secretary through the Commissioner shall prescribe regulations to establish a priority for the operation of cafeterias on Federal property by blind licensees when he determines, on an individual basis and after consultation with the head of the appropriate installation, that such operation can be provided at a reasonable cost with food of a high quality comparable to that currently provided to employees whether by contract or otherwise.

(Emphasis added.) According to footnote 2 on page 5 of the Committee's issue paper, the legislative history indicates that this language was designed to meet the concerns of Federal employees that they may encounter poor food and high prices in situations where the blind vendor was the only source for food. The footnote points out that the quality and price of food is "obviously not an issue in military dining facilities where the Government controls what is

served and how it is priced." The clear implication of this footnote in the issue paper and of the addendum is that Congress could not have meant for the Act to cover cafeterias on military bases because its concern addressed only a situation in which a blind vendor controls the quality of the food and the prices.

We agree with the Committee only to the extent that Congress clearly addressed the concerns raised by Federal employees over the quality of food and the pricing. However, there is no basis to argue, as does the Committee, that this concern preempts a broader reading of the provision to include cafeterias on military bases. According to the legislative history:

> Subsection (e) requiring specification of fair return, quality food, and reasonable prices in contracts for blind licensee operation of cafeterias, is imposed because of the concern expressed by postal union representatives that a blind cafeteria operator in a monopoly situation could, without some legal restraint, charge what the market could bear, and provide unsatisfactory food service.

(Emphasis added.) S. Rpt. No. 93-937 at 24. The Committee would have us believe that, because this provision appears to address only cafeterias run on a concession basis by blind vendors, that only these types of cafeterias are covered by the Act. However, the Act clearly covers all types of cafeterias; the provision referred to by the Committee merely was meant to address a specific issue that arose during the Congressional debate.

There is no question that cafeterias were covered by the general language of the Act. The term "vending facility" was adopted for usage in the Act as a term to replace "vending stand."

> The concept of a stand no longer meshes with the demonstrated capability of blind vendors to operate more extensive and sophisticated businesses. Thus, the term vending facility includes snack bars, carts, vending machines and cafeterias as well as the stereotypical kiosk type stand.

(Emphasis added.) S. Rpt. No. 93-937 at 25. Thus, it was not necessary for subsection (e) to be in the law for purposes of establishing that the Act covers all types of cafeterias. As stated by the drafters, the subsection was "imposed" for purposes of addressing the concern expressed by postal union representatives.

In fact, there is explicit language in the legislative history demonstrating that the Department of Defense (DOD) expressly interpreted the Act to cover all full food services operations on military bases, including troop mess halls. The testimony of the DOD witness, Lt. General Leo Benade, clearly lays to rest any notion that the Act draws a distinction between the types of full food service operations on military bases. According to Lt. General Benade:

> On direct operation of dining facilities, the amended act would give a priority to blind operation of full food service operations currently operated by agencies or

> instrumentalities of the Government, such as post and base restaurants and mess halls.

(Emphasis added.) Randolph-Sheppard Act for the Blind Amendments of 1973: Hearings Before the Subcommittee on the Handicapped of the Committee on Labor and Public Welfare, S. 2581, 93rd Cong. 100 (1973) (statement of Lt. General Leo E. Benade, Deputy Assistant Secretary for Military Personnel Policy, Department of Defense.)

The testimony of Lt. General Benade shows that the DOD viewed the amendments to the Act as requiring all types of full food service operations on military bases, including mess halls. This DOD witness continued to refer to the inclusion of military mess halls throughout his testimony:

> On creation of cafeterias, the proposed amendment would considerably expand the activities which the blind would be licensed to operate and implies that the blind might be licensed to operate cafeterias. The operation of full-scale feeding operations would seem to require the additional employment of sighted persons. The addition of cafeterias is, thus, a significant departure form the concept of creating employment opportunities for the blind.
>
> Additionally, the operation and control by the various State licensing agencies of cafeterias, mess halls, and post or base restaurants could be disruptive of such an operation, a determination of the feasibility of such an operation should rest with the element of the Federal Government concerned. . .

(Emphasis added). Id. Although recommending that Congress place certain limits in the Act to give the military greater flexibility in protecting its interests, Lt. Gen. Benade's testimony evidences a clear understanding by the military that the Act covers all food service operations, even those supported by appropriated funds.

Notwithstanding the concerns of Lt. Gen. Benade, Congress made no changes in the provisions contained in S. 2581 when finalizing the 1974 amendments that would reflect any kind of restriction placed on the Act in reaching mess halls or any other type of appropriated fund food service operation of the military. In fact, as referred to above, Congress added a section to meet the concerns of other Federal agencies that Federal employees be protected against encountering poor food and high prices. Again, this merely evidenced the intent of Congress to address a growing concern expressed by Federal employees and, in no way, can be used as a basis to argue that military mess halls are excluded from the Act.

DOD has consistently taken the position that military mess halls are covered by the Act. Please refer to the August 7, 1992 memorandum from Major General Robert Joyce, Director, Personnel Support Policy & Services, Office of the Assistant Secretary of Defense, which concluded that the Act requires state licensing agencies to be solicited for carrying out military

dining hall food service contracts In addition, the June 4, 1993 Decision of the Comptroller General concerning the applicability of the Act for full food service at an Air Force base confirms this DOD position.

Finally, the drafters of the legislation clearly demonstrated their abilities to carve out exceptions for the military under the Act when, pursuant to section 7(d) of the Act, they exempted military exchange retail outlets from the vending machine income sharing provisions in section 7(b)(1). However, there is no similar exception in the Act differentiating between military troop mess halls and other types of cafeteria operations.

The Committee's issue paper also argues that the definition of cafeteria in 34 CFR 395.1(d) refers to "a facility where the customer primarily served himself from displayed selections on a line. . ." and that this is not the case with military mess halls. However, this argument ignores the fact that the definition uses the word "primarily" and thus would reflect reality at that time without excluding those cafeterias, such as mess halls, where the customers do not serve themselves. Furthermore, the preamble to the regulation explains that a definition of cafeteria was added in order to distinguish cafeterias from other types of vending facilities covered by the Act. According to the preamble, the factors for determining whether a food service facility is considered a cafeteria under the regulations are the range of food available and the fact that the customers sit when eating. 42 Fed. Reg. 15809. It follows that there is nothing in the makeup of military mess halls that would exclude them from this definition.

In sum, the Act gives blind vendors a priority to be placed in cafeterias on all military installations. Any attempt to draw a distinction between appropriated funded cafeterias and concession cafeterias is merely a fiction to justify placing full food service activities on the Committee's procurement list. There is no basis either in the Act or in the legislative history for the Committee's position.

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

06-666 C
Judge G.W. Miller

USA

# Exhibit 12

UNDER SECRETARY OF DEFENSE
4000 DEFENSE PENTAGON
WASHINGTON, D C. 20301 4000

29 DEC 2004

PERSONNEL AND READINESS

MEMORANDUM FOR SECRETARIES OF THE MILITARY DEPARTMENTS
DIRECTOR, ADMINISTRATION AND MANAGEMENT
DIRECTORS OF THE DEFENSE AGENCIES

SUBJECT: Limitations on the Use of Contracts and Other Agreements with DoD Nonappropriated Fund Instrumentalities (NAFIs) Pursuant to 10 U.S.C. 2492

This office has received recent reports that the Military Services may be using 10 U.S.C. 2492 to enter into agreements with DoD NAFIs to provide goods and services that are not within the authorized activities of or of direct benefit to exchanges and morale, welfare and recreation (MWR) programs. Further, these agreements may result in the loss of jobs established for the severely handicapped and blind pursuant to the Randolph Sheppard Act, 20 U.S.C. 107-107f (the RSA), and the Javits-Wagner-O'Day Act, 41 U.S.C. 46-48(c) (JWOD). This policy memorandum clarifies the purposes for which DoD NAFIs may enter into contracts or other agreements with DoD elements and other Federal Departments, Agencies, or instrumentalities, pursuant to 10 U.S.C. 2492, for the provision of goods and services, and provides criteria for evaluating the benefit to the NAFI.

Contracts or other agreements established between NAFIs and DoD elements pursuant to 10 U.S.C. 2492, shall be limited to NAFIs directly supporting Armed Service Exchange, Military MWR, Civilian MWR, and Lodging programs. NAFIs may enter into contracts or agreements to provide those goods and services specifically authorized for exchanges pursuant to DoD Instruction 1330.21, *Armed Services Exchange Regulations (ASER)*; military MWR activities as defined in DoD Instruction 1015.10, *Programs for Military Morale, Welfare, and Recreation (MWR)*; civilian MWR activities as defined in DoD 1015.8-R, *DoD Civilian Employee Morale Welfare and Recreation Activities and Supporting Nonappropriated Fund Instrumentalities Regulation*, and lodging activities as defined in DoD Directive 1015.11, *Lodging Resource Policy*. Under this authority, DoD NAFIs may also provide services inherent to their internal operation. DoD NAFIs shall not enter into contracts or agreements with DoD elements or other Federal Departments, Agencies or instrumentalities for the provision of goods and services that will result in the loss of jobs created pursuant to the RSA, JWOD, or small business programs.

| Post-it® Fax Note 7671 | Date 8/3/06 | # of pages ▸ 2 |
|---|---|---|
| To PETER NOLAN | From AL LITTLE | |
| Co./Dept. WINSTEAD | Co. | |
| Phone # | Phone # 346-1910 | |
| Fax # | Fax # 343-1920 | |

Before entering into a contract or other agreement pursuant to 10 U.S.C. 2492, the NAFI custodian shall ensure that the agreement or contract will financially benefit the NAFI, considering fixed and variable direct and overhead costs (including depreciation).

The next change to DoD Directive 4105.67, *Nonappropriated Fund Procurement Policy*, shall include this policy change.

for David S. C. Chu

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

06-666 C
Judge G.W. Miller

USA

# Exhibit 13

C

United States District Court; E.D. Wisconsin.
**Martin B. Howe, Plaintiff**
**v.**
**William Bolger et al., Detendants.**
**Civil Action No. 84-C-843**
84-C-843
July 20, 1984

CURRAN. D. J.
*1 The plaintiff, Martin B. Howe, in the above-captioned action seeks a preliminary injunction for the purpose of maintaining his status as a blind operator of a vending machine enterprise in the United States Post Office in Green Bay, Wisconsin under the Randolph-Sheppard Act, 20 U. S. C. § 107 et seq., until Howe has an opportunity to exhaust his administrative remedies under state and federal law.

On June 25, 1984 this court issued a temporary restraining order requiring defendant William Bolger in his capacity as Postmaster General of the United States to suspend the bidding process for vending facilities at the new post office in Green Bay. He was also restrained from soliciting bids, contracting for vending services at the new post office and from terminating the permit to operate the business. Defendant Patricia G. Kallsen in her capacity as Administrator of the Division of Vocational Rehabilitation of the State of Wisconsin was enjoined from terminating the plaintiff's license to operate his vending business.

An evidentiary hearing was held on July 9, 1984 after which this court extended the temporary restraining order until July 20, 1984. Under the terms of this extended order the defendants were allowed to bring food for sale into the new post office, but the food could not be in vending machines or subject to a contract.

Pursuant to this court's order, defendant Kallsen informed the court by letter that the grievance procedure available at the state level would take three months to complete. Additional time would be needed at the federal level. Howe is asking that a preliminary injunction be granted incorporating the terms of the temporary restraining order and allowing him to operate his vending machines in the new post office pending the outcome of the administrative proceedings and staying this action until the termination of those proceedings.

In ruling on a preliminary injunction a trial court must consider: (1) the reasonable likelihood of success on the merits; (2) whether there will be irreparable injury and absence of an adequate remedy at law; (3)

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

whether the threatened harm to the plaintiff outweighs the harm the injunction may cause the defendants; and (4) whether the granting of the injunction will disserve the public interest. *Shaffer v. Globe Protection, Inc.* [32 EPD P 33,930], 721 F. 2d 1121, 1123 (7th Cir. 1983).

Howe asserts that he has a reasonable probability of establishing, through recourse to administrative remedies, that the license covering his vending enterprise in the Green Bay Post Office will not be terminated by a move of that office to a new address. He alleges that he is a third-party beneficiary to the contract between the federal and state defendants and contends that his license to operate the vending facilities should be transferrable to the new facility.

Plaintiff claims to have been operating a vending stand in the lobby of the main post office at Green Bay since 1960. In 1970 he executed an Automatic Vending Agreement with the Green Bay Post Office to expand his facility to include the employee lunchroom. Howe believes that he has a property interest in maintenance of the vending facilities at both sites and, additionally, a contractual interest in the lunchroom site. The federal defendant maintains that the plaintiff has no property interest in doing business in a particular location.

*2 The court notes that this case does not involve an application for a license, but the de facto termination of a license. As such, the plaintiff is entitled to procedural due process rights. *See Sumpter v. White Plains Housing Authority*, 29 N. Y. 2d 420, *cert. denied*, 406 U. S. 928 (1972). ("It has long been settled that a party aggrieved by loss of a pre-existing right or privilege may enjoy procedural rights not available to one denied the right or pirvilege in the first instance.") Licenses which involve activities which are essentials of life should not be taken away or nullified without affording an opportunity for a hearing prior to termination. *Bell v. Burson* , 402 U. S. 535 (1971) ("Once licenses are issued . . . their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.").

The federal defendant has pointed out that the state defendant has not taken action to cancel Howe's license, yet it is the defendants' position that this license would not transfer to another location. Thus, if the main post office in Green Bay has moved to a new location, a license to operate a vending machine business in the former facility would have no value even if it is not formally terminated. In regard to the written contract covering the vending facilities in the employee lunchroom, the defendants have offered no subsequent writing showing a modification of this specific agreement.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

The sole issue in this case is whether a preliminary injunction should issue allowing the plaintiff to continue his vending business at the new main post office in Green Bay until he has exhausted his administrative remedies. *See* Amended Verified Complaint. This court need not address the underlying issue of whether the plaintiff should be awarded a contract to provide vending services at the new post office. The plaintiff concedes, and the court agrees, that this determination is best left to the decision-making bodies designated in the Randolph-Sheppard Act. *See* *Massachusetts Elected Committee of Blind Vendors v. Matava*, 482 F. Supp. 1186 (D. Mass. 1980).

Thus, the court finds that the plaintiff does have an arguable property interest in his license to conduct his vending business at the Green Bay Post Office, at whatever location and that, therefore, he is entitled to a due process hearing. Congress has provided for such a hearing under the Randolph-Sheppard Act, 20 U. S. C. § 107d-1, so the plaintiff should be allowed to avail himself of the procedures thereunder before his opportunity to operate under his license is terminated.

The plaintiff alleges that his injury will be irreparable because a Randolph-Sheppard Arbitration Panel, convened under and pursuant to 20 U. S. C. §§ 107d-1 & 107d-2, does not have the authority to award retroactive relief in the form of compensatory monetary damages or reinstatement. The federal defendant cited *Georgia Department of Human Resources v. Bell*, 528 F. Supp. 17, 25 (N.D.Ga. 1981) as an instance in which compensatory damages were awarded, but the plaintiff has submitted evidence that the United States is appealing this decision on the ground that these panels do not have the power to award monetary damages to blind vendors in the form of back pay awards or legal fees. No other reported cases have dealt with this precise issue, so, should the federal government prevail in its appeal, there would be precedent for denying relief to Howe in this case. Thus, the court finds that the plaintiff has shown that he could be irreparably injured and without an adequate remedy at law.

*3 At the hearing held on July 9, 1984, the plaintiff testified that he receives no income other than that from his vending business. If he is not allowed to conduct this business pending the outcome of the administrative proceedings, he will be deprived of his livelihood. The federal defendant hypothesizes that the disappointed bidders might bring actions against the government if the bidding process is halted. However, the defendant cites no authority which would give these bidders standing to sue the government for a mere expectancy interest. The court finds, therefore, that the harm to the plaintiff would be greater than that to the defendants if this injunction does not issue.

The plaintiff has pointed out that the Randolph-Sheppard Act Amendments

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

(which provide for the grievance procedure) were passed by a unanimous vote of both houses of Congress in 1974. Brief in Support of Second Amended Motion for Preliminary Injunction at 12.

In this Act, Congress clearly intended to benefit blind citizens and to enable them to earn a living. 20 U. S. C. § 107. If Howe does not retain his vending operation in the main Green Bay Post Office at the new location, others, who are not blind vendors, will be allowed to bid for the contract to operate the same business and a percentage of the profits will be contricuted to the Employees Social and Recreational Committee. Quesnell Deposition at 63-65. This, too, is contrary to the intent of the Randolph-Sheppard Act and leads the court to find that the public interest would best be served by allowing Howe to continue his business pending the outcome of the administrative proceedings. *See* 120 *Cong. Rec.* 20119-20 (1974).

Accordingly, it is Ordered that a preliminary injunction is hereby issued against the defendants, William Bolger in his capacity as Postmaster General of the United States and Patricia G. Kallsen, in her capacity as Administrator of the Division of Vocational Rehabilitation of the State of Wisconsin. Under the terms of this injunction it is Ordered that:

1. Defendant Bolger must suspend the bidding process for vending facilities at the new location of the main United States Post Office in Green Bay, Wisconsin until the plaintiff has had an opportunity to exhaust his administrative remedies under the law.

2. Defendant Bolger is restrained from contracting for vending services with anyone at the new location of the main United States Post Office in Green Bay, Wisconsin until the plaintiff has had an opportunity to fully exhaust his administrative remedies under the law.

3. Defendant Bolger is restrained from terminating the vending facility permit with defendant Kallsen or taking any action which would otherwise prejudice the rights and priority status of the plaintiff until the plaintiff has had an opportunity to fully exhaust his administrative remedies under the law.

4. The defendants must allow the plaintiff to move his vending facilities at his own expense to the lobby and employee lunchroom of the main United States Post Office in Green Bay, Wisconsin. The plaintiff may operate only the same vending machines as he operated at the former facility until he has had an opportunity to fully exhaust his administrative remedies under the law.

*4 5. The defendants may supplement the vending machine facilities provided by the plaintiff by offering other food for sale at the new main post office. This food cannot be in vending machines or subject to a contract.

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

6. Defendant Kallsen is restrained from terminating the plaintiff's vendor's license or otherwise taking any action which will prejudice the rights and priority status of the plaintiff, except in strict compliance with the manner provided by law.

It is Further Ordered that the above-captioned action shall be stayed until such time as the plaintiff has completely and fully exhausted his administrative remedies under the law and, until such time as the plaintiff or one or both of the defendants apply to this court for an order confirming the arbitration decision of the Secretary of Education of the United States, which arbitration decision shall be made under and pursuant to the provisions of H.S.S. § 260.05 of the Wisconsin Administrative Code and 20 U. S. C. § 107d-1(b).

It is Further Ordered that at such time as the plaintiff shall apply to this court for confirmation of an arbitration award in his favor, the plaintiff shall be permitted to ask this court to require defendant Bolger to pay the costs of the plaintiff's relocation to the new location of the main United States Post Office in Green Bay, Wisconsin pursuant to 34 C.F.R. § 395.35.

It is Further Ordered that after this court has confirmed the final and binding arbitration decision of the Secretary of Education of the United States, upon petition of either the plaintiff or one of the defendants, this action may be dismissed.

Howe v. Bolger
Not Reported in F.Supp., 1984 WL 1131 (E.D.Wis.), 35 Empl. Prac. Dec. P 34,822

END OF DOCUMENT

© 2006 Thomson/West. No Claim to Orig. U.S. Govt. Works.

COLORADO DEPARTMENT OF HUMAN SERVICES,
DIVISION OF VOCATIONAL REHABILITATION, et al.

v.

06-666 C
Judge G.W. Miller

USA

# Exhibit 14

UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
FOURTH DIVISION

State of Minnesota,
Services for the Blind and
Visually Handicapped,

Plaintiff,

CIVIL 4-87-540

v.

MEMORANDUM AND ORDER

Veterans Administration,
Veteran Canteen Services,

Defendant.

---

Hubert H. Humphrey, III, Attorney General, State of Minnesota, and Laura E. Mattson and James Patrick Barone, Special Assistants Attorney General, 1100 Bremer Tower, St. Paul, MN 55101, for plaintiff.

Jerome G. Arnold, United States Attorney, and Mary Jo Madigan, Assistant U.S. Attorney, 234 U.S. Courthouse, Minneapolis, MN 55401, for defendant.

---

This is an action for preliminary injunctive relief arising under the Randolph-Sheppard Act, 20 U.S.C. § 107. A hearing on plaintiff's motion was conducted July 2, 1987.

The test for whether preliminary injunctive relief should issue is set forth in Dataphase Systems, Inc. v. C L Systems, Inc., 640 F.2d 109 (8th Cir. 1981). Four factors are to be considered:

(1) the threat of irreparable harm to the movant;

(2) the state of balance between this harm and the injury that granting the injunction will inflict on other parties litigant;

FILED JUL 2 1987

JUDGMENT ENTERED

(3) the probability that movant will succeed on the merits; and

(4) the public interest.

Dataphase, 640 F.2d at 114. The motion before the Court seeks a preliminary injunction to prohibit the Veterans Administration, Veterans Canteen Service (VA/VCS) from awarding a contract for vending services on federal property, specifically the St. Cloud Veterans Administration Medical Center (Medical Center), pending an administrative determination on the question of whether the VA/VCS should issue a permit for a vending facility at the Medical Center pursuant to the Randolph-Sheppard Act (Act), 20 U.S.C. § 107.

On June 10, 1986, the State of Minnesota, Services for the Blind and Visually Handicapped (Services), through its Business Enterprise Program, pursuant to 34 C.F.R. § 395.16, submitted an application for a permit to the VA/VCS for the operation of a vending facility at the Medical Center. On August 13, 1986, VA/VCS disapproved the permit application. VA/VCS has not requested the Secretary of the United States Department of Education (Secretary) to determine whether issuing a permit for the operation of a vending facility by Services, the State Licensing Agency (SLA) in Minnesota, would be adverse to the interests of the United States. On January 5, 1987, pursuant to the mandate specified in 20 U.S.C. § 107d-3 and 34 C.F.R. § 395.37, Services filed a complaint with the Secretary for resolution by an arbitration panel. The arbitration panel has not yet been convened. On May 29, 1987, Services received a

solicitation for bids from the VA/VCS for vending services at the Medical Center. If VA/VCS is allowed to award the contract to a provider other than Services, the SLA and its licensed blind vendor will be obligated to vacate the facilities at the Medical Center.

The Act mandates that blind persons licensed by the SLA shall be given a priority in the operation of vending facilities on federal property. 20 U.S.C. § 107b. Services and the current blind vendor at the Medical Center would be irreparably harmed if VA/VCS awarded a contract for vending services at the Medical Center pending a determination by the arbitration panel on whether VA/VCS properly denied Services' application for a permit at the Medical Center. VA/VCS is not likely to be unduly harmed by the entry of injunctive relief; Services has demonstrated a likelihood of success on the merits before the arbitration panel; and the public interest will be served by enjoining VA/VCS from awarding a contract for vending services at the Medical Center pending the determination of the arbitration panel.

Accordingly, based on the foregoing, and upon review of all files, records and proceedings herein,

IT IS ORDERED that VA/VCS and its officers, agents and employees are enjoined from awarding a contract for vending services at the St. Cloud Veterans Administration Medical Center until such time as the arbitration convened by the Secretary of the United States Department of Education issues a determination

on whether VA/VCS wrongfully denied Services a permit for a vending facility operated by a blind vendor at the Medical Center.

Judge Harry H. MacLaughlin
United States District Court

DATED: July 2, 1987