**No. 06-666C**
Judge Miller

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

---

COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, and STEVEN RIGHTSELL

Plaintiffs,

v.

THE UNITED STATES,

Defendant.

---

DEFENDANT'S MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION

---

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

TODD M. HUGHES
Assistant Director

STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Attn: Classification Unit
8th Floor
1100 L St. NW
Washington, D.C. 20530
Tele: (202) 616-2377
Steven.Mager@usdoj.gov

October 13, 2006

Attorneys for Defendant

# TABLE OF CONTENTS


STATEMENT OF THE ISSUES . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . 2

I. Nature of the Case . . . . . . . . . 2

II. Statement of the Facts . . . . . . . . . 2

ARGUMENT . . . . . . . . . 6

I. Standards of Review . . . . . . . . . 6

II. The Randolph-Sheppard Act . . . . . . . . . 8

III. This Court Does Not Possess Subject Matter Jurisdiction to Entertain Plaintiffs' Challenge . . . . . . . . . 10

A. The Jurisdiction Of This Court Is Strictly Limited By Statute . . . . . . . . . 10

B. This Court Does Not Have Jurisdiction to Entertain Plaintiffs' Action Because Plaintiffs Have Failed To Exhaust Their Administrative Remedies . . . . . . . . . 11

C. This Court Does Not Have Jurisdiction to Entertain Plaintiffs' Action Because Neither Plaintiff Is An "Interested Party" Pursuant To The Tucker Act, And Therefore Neither Has Standing to Prosecute This Protest . . . . . . . . . 15

D. Mr. Rightsell Does Not Possess Standing Under the Randolph-Sheppard Act . . . . . . . . . 17

E. This Court Does Not Have Jurisdiction to Entertain Plaintiffs' Action Because Plaintiffs' Claim Is Not Ripe For Adjudication . . . . . . . . . 18

IV. The Randolph-Shepard Act Does Not Apply, Nor Are The Possible NAFI Operations A Cafeteria . . . . . . . . . 19

V. Plaintiffs Are Not Entitled To Injunctive Or Declaratory Relief . . . . . . . . . 23

CONCLUSION . . . . . . . . . 25

# TABLE OF AUTHORITIES

## FEDERAL CASES


Page(s)

Aero Corp. v. United States,
38 Fed. Cl. 237 (1997) . . . . . 25

AGFE, AFL-CIO v. United States,
258 F.3d 1294 (Fed. Cir. 2000) . . . . . 16

Alabama Dep't of Rehabilitation Services v. United States Dep't of Veterans Affairs,
165 F. Supp. 2d 1262 (M.D. Ala. 2001) . . . . . 13, 14, 18

Alaska Pulp Corp. v. United States,
38 Fed. Cl. 141 (1997) . . . . . 6

American Pacific Roofing Co. v. United States,
21 Cl. Ct. 265 (1990) . . . . . 6

American Tel. & Tel. Co. v. United States,
307 F.3d 1374 (Fed. Cir. 2002) . . . . . 22

Anderson Columbia Envtl., Inc. v. United States,
42 Fed. Cl. 880 (1999) . . . . . 11

Baird Corp. v. United States,
1 Cl. Ct. 662 (1983) . . . . . 23

Bannum, Inc. v. United States,
56 Fed. Cl. 453 (2003) . . . . . 18

Bell v. Hood,
327 U.S. 678 (1946) . . . . . 12

Briscoe v. LaHue,
663 F.2d 713 (7th Cir. 1981) . . . . . 6

Camp v. Pitts,
411 U.S. 138 (1973) . . . . . 7

CC Distrib., Inc. v. United States,
38 Fed. Cl. 771 (1997) . . . . . 6

Cincom Systems, Inc. v. United States,
37 Fed. Cl. 663 (1997) . . . . . 7, 17, 25

Citizens to Preserve Overton Park, Inc. v. Volpe,
401 U.S. 402 (1971), overruled on other grounds by,
Califano v. Sanders, 430 U.S. 99 (1977) . . . . . 7

**Page(s)**

Committee of Blind Vendors of the District of Columbia v. District of Columbia,
28 F.3d 130 (D.C. Cir. 1994) . . . . . 12, 13, 14

Commonwealth of Kentucky, Education Cabinet v. United States,
62 Fed. Cl. 445 (2004) . . . . . 14

Commonwealth of Kentucky Education Cabinet v. United States,
424 F.3d 1222 (Fed. Cir. 2005) . . . . . 10, 12, 13, 14, 15

Federal Data Corp. v. United States,
911 F.2d 699 (Fed. Cir. 1990) . . . . . 17

Fidelity Constr. Co. v. United States,
700 F.2d 1379 (Fed. Cir. 1983) . . . . . 11

Fillinger v. Cleveland Society for the Blind,
587 F.2d 336 (6th Cir. 1979) . . . . . 12, 13, 14

Fire-trol Holdings, LLC v. United States,
62 Fed. Cl. 440 (2004) . . . . . 16, 17

Freightliner Corp. v. Caldera,
225 F.3d 1361 (Fed. Cir. 2000) . . . . . 22

FW/PBS, Inc. v. Dallas,
493 U.S. 215 (1990) . . . . . 15

Georgia Department of Human Resources v. Nash,
915 F.2d 1482 (11th Cir. 1990) . . . . . 18

Graphicdata, LLC v. United States,
37 Fed. Cl. 771 (1997) . . . . . 16

Impressa Construzioni Geom. Domenico Garufi v. United States,
238 F.3d 1324 (Fed. Cir. 2001) . . . . . 7

Library of Congress v. Shaw,
478 U.S. 310 (1986) . . . . . 11

Lion Raisins, Inc. v. United States,
416 F.3d 1356 (Fed. Cir. 2005) . . . . . 21

Lujan v. Defenders of Wildlife,
504 U.S. 555 (1992) . . . . . 15

Massachusetts Elected Committee of Blind Vendors v. Matava,
482 F. Supp. 1186 (D. Mass. 1980) . . . . . 14, 15

McCarthy v. Madigan,
503 U.S. 140 (1992) . . . . . 11

**Page(s)**

McKart v. United States,
395 U.S. 185 (1969) . . . . . . . . . . 12

Moore v. Consolidated Edison Co.,
409 F.3d 506 (2d Cir. 2005) . . . . . . . . . . 8

Myers v. Bethlehem Corp.,
303 U.S. 41 (1938) . . . . . . . . . . 12

Myers Investigative and Security Services, Inc. v. United States,
275 F.3d 1366 (2002) . . . . . . . . . . 15

NISH v. Cohen,
247 F. 3d 197 (4th Cir. 2001) . . . . . . . . . . 21

NISH v. Rumsfeld,
348 F.3d 1263 (10th Cir. 2003) . . . . . . . . . . 20, 21

No Spray Coalition, Inc. v. City of New York,
252 F.3d 148, 150 (2d Cir. 2001) . . . . . . . . . . 8

Omega World Travel, Inc. v. United States,
9 Cl. Ct. 623 (1986)) . . . . . . . . . . 16-17

Owen Equip. & Erection Co. v. Kroger,
437 U.S. 365 (1978) . . . . . . . . . . 10

Parrish v. Brownlee,
335 F. Supp. 2d 671 (E.D.N.C. 2004) . . . . . . . . . . 25

PGBA, LLC v. United States,
389 F.3d 1219 (2004) . . . . . . . . . . 23

Rockwell Int'l Corp. v. United States,
4 Cl. Ct. 1, 6 (1983) . . . . . . . . . . 25

Rostker v. Goldberg,
453 U.S. 57 (1981) . . . . . . . . . . 25

Scheuer v. Rhodes,
416 U.S. 232 (1974), overruled on other grounds by,
Harlow v. Fitzgerald, 47 U.S. 800 (1982) . . . . . . . . . . 6

Schlesinger v. Councilman,
420 U.S. 738 (1975) . . . . . . . . . . 11, 12

Shelleman v. United States,
9 Cl. Ct. 452 (1986) . . . . . . . . . . 10

Short Bros., PLC v. United States,
65 Fed. Cl. 695 (2005) . . . . . . . . . . 22

**Page(s)**

Southfork Systems, Inc. v. United States,
141 F.3d 1124 (Fed. Cir. 1998) . . . . . . . . . . 8

State of New York v. United States Postal Service,
690 F. Supp. 1346 (S.D.N.Y. 1988) . . . . . . . . . . 14, 15

Texas v. United States,
523 U.S. 296 (1998) . . . . . . . . . . 18

Texas State Commission for the Blind v. United States,
6 Ct. Cl. 730, 735 n.12 (Ct. Cl. 1984), rev'd on other grounds,
796 F.2d 400 (Fed. Cir. 1986), cert. denied,
479 U.S. 1030 (1987) . . . . . . . . . . 15

Randolph-Sheppard Vendors of America v. Weinberger,
795 F.2d 90 (D.C. Cir. 1986) . . . . . . . . . . 12, 13, 14

Ramcor Servs. Group, Inc. v. United States,
185 F.3d 1286 (Fed. Cir. 1999) . . . . . . . . . . 7

Reynolds v. Army & Air Force Exch. Serv.,
846 F.2d 746 (Fed. Cir. 1988) . . . . . . . . . . 6

Shearin v. United States,
992 F.2d 1195 (Fed. Cir. 1993) . . . . . . . . . . 11

Southfork Systems, Inc. v. United States,
141 F.3d 1124 (Fed. Cir. 1998) . . . . . . . . . . 17

Standard Oil Company of California v. Johnson,
316 U.S. 481 (1942) . . . . . . . . . . 21

Thomson v. Gaskill,
315 U.S. 442 (1942) . . . . . . . . . . 6

United States v. Babcock,
250 U.S. 328 (1919) . . . . . . . . . . 11

United States v. Testan,
424 U.S. 392 (1976) . . . . . . . . . . 10-11

Washington State Dept. of Services for the Blind v. United States,
58 Fed. Cl. 781 (2003) . . . . . . . . . . 7, 8, 10, 21

Williams v. United States,
71 Fed. Cl. 194 (2006) . . . . . . . . . . 6

## ARBITRATION DECISIONS


Page(s)

Alaska Div. of Vocational Rehabilitation v. Dep't of Defense, 66 Fed. Reg. 18,235 (Apr. 6, 2001) . . . . . 10, 21


## FEDERAL STATUTES AND REGULATIONS


5 U.S.C. § 702 . . . . . 7

5 U.S.C. § 706(2)(A) . . . . . 7

10 U.S.C. § 2492 . . . . . 22

20 U.S.C. § 107 . . . . . 1, 17

20 U.S.C. § 107(a) . . . . . 8

20 U.S.C. § 107(b) . . . . . 8

20 U.S.C. § 107(d) . . . . . 17

20 U.S.C. § 107a(a)(5) . . . . . 8

20 U.S.C. § 107a(b) . . . . . 8

20 U.S.C. § 107d-1 . . . . . 13

20 U.S.C. § 107d-1(a) . . . . . 8

20 U.S.C. § 107d-1(b) . . . . . 5, 8, 9, 11, 13, 15

20 U.S.C. § 107e(7) . . . . . 8

28 U.S.C. § 1491(b)(1) . . . . . 7, 16

28 U.S.C. § 1491(b)(4) . . . . . 7

31 U.S.C. § 1341 . . . . . 24

31 U.S.C. § 3551 . . . . . 16

34 C.F.R. § 395.1(d) . . . . . 9, 20

34 C.F.R. § 395.33 . . . . . 13, 17

34 C.F.R. § 395.33(a) . . . . . 9

34 C.F.R. § 395.33(b) . . . . . 9

34 C.F.R. § 395.33(d) . . . . . 9

48 C.F.R. § 15.802 . . . . . 22

**Page(s)**

48 C.F.R. § 17.207(c)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

DOD Directive No. 1125.3, § E1.1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10, 20

DOD Directive No. 1125.3, § E2.1.3.1.2 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9-10

**MISCELLANEOUS**

RCFC 12(b)(1) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 6

RCFC App. C, ¶ 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

**IN THE UNITED STATES COURT OF FEDERAL CLAIMS**
**(BID PROTEST)**

| | | |
|---|---|---|
| COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, | ) | |
| and | ) | |
| STEVEN RIGHTSELL, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 06-666C |
| v. | ) | |
| | ) | (Judge Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S MOTION TO DISMISS AND**
**<u>RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION</u>**

Pursuant to Rule of the United States Court of Federal Claims ("RCFC") 12(b)(1), defendant respectfully requests the Court to dismiss the complaint for lack of jurisdiction. Plaintiffs have failed to exhaust their statutorily-prescribed administrative remedies under the Randolph-Sheppard Act, 20 U.S.C. §§ 107, <u>et seq</u>., and are, accordingly, precluded from proceeding in this Court by the legislation they invoke as the basis of their claim. Further, neither plaintiff enjoys standing to prosecute a bid protest claim before this Court and plaintiffs' claim is not ripe for review. Finally, as to the merit of the plaintiffs' motion, the challenged agency action was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law. In support of this motion, we rely upon the pleadings of record, the administrative record, the declaration attached to this motion, and the following brief.

## <u>DEFENDANT'S BRIEF</u>

## <u>STATEMENT OF THE ISSUES</u>

1. Whether the Court lacks jurisdiction over plaintiffs' claims because plaintiffs have failed to comply with the exhaustion requirements set forth in the Randolph-Sheppard Act and the Department of Education's implementing regulations.

2. Whether the Court lacks jurisdiction over plaintiffs' claims because plaintiffs lack standing to pursue judicial relief.

3. Whether the Court lacks jurisdiction over plaintiffs' claims because plaintiffs' claims are not ripe for review.

4. Whether the Court may determine that the proposed concept(s) constitute a "cafeteria" for purposes of the Randolph-Sheppard Act.

5. Whether the Randolph-Sheppard Act applies to internal Nonappropriated Fund Instrumentality ("NAFI") operations.

6. Whether plaintiffs are entitled to declaratory relief or a preliminary injunction.

## STATEMENT OF THE CASE

### I. Nature of the Case

Plaintiffs assert this is a pre-award protest (without any proposed procurement) challenging the Air Force's decision that there are not sufficient appropriated funds to permit the contracting officer to exercise an option of a services contract for operation of a military dining facility at Buckley Air Force Base, Colorado ("Buckley AFB"). Plaintiffs, the Colorado Department of Human Services, Division of Vocational Rehabilitation (the "Colorado DVR") and Steven P. Rightsell, seek an injunction pending Department of Education arbitration under the Randolph-Sheppard Act (the "R-SA" or the "Act"), as well as a declaratory judgment that the Act applies, preventing Buckley AFB from turning the building over to its NAFI to operate a restaurant (despite the absence of any formal Government decision to do so).

### II. Statement of the Facts

In October 1999, the Colorado DVR was awarded the contract to operate the High Frontier Dining Facility on Buckley AFB. AR[1] 1-18; Compl. ¶ 7. Since October 2005, Steven Rightsell, a licensed blind vendor, has been assigned by Colorado DVR to operate this cafeteria.

---

[1] "AR ___" refers to a page in the administrative record, submitted to the Court on October 2, 2006.

Compl. ¶ 8. The High Frontier Dining Facility was a military dining facility that only served military members on active duty and selected others. Henline Decl. ¶ 2

In the spring of 2006, Air Force Space Command ordered Buckley AFB to find ways to cut contractual obligations to meet a tighter fiscal year 2007 budget. AR 20, 21-26, 35, 68-72. Muhs Decl. ¶ 2. Air Force Space Command was required to reduce the overall budget by approximately $108,000,000; Buckley AFB's share of the reduction was $2,200,000. Id. AR 36, 68.

These economic considerations caused the installation leadership to elect to close the High Frontier Dining Facility, the military dining facility for Buckley AFB. AR 73-74, 85-86. The closure of this facility is expected to save the annual cost of the Colorado DVR's contract ($1,400,000) as well as the subsistence-in-kind contract for raw food items and other expenses associated with running a military dining facility in this building, for a total savings of $2,175,000. Henline Decl. ¶¶ 3-5. The total savings from closing the military dining facility is a significant contribution to dealing with the budget reduction. AR 29, 36. The dining facility was one of several contract items cut or reduced to meet budgetary restrictions. See AR 36, 68.

The military dining facility contract was set to expire on September 30, 2006, at the end of fiscal year 2006. Before expending any appropriated funds for fiscal year 2007 activities, the installation leadership opted to move forward with closing the facility, in order to realize the projected savings. See AR 1-18, 83-86. Because the installation leadership eliminated the appropriated funding needed for the contract and because no military dining facility is to be operated in this building, the contracting officer determined she could not exercise the option periods remaining on this contract. Welch Decl. ¶ 4. See FAR § 17.207(c)(1). In May 2006, the defendant informed Mr. Rightsell and the Colorado DVR that the Air Force intended to close the High Frontier Dining Facility. AR 74; Compl. ¶ 9. On July 25, 2006, the contracting officer gave formal notice to the Colorado DVR that Buckley AFB would not exercise the next option year for the contract, based upon the lack of appropriated funds. Compl. ¶ 10; AR 79.

In conjunction with the planned closure of the High Frontier Dining Facility, the installation commander asked Randy Henline, the Director of Services for Buckely AFB, to develop concepts and proposals for a food/beverage operation to fulfill the needs of the base populace if the military dining facility was closed. Henline Decl. ¶ 7. Several possible concepts were presented, none of which involve the operation of a military dining facility or the use of appropriated funds. Henline Decl. ¶ 8. No consideration has been given to contracting with commercial vendors, nor was any solicitation prepared. Henline Decl. ¶ 13.

One possible concept developed for a food/beverage operation was to open an internally operated restaurant/lounge that would provide table service for breakfast, lunch and dinner, but that could also accommodate high-volume lunch service. AR 37-67; Henline Decl. ¶ 9. The services division created a team to work the various portions of the possible concepts for follow-on operations. In mid-August 2006, in coordination with the Air Force Space Command staff, several focus groups were held with various segments of the base populace to determine what community members would prefer to satisfy their needs for food and beverages on or near the installation. AR 82, 147-153.

The concept for what will replace the military dining facility is still in research and discussion. The possibility of turning the building over to a NAFI has been discussed. No final decision, however, has been made. Possible concepts that are being considered (but have not yet been adopted) include:

- An internet café area (serving Starbucks coffee);
- A bar/lounge area with jukebox, pool tables and televisions for sporting events;
- A food operation area with fast food options to service a high-volume lunchtime demand;
- Evening restaurant table service, including a fine dining at least one evening per month, weekly dining specials, holiday, and special event dining;
- Sunday brunch.

AR 181-212; Henline Decl. ¶ 9. Buckley has also discussed having a facility akin to Applebee's or Chili's. AR 37-67.

Only limited actions have been taken so far to implement possible concepts. In addition to the analysis and planning described above, Buckley AFB has negotiated the addition of the Buckley NAF activities to the Air Force Services Agency Prime Vendor Food Contract. AR 171-180; Henline Decl. ¶ 10(a). The Air Force Services Agency Prime Vendor Food Contract is a food and supplies contract, which allows participating activities to issue delivery orders for those foods and supplies needed in the operations. The prime vendor contract does not involve the operation of any facility, cafeteria, or vending. Henline Decl. ¶ 10(a). Buckley AFB also has staffed a package to the installation commander to have him request an exemption from the Air Force Services Agency coffee contract. AR 154-157, 158-166, 170; Henline Decl. ¶ 10(b). This would permit the proposed activities to enter an agreement with Starbucks Coffee for their coffee product and supplies. This agreement also would not involve the operation of the restaurant, but pertains only to the provision of product and supplies.

Further, the most complete concept to date envisions a restaurant that will be open to all authorized Morale, Welfare, and Recreation Program patrons. Such a restaurant would not function as the primary installation provider of subsistence to entitled active duty military personnel. The limited number of personnel who were previously provided subsistence-in-kind in the military dining facility have now been placed on a basic allowance for subsistence, a monetary stipend which permits them to eat anywhere they choose, including commercial establishments off-base. AR 86; Henline Decl. ¶ 11-12.

On September 20, 2006, Colorado DVR filed a complaint with the Secretary of Education requesting arbitration, pursuant to 20 U.S.C. § 107d-1(b). Compl. ¶ 20; Pl. App. 26-28.[2] On

[2] "Pl. App. ___" refers to a page in the appendix attached to plaintiffs' motion for a preliminary injunction.

September 22, 2006, Colorado DVR and Mr. Rightsell filed a complaint with this Court, seeking injunctive and declaratory relief.

As of this date, the military dining facility has been closed, plaintiffs' contract has expired, and no follow-on solicitation or contract is contemplated. All work on a follow-on use of the closed building has been put on hold until a resolution of the plaintiffs' complaint is concluded. Henline Decl. ¶ 12. The military members who were previously authorized to eat in the military dining facility continue to be free to eat anywhere they choose, including off-base. Id.

## ARGUMENT

### I. Standards of Review

To withstand a Rule 12(b)(1) motion to dismiss, a plaintiff bears the burden of proving the allegations supporting jurisdiction. Alaska Pulp Corp. v. United States, 38 Fed. Cl. 141, 144 (1997); American Pacific Roofing Co. v. United States, 21 Cl. Ct. 265, 267 (1990) ("where the court's jurisdiction is put in question, plaintiff 'bears the burden of establishing subject matter jurisdiction by a preponderance of the evidence'") (quoting Reynolds v. Army & Air Force Exch. Serv., 846 F.2d 746, 748 (Fed. Cir. 1988)); accord Thomson v. Gaskill, 315 U.S. 442, 446 (1942) ("if a plaintiff's allegations of jurisdictional fact are challenged . . ., [it] bears the burden of supporting the allegations by competent proof"). Unless the undisputed facts reveal a basis upon which the non-moving party may prevail, the Court must grant a motion to dismiss. Williams v. United States, 71 Fed. Cl. 194, 197 (2006) (citing Scheuer v. Rhodes, 416 U.S. 232, 236 (1974), overruled on other grounds by, Harlow v. Fitzgerald, 47 U.S. 800 (1982)). If a motion to dismiss for lack of subject matter jurisdiction challenges the truth of the jurisdictional facts alleged in the complaint, this Court may consider relevant evidence to resolve disputed facts. Reynolds, 846 F.2d at 747. Moreover, "conclusory allegations unsupported by any factual assertions will not withstand a motion to dismiss." CC Distrib., Inc. v. United States, 38 Fed. Cl. 771, 775 (1997) (quoting Briscoe v. LaHue, 663 F.2d 713, 723 (7th Cir. 1981)).

Judicial review of the agency's actions in bid protest cases is not a de novo proceeding; rather, the scope of the review is limited to the administrative record.[3] The proper standard of review is whether the agency action was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law based solely upon the administrative record. 28 U.S.C. § 1491(b)(1), (4); 5 U.S.C. § 702, 706(2)(A); Impressa Construzioni Geom. Domenico Garufi v. United States, 238 F.3d 1324, 1332 (Fed. Cir. 2001); see also Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971), overruled on other grounds by, Califano v. Sanders, 430 U.S. 99 (1977); Ramcor Servs. Group, Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999). In determining whether the agency's action was arbitrary or capricious, the scope of the Court's review is very limited. Cincom Systems, Inc. v. United States, 37 Fed. Cl. 663, 671 (1997). The proper focus of this Court's scrutiny is the agency's articulated rationale for the decision, and the administrative record underlying it. Camp v. Pitts, 411 U.S. 138, 142-43 (1973).

Finally, this Court's equitable jurisdiction may be invoked only in "extraordinary circumstances." Washington State Dept. of Services for the Blind v. United States, 58 Fed. Cl. 781, 787 (2003). A plaintiff bears a "heavy burden" in requesting injunctive relief, and must demonstrate its right to such relief by "clear and convincing evidence." Id. A party is only entitled to a preliminary injunction if: (1) the party has a likelihood of success on the merits; (2) the party will be irreparably harmed without injunctive relief; (3) the balance of hardships favors the petitioning party; and (4) the public interest favors the grant of injunctive relief. See id. A plaintiff must show a "reasonable probability" of success on the merits to justify a preliminary

[3] In the present case, however, because there is no procurement, the administrative record is not the typical administrative record for a bid protest. This Court has issued specific guidelines as to what should be contained in an administrative record for a bid protest that serve to inform the agency as to the proper contents of the record. RCFC App. C, ¶ 22. Because there has been no procurement, procurement-related documents cannot and do not appear in the record. Further, because there has been no final decision as to the shape of follow-on operations, there are no actual decision documents regarding possible follow-on operations. Instead, the Government has attempted to provide documents regarding the closure of the facility and the general discussions of the possible follow on operations.

injunction. Id. An injunction should not be granted unless the movant, by a clear showing, carries the burden of persuasion. Moore v. Consolidated Edison Co., 409 F.3d 506, 510 (2d Cir. 2005); No Spray Coalition, Inc. v. City of New York, 252 F.3d 148, 150 (2d Cir. 2001).

## II. The Randolph-Sheppard Act

The Randolph-Sheppard Act ("R-SA") states that, "[f]or the purposes of providing blind persons with remunerative employment, enlarging the economic opportunities of the blind, and stimulating the blind to greater efforts in striving to make themselves self-supporting, blind persons licensed under the provisions of this chapter shall be authorized to operate vending facilities on any Federal property." 20 U.S.C. § 107(a) (emphasis added). The R-SA further provides that, in the award of contracts for vending facilities, priority shall be granted to "blind persons licensed by a State agency." 20 U.S.C. § 107(b) (emphasis added). The statute defines a "vending facility" as "automatic vending machines, cafeterias, snack bars, cart services, shelters, counters, and such other appropriate auxiliary equipment as the Secretary [of Education] may by regulation prescribe." 20 U.S.C. § 107e(7).

The Secretary of Education administers the R-SA and is authorized to prescribe regulations to effectuate the purposes of the statute. Southfork Systems, Inc. v. United States, 141 F.3d 1124, 1127 (Fed. Cir. 1998). The Secretary is responsible for designating in each state an agency to issue licenses to blind persons for the operation of vending facilities. Id. (citing 20 U.S.C. § 107a(a)(5)). A designated state licensing agency ("SLA") is required to give preference to blind persons who are in need of employment when issuing a license for the operation of a vending facility. Id. (citing 20 U.S.C. § 107a(b)).

The R-SA also contains a hearing and arbitration provision that creates a two-tiered dispute resolution framework for resolving conflicts. 20 U.S.C. §§ 107d-1(a), (b). Section 107d-1(a) provides for the arbitration of disputes between a licensed blind vendor and an SLA. 20 U.S.C. § 107d-1(a). Section 107d-1(b) provides for the arbitration of disputes between an SLA and a Federal department or agency. 20 U.S.C. § 107d-1(b). This section provides, in part

pertinent, that where an SLA determines that a Federal entity is failing to comply with the Act or its implementing regulations, the SLA "may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant . . . and the decision of such panel shall be final and binding on the parties." Id.

Regulations promulgated by the Department of Education's Office of Special Education and Rehabilitation Service are found at Title 34 of the Code of Federal Regulations sections 395.1 through 395.38. Section 395.33 provides that qualified blind vendors are to be accorded a priority in the competitive selection of contracts awarding opportunities to operate cafeterias on Federal property. 34 C.F.R. § 395.33(a). Pursuant to section 395.33(b), the vendor's qualification may be established through the response of an SLA to the Federal property's solicitation. The vendor would demonstrate the requisite qualification "[i]f the proposal received from the State licensing agency is judged to be within a competitive range and has been ranked among those proposals which have a reasonable chance of being selected for final award." 34 C.F.R. § 395.33(b). Section 395.33(d) permits, but does not require, Federal property managers to afford priorities through direct negotiations with SLAs where the Federal entity determines that it can obtain the required cafeteria operation "at a reasonable cost, with food of a high quality comparable to that currently provided employees" consistent with the qualifications established for priority under subsection (b). 34 C.F.R. § 395.33(d).

While the R-SA itself does not define the term "cafeteria," section 395.1(d) of the regulations provides such a definition. This section states, in pertinent part,

> Cafeteria means a food dispensing facility capable of providing a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a line where the customer serves himself from displayed selections.

34 C.F.R. § 395.1(d).

In addition, the Department of Defense ("DOD") has promulgated its own guidance to further the goals of the R-SA. DOD Directive No. 1125.3, section E2.1.3.1.2, provides that "if the State licensing agency submits a proposal and it is within the competitive range established

by the contracting officer, the contract will be awarded to the State licensing agency." See Commonwealth of Kentucky Education Cabinet v. United States, 424 F.3d 1222, 1224 (Fed. Cir. 2005). DOD Directive No. 1125.3, section E1.1.2 defines cafeteria as

> a food dispensing facility which provides a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a serving line where the customer serves or selects for himself from displayed selections. A cafeteria may be fully automatic, self-service, or have limited waiter or waitress service. Table or booth seating facilities are always provided. DoD Component food dispensing facilities which conduct cafeteria-type operations during part of their normal operating day and full table-service operations during the remainder of their normal operating day are not 'cafeterias' if they engage primarily in full table service operations.

DOD Directive No. 1125.3, § E1.1.2

Nothing in the Randolph-Sheppard Act precludes the Government from operating its own dining facilities. Instead, courts and arbitration panels under the R-SA have specifically ruled that not all food service operations qualify as "cafeterias" and that the Government can operate even those that do. See Washington State Dept. of Services for the Blind v. United States, 58 Fed. Cl. 781 (2003); Alaska Div. of Vocational Rehabilitation v. Dep't of Defense, 66 Fed. Reg. 18,235 (Apr. 6, 2001) (where the Army retained operational control of dining facility and operated it in-house, the priority provisions of the RSA are not triggered).

## III. This Court Does Not Possess Subject Matter Jurisdiction to Entertain Plaintiffs' Challenge

### A. The Jurisdiction Of This Court Is Strictly Limited By Statute

All Federal courts are courts of limited jurisdiction. Owen Equip. & Erection Co. v. Kroger, 437 U.S. 365, 374 (1978) (citations omitted). This Court – "a court of exceedingly limited statutory jurisdiction" – is no exception. Shelleman v. United States, 9 Cl. Ct. 452, 455 (1986).

This Court's jurisdiction to entertain a suit and to grant relief is circumscribed by the extent to which the United States has waived its sovereign immunity. United States v. Testan,

424 U.S. 392, 399 (1976). Waiver of sovereign immunity, and hence consent to be sued, must be expressed unequivocally – it cannot be implied. Library of Congress v. Shaw, 478 U.S. 310, 318 (1986). Further, waivers of sovereign immunity, such as the bid protest statute, "must be narrowly construed." Anderson Columbia Envtl., Inc. v. United States, 42 Fed. Cl. 880, 885 (1999) (citations omitted). As the Federal Circuit has stated, "[i]n construing a statute waiving the sovereign immunity of the United States, great care must be taken not to expand liability beyond that which was explicitly consented to by Congress." Fidelity Constr. Co. v. United States, 700 F.2d 1379, 1387 (Fed. Cir. 1983).

**B. This Court Does Not Have Jurisdiction to Entertain Plaintiffs' Action Because Plaintiffs Have Failed To Exhaust Their Administrative Remedies**

Generally, where Congress has established a right and a special administrative remedy, Congress intends that such administrative remedy be exhausted before a court may exercise jurisdiction over the matter. United States v. Babcock, 250 U.S. 328, 331 (1919) ("where a statute confers a right and provides a special remedy, the remedy is exclusive"); see Shearin v. United States, 992 F.2d 1195, 1196 (Fed. Cir. 1993) (statute creating a special remedy preempts more general jurisdiction over the same subject matter). In this case, Congress established a special right and a special administrative remedy at the United States Department of Education. See 20 U.S.C. § 107d-1(b). Indeed, Colorado DVR is in the process of exercising this right before the Department of Education. Compl. ¶ 20. Thus, this Court does not possess jurisdiction over plaintiffs' complaint.

The Supreme Court generally requires the exhaustion of Congressionally prescribed administrative remedies prior to judicial intervention in a dispute. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). "[T]he exhaustion doctrine recognizes the notion, grounded in Congress' delegation of authority to coordinate branches of Government, that agencies, not the courts, ought to have primary responsibility for the programs that Congress has charged them to administer." Id. at 145. The exhaustion requirement serves several purposes. See Schlesinger v. Councilman, 420 U.S. 738, 756-57 (1975). First, exhaustion may avoid burdening the judicial

process. Id. "A complaining party may be successful in vindicating his rights in the administrative process. If he is required to pursue his administrative remedies, the courts may never have to intervene." McKart v. United States, 395 U.S. 185, 195 (1969). Second, completion of the full administrative review process focuses factual and legal arguments and provides a valuable written record in the event judicial review becomes necessary. "[W]hatever judicial review is available will be informed and narrowed by the agency's own decision." Id. Third, reliance on the administrative process allows full use of the expertise of agency decision makers. Schlesinger, 420 U.S. at 756. Finally, the exhaustion doctrine removes the friction caused by judicial intrusion into agency affairs. It permits the agency to discover and correct its own errors, and it prevents the "deliberate flaunting of administrative process [that] could weaken the effectiveness of any agency by encouraging people to ignore its procedures." McKart, 398 U.S. at 195.

Congress created a specific dispute resolution system for blind vendors and SLRs and conditioned judicial review on a final agency action. It did not envision that an aggrieved party could circumvent the system and seek de novo determination in Federal court. Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d 90, 103 (D.C. Cir. 1986). "Federal courts should not be the tribunal of first resort for the resolution of such grievances." Fillinger v. Cleveland Society for the Blind, 587 F.2d 336, 338 (6th Cir. 1979). It is a "long settled rule of judicial administration that no one is entitled to judicial relief for a supposed or threatened injury until the prescribed administrative remedy has been exhausted." Myers v. Bethlehem Corp., 303 U.S. 41, 50-51 (1938).

Plaintiffs' failure to exhaust statutorily mandated administrative remedies presents a threshold issue of whether the claims may be heard in this Court. See Commonwealth of Kentucky, Education Cabinet, Dep't for the Blind v. United States, 424 F.3d 1222 (Fed. Cir. 2005); Committee of Blind Vendors of the District of Columbia v. District of Columbia, 28 F.3d 130, 133 (D.C. Cir. 1994) (citing Bell v. Hood, 327 U.S. 678, 682 (1946)). Congress amended

the Act in 1974 to add the provisions directing the Secretary of Education to prescribe regulations affording a priority to proposals submitted by SLA's that established the ability of blind vendors to operate a cafeteria in such a manner as to provide food service at comparable cost and comparable high quality as that available from other providers of cafeteria services. Those amendments also set forth a detailed and precise, two-tiered, administrative dispute resolution system for resolving claims by vendors and/or SLA's arising under the Act. See, e.g., Committee of Blind Vendors, 28 F.3d at 134, 135; Randolph-Sheppard Vendors of America v. Weinberger, 795 F.2d at 102; Alabama Dep't of Rehabilitation Services v. United States Dep't of Veterans Affairs, 165 F. Supp. 2d 1262, 1266-67 (M.D. Ala. 2001). That administrative dispute resolution framework provides that a vendor who is disappointed with the SLA's administration of the program may have a full evidentiary hearing before the SLA, and, if dissatisfied with the SLA's decision, file a complaint with the Secretary of Education, who shall convene an arbitration panel. See 20 U.S.C. §§ 107d-1, 107d-2; 34 C.F.R. § 395.33; see also Fillinger, 587 F.2d 336. It further provides that:

> [w]henever any State licensing agency determines that any department, agency, or instrumentality of the United States that has control of the maintenance, operation, and protection of Federal property is failing to comply with the provisions of this chapter or any regulations issued there under such licensing agency may file a complaint with the Secretary who shall convene a panel to arbitrate the dispute pursuant to Section 107d-2 of this title and the decision of such panel shall be final and binding on the parties as otherwise provided in this chapter.

20 U.S.C. § 107d-1(b).

The United States Court of Appeals for the Federal Circuit has held that this Court does not possess jurisdiction over a claim for violation of the R-SA where a party has failed to exhaust such administrative remedies. In Commonwealth of Kentucky, Education Cabinet v. United States, 424 F.3d 1222 (Fed. Cir. 2005), a state licensing agency representing the interests of blind vendors filed a post-award bid protest against the United States in the United States Court of Federal Claims, contesting the award of a cafeteria-vending contract. This Court dismissed the

action for lack of subject mater jurisdiction. Commonwealth of Kentucky, Education Cabinet, Dep't for the Blind v. United States, 62 Fed. Cl. 445 (2004). On appeal, the Federal Circuit held that Congress had "created a comprehensive scheme for the administration of disputes arising from violations of the [R-SA]." 424 F.3d at 1228. Specifically, the Federal Circuit held that 20 U.S.C. § 107d-1(b) sets forth a mandatory arbitration scheme for violations of the statute. Accordingly, the Federal Circuit held that this Court does not possess jurisdiction over a claim for violation of the R-SA when plaintiffs have failed to exhaust their administrative remedies. Id. at 1229.

The Federal Circuit's decision is consistent with the holdings of other Federal courts, which have repeatedly determined that Congress intended that the R-SA's administrative framework be exhausted prior to suit. See Committee of Blind Vendors, 28 F.3d at 134; Weinberger, 795 F.2d at 103-04; Fillinger, 587 F.2d at 338; State of New York v. United States Postal Service, 690 F. Supp. 1346, 1349-50 (S.D.N.Y. 1988); Massachusetts Elected Committee of Blind Vendors v. Matava, 482 F. Supp. 1186, 1189 (D. Mass. 1980). The courts have routinely responded to plaintiffs' failures to exhaust the Act's prescribed administrative remedial scheme by denying judicial relief to plaintiffs. See, e.g., Committee of Blind Vendors, 28 F.3d at 135 (remanding case to district court with instructions to dismiss); Weinberger, 795 F.2d at 111 (reversing district court's judgment and remanding with order that case be dismissed "without prejudice to any party pursuing the arbitration contemplated by the Act and thus ultimately being entitled to judicial review of the arbitration decision as a final agency action"); Fillinger, 587 F.2d at 337 (reversing district court's dismissal for failure to exhaust based on fairness concerns where case was commenced in 1971 and not decided by trial court until 1974, with exhaustion requirement being enacted with 1974 amendment of the Act, but staying all further court proceedings "until plaintiffs have had an opportunity to exhaust their administrative and arbitration remedies"); Alabama Dep't, 165 F. Supp. 2d at 1276 (dismissing case for failure to

exhaust); State of New York, 690 F. Supp. at 1351, 1353 (staying action pending plaintiffs' exhaustion of administrative remedies); Matava, 482 F. Supp. at 1189 (D. Mass. 1980).

Only one court decision appears to have held that the R-SA's arbitration scheme was permissive. In Texas State Commission for the Blind v. United States, 6 Ct. Cl. 730, 735 n.12 (Ct. Cl. 1984), rev'd on other grounds, 796 F.2d 400 (Fed. Cir. 1986), cert. denied, 479 U.S. 1030 (1987), this Court's predecessor observed in a footnote that "[a]rbitration under the Randolph-Sheppard Act is voluntary." In that case, however, the parties had already arbitrated the dispute, and the Claims Court merely upheld an arbitration award obtained through the exercise of the administrative remedies provided in the Act. Thus, the question of exhaustion was not directly at issue, and the court's comment was dicta. United States Postal Service, 690 F. Supp. at 1351. Indeed, the Federal Circuit has distinguished this case on just such grounds, and specifically has noted its disagreement with the holding in Texas State. Commonwealth of Kentucky, 424 F.3d at 1229.

In the present case, plaintiffs allege that the Government has violated the R-SA. Colorado DVR has filed a complaint with the Secretary of Education, pursuant to 20 U.S.C. § 107d-1(b). Compl. ¶ 20; Pl. App. 26-28. Plaintiffs may not circumvent this administrative remedy by seeking judicial review of their claim in this Court. Accordingly, we respectfully request that plaintiffs complaint be dismissed.

**C. This Court Does Not Have Jurisdiction to Entertain Plaintiffs' Action Because Neither Plaintiff Is An "Interested Party" Pursuant To The Tucker Act, And Therefore Neither Has Standing to Prosecute This Protest**

Standing is a threshold jurisdictional issue. Myers Investigative and Security Services, Inc. v. United States, 275 F.3d 1366, 1369 (2002). "The party invoking federal jurisdiction bears the burden of establishing the elements [of standing]." Id. (citing Lujan v. Defenders of Wildlife, 504 U.S. 555, 561 (1992); FW/PBS, Inc. v. Dallas, 493 U.S. 215, 231, (1990)).

This Court's jurisdiction to consider bid protests is conferred and defined by the Tucker Act, Title 28 of the United States Code, section 1491(b). Graphicdata, LLC v. United States, 37 Fed. Cl. 771, 778 (1997). Specifically, the Court possesses:

> jurisdiction to render judgment on an action by an interested party objecting to a solicitation by a Federal agency for bids or proposals for a proposed contract or to a proposed award or the award of a contract or any alleged violation of statute or regulation in connection with a procurement or a proposed procurement. ... without regard to whether suit is instituted before or after the contract is awarded.

28 U.S.C.§ 1491(b)(1) (emphasis added). Therefore, this Court only has jurisdiction to adjudicate claims under its bid protest jurisdiction if the plaintiff is an interested party objecting to at least one of four items: (1) a solicitation; (2) a proposed award; (3) an award; or (4) an "alleged violation of statute or regulation in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1).

The Federal Circuit has held that the term "interested party," which is not defined in the Tucker Act, is to be construed in accordance with the Competition in Contracting Act, 31 U.S.C. §§ 3551(2) (Supp. IV 1998), and that "standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract." AGFE, AFL-CIO v. United States, 258 F.3d 1294, 1302 (Fed. Cir. 2000) (emphasis added).

Plaintiffs, however, cannot allege that they are "actual or prospective bidders or offerors," as there is no procurement to serve as the basis for their claim. See Fire-trol Holdings, LLC v. United States, 62 Fed. Cl. 440 (2004). Plaintiffs do not and cannot cite to a single case in which this Court has held that it possessed bid protest jurisdiction over a Randolph-Sheppard Act claim without a procurement. While plaintiffs may be capable of asserting an intent to bid upon or an interest in a future procurement that Buckley AFB might issue for the operation of food/beverage services at the facility, there must be "outstanding a specific viable solicitation" before plaintiffs can establish that they are bidders or offerors. Fire-trol, 62 Fed. Cl. at 444 (quoting Omega

World Travel, Inc. v. United States, 9 Cl. Ct. 623, 628 (1986) (emphasis in original)). In the present case, however, there no outstanding solicitation, and Buckley AFB has no intention at this time to issue a solicitation for the operation of food/beverage services at the facility. Henline Decl. ¶ 13. Before issuing a solicitation, agencies must synopsize their intent as required by the Competition in Contracting Act and Federal Acquisition Regulation Part 5. No such synopsis has been published regarding the closed dining facility. Accordingly, plaintiffs are not "interested parties" and lack standing to bring a bid protest action.

Further, even if there was an outstanding solicitation, Mr. Rightsell himself is not and cannot be a bidder or offeror under the Randolph-Sheppard Act. Title 34 of the Code of Federal Regulations, section 395.33 provides that the state (through its SLA) serves as the bidder or offeror in such procurements. See also Southfork Systems, Inc. v. United States, 141 F.3d 1124, 1127 (Fed. Cir. 1998) ("State Licensing Agency can respond on behalf of a licensed vendor to a solicitation for offers for cafeteria services.") Nor does the complaint allege that Mr. Rightsell is a bidder or offeror. Instead, Mr Rightsell was merely the licensee of the SLA on the state's previous contract, which has now expired. As a protest may be initiated "only by an actual or prospective bidder who would have been in a position to receive the challenged award," Federal Data Corp. v. United States, 911 F.2d 699, 703 (Fed. Cir. 1990) (cited in Cincom System. Inc. v. United States, 37 Fed. Cl. 663, 669 (1997)), Mr. Rightsell is not properly a party. Accordingly, Mr. Rightsell lacks standing under the Tucker Act.

### D. Mr. Rightsell Does Not Possess Standing Under the Randolph-Sheppard Act

The Randolph-Sheppard Act confers only limited, statutorily defined rights upon blind licensees, such as Mr. Rightsell. See 20 U.S.C. § 107(d)(1), (2). The Act's detailed administrative dispute resolution scheme entitles a blind licensee who is dissatisfied with any action arising from the SLA's operation or administration of the vending facility program to a full evidentiary hearing by the SLA. Id. A vendor who is dissatisfied with any action or decision resulting from the hearing by the SLA may file a petition with the Secretary of Education. Id.

However, the Act "grants the blind vendor no substantive entitlement to any remedies." Georgia Department of Human Resources v. Nash, 915 F.2d 1482, 1488 (11th Cir. 1990); Alabama Dep't of Rehabilitation Services, 1665 F. Supp. 2d at 1267. Thus, even assuming that the parties otherwise would possess the standing to pursue their claims before this Court, Mr. Rightsell possesses no substantive rights that are susceptible to injury to provide him standing in this matter.

**E. This Court Does Not Have Jurisdiction to Entertain Plaintiffs' Action Because Plaintiffs' Claim Is Not Ripe For Adjudication**

Plaintiffs' challenge to Buckley AFB's consideration of the possible concept to turn the building over to the NAFI and to allow the NAFI to open an internally operated restaurant in the space previously occupied by the military dining facility is not ripe for adjudication. The alleged agency actions have not actually taken place yet, and it remains unclear how, or whether, they will be implemented.

If a claim is not ripe for adjudication, this Court does not possess jurisdiction to entertain the claim. Bannum, Inc. v. United States, 56 Fed. Cl. 453, 462 (2003) (citation omitted). "A claim is not ripe 'if it is premised upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" Id. (quoting Texas v. United States, 523 U.S. 296, 300 (1998)). The portion of plaintiffs' claim challenging Buckley AFB's use of the space previously occupied by the military dining facility is premised upon future events that may not occur as anticipated, and is not ripe for review.

First, to the extent plaintiffs challenge any possible future solicitation for the operation of food/beverage service at the space previously occupied by the military dining facility, such claim is clearly not ripe for review. Plaintiffs cannot describe the terms or character of such solicitation. Accordingly, plaintiffs cannot claim that any possible future solicitation would not comply with the Randolph-Sheppard Act. Further, the administrative record is devoid of any indication that Buckley AFB has prepared or will prepare any solicitation for the operation of food services at the facility. See also Henline Decl. ¶ 13.

Second, to the extent that plaintiffs challenge the opening of an internally operated restaurant in the space previously occupied by the military dining facility, plaintiffs' claims are also premature. While it is clear that Buckley AFB is considering opening an internally operated food/beverage service in the space, the nature of such operations is still being refined. Accordingly, plaintiffs cannot demonstrate that any such operations will be a "cafeteria" within the meaning of the Randolph-Sheppard Act. At best, plaintiffs can only assert that some of the proposed concepts being considered might fall within the ambit of the implementing regulation's definition of a "cafeteria." However, such assertions still remain speculative, at best.

Since Department of Defense policy as set out in the DOD Instruction is to solicit competitive bids under the R-SA when a contract for "operation" of a cafeteria is desired, plaintiff's allegation otherwise is also speculative, with respect to a future occurrence at Buckley. Plaintiffs' challenges are not ripe for adjudication because they are premised on future events that may not occur as anticipated. Accordingly, this Court lacks jurisdiction to entertain those claims.

## IV. The Randolph-Shepard Act Does Not Apply, Nor Are The Possible NAFI Operations A Cafeteria

In support of their complaint, the plaintiffs allege that Buckley AFB's leadership is violating the provisions of the R-SA by its consideration of alternatives. Specifically, plaintiffs allege that

> [t]he Randolph-Sheppard priority applies to the operation of food services at Buckley Air force Base, including the facility currently known as the High Frontier Dining Facility and the renovated facility to be known as the High Frontier Inn.

Compl. ¶ 23. Plaintiffs seek a preliminary injunction and a judicial determination and declaration that the "Randolph-Sheppard priority is applicable to the High Frontier Dining Facility and the renovated facility to be known as the High Frontier Inn." Compl. at 6.

There is no issue regarding the applicability of the priority of the blind to operate the now-closed High Frontier Dining Facility. The state-licensed blind vendor was operating that facility pursuant to a contract with the installation and the state licensing agency that was

executed pursuant to the provisions of the R-SA. See Compl. ¶¶ 7-8. The previous food services facility was a "cafeteria" within the meaning of the R-SA. That facility has now been closed and the contract for its operation by plaintiffs has expired. AR 79.

With regard to the applicability of the R-SA requirements to the follow-on uses of the facility, such applicability will depend on two things: whether the follow-on operations constitute a "cafeteria" within the meaning of the Act, and whether the follow-on operations will be operated pursuant to contract.

As noted above, it is currently impossible for this Court to determine whether follow on operations will constitute a "cafeteria," since the Air Force has not yet reached a final decision on this matter. A variety of concepts have been discussed, including but not limited to having an internet café area, a bar/lounge area, a food operation with fast food options, evening full table-service restaurant operations, Sunday brunch, and/or a restaurant akin to Chili's or Applebee's. Henline Decl. ¶ 9; AR 37-67. Randolph-Sheppard Act priority, however, only applies to the "operation" of a "cafeteria." As noted above, the regulations define a "cafeteria" as "a food dispensing facility capable of providing a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a line where the customer serves himself from displayed selections." 34 C.F.R. § 395.1(d). Some of these possible concepts might meet this definition, other do not. Further, to the extent that the Air Force's final decision results in a facility that is a "mix" of cafeteria-like operations and non-cafeteria-like operations, the Department of Defense policy implementing the Act specifically provide that "[c]omponent food dispensing facilities which conduct cafeteria-type operations during part of their normal operating day and full table-service operations during the remainder of their normal operating day are not 'cafeterias' if they engage primarily in full table service operations." Department of Defense Directive 1125.3, ¶ E1.1.2.

Plaintiffs cite to several cases in support of their claim that the follow-on operations will fall within the ambit of the R-SA. None of these cases, however, are on point. In both NISH v.

Rumsfeld, 348 F.3d 1263 (10th Cir. 2003), and NISH v. Cohen, 247 F. 3d 197 (4th Cir. 2001), the issue was not whether or not a base restaurant was a "cafeteria," but rather was the more limited issue of whether the agency may classify a troop "mess hall" as a "cafeteria." In both instances, the court applied Chervon deference to the agency's existing interpretation that a "mess hall" may serve as a "cafeteria." Rumsfeld, 348 F.3d at 1266-1271; Cohen, 247 F.3d at 201-202. In the present case, the Court here is not being asked to defer to the agency's existing interpretation. Indeed, Buckley AFB has not yet determined the exact nature of any follow-on operations, which would be a prerequisite to making a determination that follow-on operations are or are not a "cafeteria."

In any event, even if the final follow-on operations are such that they could be construed to constitute "cafeteria" operations within the meaning of the Act, the Act will not apply because there is no indication that such operations will be contracted out. See Alaska Div. of Vocational Rehabilitation v. Dep't of Defense, 66 Fed. Reg. 18,235 (Apr. 6, 2001). In the Air Force, virtually every installation has on-base food and beverage activities operated by the Army and Air Force Exchange Service ("AAFES") or Air Force Services. The AAFES is a Department of Defense NAFI and Air Force Services has numerous similar, but smaller, NAFIs that operate these on-base food and beverage activities to satisfy the needs for these services by authorized MWR Program patrons and to generate supplemental funding for the installation's military Quality-of-Life Programs. These NAFIs are integral parts of the military departments they serve and the Department of Defense, and they have the legal status of instrumentalities of the United States. Standard Oil Company of California v. Johnson, 316 U.S. 481 (1942); Lion Raisins, Inc. v. United States, 416 F.3d 1356, 1363 (Fed. Cir. 2005) ("There is also no question that NAFIs are agents of the United States.") Courts and arbitration panels have ruled that the Government can internally operate a cafeteria without violating the R-SA. Washington State Dept. of Services for the Blind v. United States, 58 Fed. Cl. 781 (2003); Alaska Div. of Vocational Rehabilitation v. Dep''t of Defense, 66 Fed. Reg. 18,235 (Apr. 6, 2001). Accordingly, the Randolph-Sheppard Act

would not apply regardless of whether the follow-on operations constitute "cafeterias" within the meaning of the Act or not.

Plaintiffs also allege that the Under Secretary of Defense has prohibited the kind of arrangement involved in this case. This allegation pertains to a December 20, 2004 memorandum from the Under Secretary of Defense for Personnel and Readiness which addressed "Limitations on the Use of Contracts and Other Agreements with DoD Nonappropriated Fund Instrumentalities (NAFIs) Pursuant to 10 U.S.C. 2492." At the outset, such an internal directive does not create any enforceable right by private parties. American Tel. & Tel. Co. v. United States, 307 F.3d 1374 (Fed. Cir. 2002) (holding that the language in an appropriations statute cautioning against the use of fixed-price contracts to fund developmental efforts absent a determination of realistic pricing created no judicially enforceable rights in the contractor); Freightliner Corp. v. Caldera, 225 F.3d 1361, 1365 (Fed. Cir. 2000); Short Bros., PLC v. United States, 65 Fed. Cl. 695, 764-65 (2005) (FAR § 15.802 does no more than provide "internal government direction" that "does not afford a judicial remedy"). In any event, plaintiffs cannot show that this memorandum has been violated. In this memorandum, the Under Secretary expressly authorized NAFIs to engage in any of the activities they are authorized to perform or conduct, which includes food services in general. The Under Secretary prohibited Department of Defense NAFIs from entering contracts or other agreements authorized by the cited statute "that result in the loss of jobs created pursuant to the [R-SA], JWOD, or small business programs." That is not our case here. Under the cited statute, 10 U.S.C. § 2492, a NAFI can enter into a formal arrangement (by contract or other agreement) to operate a military dining facility and it will be paid with appropriated funds to do so. In this case, there is and will be no such arrangement, contract or agreement. The military dining facility has been closed and will not be reopened. Accordingly, there is not now, nor will there be, a violation of the Under Secretary's guidance.

In summary, it is premature for this Court to determine if follow-on operation will or will not constitute a "cafeteria" within the meaning of the Act, and the Act does not apply to all food service operation; even if the R-SA did apply to all food service operations, there will not be a contracted operation; no Department of Defense guidance has been or will be violated by its implementation. Accordingly, the agency's actions were not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with the law.

## V. Plaintiffs Are Not Entitled To Injunctive Or Declaratory Relief

In addition to establishing that Buckley AFB's decision to close the military dining facility and consider follow-on uses that could include an internally operated restaurant at the site is arbitrary, capricious, an abuse of discretion, or that it is otherwise in violation of an applicable procurement statute or regulation, plaintiffs must also satisfy three additional criteria in order to obtain a permanent injunction: (1) that failure to enjoin the procurement will cause plaintiff to suffer specific and irreparable harm; (2) that such harm to the plaintiff outweighs that which would be incurred by the Government and third parties should plaintiff prevail; and (3) that the grant of injunctive relief is in the public interest. PGBA, LLC v. United States, 389 F.3d 1219, 1228-29 (2004) (citations omitted). Plaintiffs must establish each of these elements by clear and convincing evidence in order to prevail upon its complaint. Baird Corp. v. United States, 1 Cl. Ct. 662, 664 (1983) ("Where injunctive relief is sought, which relief is deemed drastic in nature, the court must exercise great caution and even then, the aggrieved bidder should be made to establish its right to such drastic relief by means of clear and convincing evidence.") (citation omitted). As we demonstrate below, plaintiffs are unable to satisfy all three of these factors.

First, with regard to plaintiffs alleged irreparable harm, plaintiffs assert that Mr. Rightsell had a financial interest in the prior contract. This allegation, however, is not relevant to the question of harm, since that contract has already expired and cannot be continued. Where there are no appropriated funds and no bona fide need for continuing the contracted operation defined by the statement of work in the contract, continuing to expend funds to the contractor would

violate the Anti-Deficiency Act, 31 U.S.C. § 1341, as well as FAR Subpart 17.207. Plaintiffs also fail to demonstrate that Buckley AFB will not provide the state or its licensee(s) with priority in any subsequent procurement for the operation of a cafeteria. Contrary to plaintiffs' assertions, there is no indication in the administrative record that the Government will be issuing no bid contracts for food services at the renovated facility. In the event that a solicitation is issued for the operation of the facility, plaintiffs will have an opportunity to compete, and, if the agency determines that R-SA priority does not apply to such solicitation, plaintiffs will have an opportunity to challenge the solicitation at that time. Most importantly, the R-SA requires only that the State be afforded the "priority" if it offers high quality food at a fair and reasonable price when compared to other competitive sources. There is no guarantee that the plaintiffs would win a future competition, if a solicitation is issued. Plaintiffs apparently want this Court to determine that they has standing to bring this bid protest on the basis of their concern that the Colorado DVR might not be awarded a contract in a solicitation that does not yet exist and is not planned. Such speculative concern is not enough to establish standing or ripeness and is certainly not enough to justify granting of plaintiffs' request that the Government be enjoined from allowing the Government from entering into any contract or performing any arrangement for food services at the facility.

With regard to harm to the Government and third parties, if the Court were to grant injunctive relief, it would harm the Government by forcing the Government to solicit a contract it cannot afford or to simply forego providing any food services to the troops and base population at Buckley AFB. In essence, the plaintiffs are asking the Court to direct Buckley AFB to violate the bona fide needs rule and the Anti-Deficiency Act, violation of which includes criminal, civil and administrative penalties.

Injunctive relief would also undermine the arbitrator's role in the R-SA process, and the agency's broad discretion to implement corrective action in response to such arbitration, even if

the agency disagrees with the arbitrator's recommendation. Agencies often disagree with the result of arbitration, but that does not mean they disregard the results.

Finally, it is in the public interest not to grant any form of injunctive relief in this case. Generally, an "agency should be able to conduct procurements without excessive judicial infringement upon the agency's discretion." Aero Corp. v. United States, 38 Fed. Cl. 237, 242 (1997) (citing Cincom Sys., Inc. v. United States, 37 Fed. Cl. 263, 269 (1997)). Granting a preliminary injunction would harm the executive branches' interest in regulating the military by permitting judicial second-guessing in an area of extreme deference. See Rostker v. Goldberg, 453 U.S. 57, 70 (1981); Rockwell Int'l Corp. v. United States, 4 Cl. Ct. 1, 6 (1983) (indicating that requests for injunctive relief should give weight to national defense and national security concerns). In that same vein, granting a preliminary injunction would impede with the military's ability to make administrative decisions with minimal judicial interference. See Parrish v. Brownlee, 335 F. Supp. 2d 671, 675 (E.D.N.C. 2004). In this instance, plaintiffs have not demonstrated by clear and convincing evidence that it is entitled to declaratory or injunctive relief. Rather, granting such relief would be contrary to these strong interests.

**CONCLUSION**

For these reasons, defendant respectfully requests that its motion to dismiss be granted and that plaintiffs' complaint be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Todd M. Hughes
TODD M. HUGHES
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th floor
Washington, D.C. 20530
Tele: (202) 616-2377
Fax: (202) 305-7643
steven.mager@usdoj.gov

October 13, 2006 Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that on this 13th day of October, 2006, a copy of the foregoing "DEFENDANT'S MOTION TO DISMISS AND RESPONSE TO PLAINTIFFS' MOTION FOR A PRELIMINARY INJUNCTION" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice