IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(Bid Protest)

COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, *et al.*, :

Plaintiffs, :

v. : Case No. 06-666C
Judge Miller

THE UNITED STATES OF AMERICA, :

Defendant. :

* * * ooo0ooo * * *

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION PENDING ARBIRATION AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

Andrew D. Freeman
Shelly Marie Martin (of counsel)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
(410) 962-1030
(410) 385-0869 (fax)
adf@browngold.com
smm@browngold.com

Attorneys for plaintiff Steven Rightsell

John W. Suthers
Attorney General
State of Colorado

Andrew D. Freeman
Special Assistant Attorney General
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
(410) 962-1030
(410) 385-0869 (fax)
adf@browngold.com

Kathryne C. Gwinn (of counsel)
First Assistant Attorney General
State Services Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
(303) 866-56549
(303) 866-5671 (fax)
kc.gwinn@state.co.us

Attorneys for plaintiff Colorado Department of Human Services/Division of Vocational Rehabilitation

October 23, 2006

## TABLE OF CONTENTS

Page

TABLE OF CONTENTS ........ i

TABLE OF AUTHORITIES ........ iii

I. THE AIR FORCE INTENDS TO OPERATE A CAFETERIA AT BUCKLEY. ........ 2

A. The renovated facility will serve a broad variety of foods and beverages through lines. ........ 2

B. The Air Force has concrete plans for a food court ........ 3

C. The Air Force cannot circumvent the Randolph-Sheppard Act by operating an "in-house" cafeteria. ........ 6

D. The Randolph-Sheppard Act applies if any portion of a facility is a cafeteria ........ 8

II. THE AIR FORCE DOES NOT DISPUTE THAT IT HAS VIOLATED THE RENOVATION PROVISIONS OF THE RANDOLPH-SHEPPARD ACT ........ 10

III. THE COURT HAS THE AUTHORITY TO ISSUE AN INJUNCTION PENDING ARBITRATION ........ 10

IV. THE AIR FORCE'S FAILURE TO COMPLY WITH THE RANDOLPH-SHEPPARD ACT DOES NOT DEPRIVE THE COURT OF JURISDICTION ........ 13

A. Because the Randolph-Sheppard Act is a procurement statute, the Court has jurisdiction under Section 1491(b)(1). ........ 15

B. The Air Force has and will enter into numerous contracts or "other arrangements" to operate the Buckley cafeteria ........ 18

C. Both Colorado DVR and Mr. Rightsell are interested parties objecting to a violation of statute and regulation in connection with a procurement or proposed procurement ........ 19

V. MR. RIGHTSELL HAS STANDING TO PROTECT HIS LIVELIHOOD. ........ 20

A. Mr. Rightsell is an actual bidder or offeror within the meaning of CICA ........ 21

B. Mr. Rightsell has the right to intervene under RCFC 24. ........ 23

VI. THE AIR FORCE PROVIDES NO OTHER REASON TO DENY INJUNCTIVE RELIEF..........25

Conclusion..........27

# TABLE OF AUTHORITIES

**Cases** **Page**

*AGFE, AFL-CIO v. United States*, 258 F.3d 1294 (Fed. Cir. 2000) ................................19

*Alaska Division of Vocational Rehabilitation v. Department of Defense* R/S/97/2 (January 2000) ........................................................7

*American Maritime Transp., Inc. v. United States*, 870 F.2d 1559 (Fed. Cir. 1989) ......23

*Arrow Transp. Co. v. Southern Ry. Co.*, 372 U.S. 658 (1963) .........................................11

*Automated Commc'n Sys., Inc. v. United States*, 49 Fed. Cl. 570 (2001).........................23

*Fire-Trol Holdings, LLC v. United States*, 62 Fed. Cl. 440 (2004) ..................................16

*Howe v. Bolger*, 1984 WL 1131 (E.D. Wis. July 20, 1984) .............................................13

*Hudson v. Boxer*, 632 F. Supp. 1569 (D. Col. 1986) .......................................................13

*Impressa Construzioni Geom. Domenico Garufi v. United States*, 52 Fed. Cl. 826 (2002) ...........................................................................................18

*Jackson v. District of Columbia*, 254 F.3d 262 (D.C. Cir. 2001) .....................................12

*Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775 (3rd Cir. 1994)....................12

*Minnesota v. Veterans Admin.*, Civil Action No. 4-87-540 (D. Minn. July 2, 1987)........13

*Minnesota v. Riley*, 18 F.3d 606 (8th Cir. 1994) ..............................................................13

*Mississippi Dep't of Rehab. Servs. v. United States*, 61 Fed. Cl. 20 (2004)........................7

*NISH v. Cohen*, 191 F.R.D. 94 (E.D. Va. 2000)...............................................................23

*NISH v. Cohen*, 247 F.3d 197 (4th Cir. 2001) .........................................................9, 15, 17

*NISH v. Rumsfeld*, 348 F.3d 1263 (10th Cir. 2003)..........................................9, 15, 17, 23

*North Carolina Div. of Servs. for the Blind v. United States* 53 Fed. Cl 147 (2002)..........................................................................................22

*Omega World Travel, Inc. v. United States*, 9 Cl. Ct. 623 (1986) ...................................20

*Randolph-Sheppard Vendors of America v. Weinberger*,
795 F.2d 90 (D.C. Cir. 1986) ....................11, 12, 17

*Seattle Sec. Servs., Inc. v. United States*, 45 Fed. Cl. 560 (1999)....................18

*Southfork Sys., Inc. v. United States*, 141 F.3d 1124 (Fed. Cir. 1998) ....................15, 17, 21

*Texas State Comm'n for the Blind v. United States*, 6 Cl. Ct 730, 735 (1984) ....................14

*Texas State Comm'n for the Blind v. United States*,
796 F.2d 400 (Fed. Cir. 1986)....................14

*Trbovich v. United Mine Workers of America*, 404 U.S. 528 (1972) ....................23, 24

*United Int'l Investigative Servs., Inc. v. United States*, 41 Fed. Cl. 312 (1998) ....................18

*United States v. Mitchell*, 463 U.S. 206 (1983) ....................13

*United States v. Testan*, 424 U.S. 392 (1976)....................13

*Washington State Div. of Servs. for the Blind v. United States*,
58 Fed. Cl. 781 (2003). ....................7, 9

**Federal Statutes and Regulations**

5 U.S.C. § 702....................16

5 U.S.C. § 705....................12

10 U.S.C. § 2492....................25, 26

20 U.S.C. § 107....................7, 8,14, 21

20 U.S.C. § 107a....................9, 10

20 U.S.C. § 107d-1 ....................14

20 U.S.C. § 107d-2 ....................11

20 U.S.C. § 107d-3 ....................8, 9

28 U.S.C. § 1491(b) .................... passim

31 U.S.C. § 3551....................22

32 C.F.R. § 260.3(b) ....................21

32 C.F.R. § 260.4(c)(4) ........................................................................................21

34 C.F.R. § 395.1(d) ........................................................................................2, 6, 9

34 C.F.R. § 395.31(b) ........................................................................................10

34 C.F.R. § 395.33 ........................................................................................ passim

34 C.F.R. § 395.37 ........................................................................................11, 14

**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION PENDING ARBIRATION AND OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**

The Randolph-Sheppard Act applies to all cafeterias on federal property, whether "operated by contract or otherwise." Having made extensive plans for a food service facility that would fall within the definition of a "cafeteria" under the Randolph-Sheppard Act, the Air Force cannot avoid the Act's impact by claiming uncertainty about what type of facility it is renovating. Nor can it ignore the Act's requirements regarding how to procure cafeteria services and then claim there is no procurement on which to base jurisdiction and standing.

Because the Randolph-Sheppard Act is a procurement statute that mandates certain procedures for obtaining the operation of food services on federal properties, 28 U.S.C. § 1491(b)(1) gives this Court jurisdiction over violations of that Act and its regulations (as an "alleged violation of statute or regulation in connection with a procurement or proposed procurement"). For relief in such an action, 28 U.S.C. § 1491(b)(2) authorizes the Court to enter injunctive relief, including a preliminary injunction while a Randolph-Sheppard arbitration is pending, thereby preventing the blind vendor at Buckley Air Force Base from suffering the irreparable harm of the loss of his livelihood. The Air Force argues that plaintiffs must first exhaust arbitration, but it ignores the availability of an injunction pending arbitration. Other courts, however, have instructed that Randolph-Sheppard plaintiffs have the option of seeking injunctive relief in court while awaiting the outcome of arbitration – as plaintiffs seek here. The Air Force further argues that plaintiffs are not "interested parties" because they have no direct economic interest in the outcome of the case, but that is exactly what plaintiffs have – a direct economic interest in requiring the Air Force to comply with the Randolph-Sheppard Act's requirements governing how cafeteria services on federal properties must be procured.

## I. THE AIR FORCE INTENDS TO OPERATE A CAFETERIA AT BUCKLEY.

Regardless of whether the Air Force chooses to call the renovated food service facility at Buckley Air Force Base a restaurant, food court, or casual dining facility, the facility meets the regulatory definition of a cafeteria, and the Randolph-Sheppard Act applies.

### A. The renovated facility will serve a broad variety of foods and beverages through lines.

The renovated Buckley dining facility will be a "food and beverage operation. This will be the only food operation on the installation other than the Base Exchange food court, which has limited hours and access by those working inside the restricted area."[1] The cafeteria will have five stations: "Mexican, Grill, Sandwiches, Noodles, Desserts & Beverages."[2] These stations will be set up by means of "multiple station kiosks with each station specializing in a specific type of cuisine and/or cooking platform."[3]

The Randolph-Sheppard Act's regulations define a cafeteria as a "facility capable of providing a broad variety of prepared foods and beverages (including hot meals) primarily through the use of a line where the customer serves himself from displayed selections."[4] The renovated Buckley facility will be exactly that: "The customers will enter through the front lobby area and get a tray and silverware. The customer will then be able to order their food from the available stations. A beverage area with fountain sodas, ice tea, water and juices will be available. Desserts will be portioned and showcased in a rotating stand up refrigerator. There

[1] Memorandum from Col. David Ziegler for AFSPCS/A1S (July 19, 2006), A.R. 86.

[2] E-mail from Alicia O'Neill, NAF-04, to Maj. Bonnie Ward, Dep. Dir., 460th Servs. Div., *et al.* (Sept. 12, 2006), A.R. 167.

[3] Restaurant Validation Analysis 10 (Sept. 25, 2006), A.R. 190.

[4] 34 C.F.R. § 395.1(d).

will be two cashiers during the peak hours of operation."[5] An additional "pub" area will open on Friday evenings for the purchase of alcoholic beverages.[6] The overall décor will create a "food emporium image."[7]

**B. The Air Force has concrete plans for a food court.**

The Air Force has not even attempted to explain how such an operation does not fall within the regulatory definition of cafeteria. Instead, it appears to have developed amnesia, claiming that it has not made any plans for what kind of food service it will offer in the new facility because the "concept is still in research and discussion."[8] Despite this alleged lack of concrete plans, defense counsel informed the Court at the initial status conference in this case, (on September 25, 2006) that the Air Force had scheduled construction to begin just one week later, on October 1, 2006, with completion possible as soon as December 1, 2006 – an odd schedule if the construction crew could not be told what to build. The Air Force also told Mr. Rightsell that construction would start in October.[9] In preparation for construction, the Air Force notified Mr. Rightsell and Colorado DVR in May that it would be taking measurements in the facility,[10] and representatives from Starbucks visited to discuss the location of the coffee kiosk within the food court.[11]

---

[5] Restaurant Validation Analysis 11, A.R. 191.

[6] *Id.*

[7] *Id.*

[8] R. Henline Decl. ¶ 9, Gov't App. 2.

[9] S. Rightsell Decl. ¶ 6, Pls.' Ex. 2.

[10] E-mail chain (May 22, 2006), A.R. 75.

[11] E-mail chain (Sept. 6, 2006), A.R. 155.

The Administrative Record reveals a far different portrait of what the Air Force has accomplished than that described in the affidavits supporting its opposition memorandum. The Air Force now claims that its original plan was to build an "internally operated restaurant/ lounge."[12] Yet the Administrative Record shows that the first concept considered was "similar to a food court (offering a variety of different foods) . . . ."[13] The particular food service company originally considered as a potential food court operator was ultimately not selected, but the food court concept has never changed. In June, the Air Force was preparing potential menus for the food court, to include "Deli, Pasta Bar, Salad Bar."[14] In August, the Air Force held focus groups to discuss "menu and operation" of what it then described as a "fast casual restaurant" to be opened in the renovated space.[15] The participants were asked which food stations they wanted in the food court ("Mexican, BBQ, make your own pasta, Specialty Sandwiches, Stir Fry, Carving Station") and what they believed would be reasonable prices.[16] In September, the Air Force continued to describe the facility as "an upscale food court."[17]

Although the Air Force now claims that it does not know what it wants to do with the renovated space, it was able to prepare financial statements projecting an overall net profit of two

---

[12] R. Henline Decl. ¶ 9, Gov't App. 2.

[13] E-mail from Joann Missey, NAF-04, to B. Ward (May 10, 2006), A.R. 32.

[14] E-mail from N. White to R. Henline (June 14, 2006), A.R. 77.

[15] E-mail from J. Diaz to B. Ward (Aug. 10, 2006), A.R. 82.

[16] Survey results, A.R. 148-152.

[17] Restaurant Validation Analysis 2, A.R. 182.

to seven percent.[18] It budgeted for the purchase of "Furniture, Fixtures, & Expenditures."[19] It projected sales, costs of good sold, expenses, gross profit, and net profit for the next five years.[20] It would be impossible to budget or project any of these items without knowing the scope of the food service operation. The plans for the facility are sufficiently concrete that the Air Force has determined how many menu boards it needs and identified the vendor to provide them.[21] In July, the Air Force anticipated that it could complete all of the required work and open the facility on October 27, 2006,[22] suggesting that since the overall concept had been chosen, the remaining details could be hashed out fairly quickly. And in September, Air Force Services submitted the proposal regarding a Starbucks kiosk to the base commander for him to approve a waiver from normal procurement procedures.[23]

The Air Force also claims that it is considering including various additional "perks" in the cafeteria, such has an "internet café," pool tables, television sets, and a juke box.[24] With the exception of putting television sets in the cafeteria, none of these things are mentioned in the Administrative Record – nor does it matter. A dining facility is a cafeteria under the Randolph-Sheppard Act if it serves "a broad variety of prepared foods and beverages (including hot meals)

---

[18] Restaurant Validation Analysis 13, A.R. 193.

[19] *Id.* 36, A.R. 216.

[20] *Id.* 37, A.R. 217.

[21] E-mail from A. O'Neill to B. Ward, *et al.* (Sept. 12, 2006), A.R. 167.

[22] E-mail from A. O'Neill to B. Ward (July 7, 2006), A.R. 92.

[23] Memorandum from Col. David Ziegler to HQ AFSPC/AIS, et al., A.R. 170; *see also* e-mail, A.R. 154.

[24] R. Henline Decl. ¶ 9, Gov't App. 2.

primarily through the use of a line where the customer serves himself from displayed selections."[25] The fundamental nature of the food service offered does not change if the cafeteria sometimes has theme days or holiday events, wires its tables for Internet access, or includes televisions as part of the décor. A dining facility need not look like a high school cafeteria or the mess hall in "M*A*S*H" to fall within the Randolph-Sheppard definition.

Regardless of any changes it may be contemplating, the Air Force undisputedly intends to operate a dining facility in which patrons will choose food from one of several food stations, get their own silverware and drink, and pay for their meal at a cashier station. This facility is a cafeteria as that term is defined by the Randolph-Sheppard regulations. The case is ripe for review, as any remaining decisions will not affect the fact that the "food emporium" will be a cafeteria. Had plaintiffs waited any longer, the Air Force would likely have entered into agreements with Starbucks and with Air Force Services to operate the food court beginning this fall and then argued that plaintiffs' claims were moot.

### C. The Air Force cannot circumvent the Randolph-Sheppard Act by operating an "in-house" cafeteria.

The Air Force claims that courts have recognized a right for a federal agency to operate an "in-house" cafeteria that is exempt from the Randolph-Sheppard Act. No court has ever recognized such a right.

Some military bases outsource their food service needs completely. Others run hybrid operations under which military personnel order or cook food, but outside contractors perform other functions. These hybrid operations exist primarily for training purposes. When a military unit deploys overseas, it needs cooks who are experienced in serving several hundred or

[25] 34 C.F.R. § 395.1(d).

thousand meals each day. The Randolph-Sheppard Act does not exempt these hybrid-training cafeterias, but it allows a federal agency to seek exceptions on a case-by-case basis if applying the Act would not be in the best interests of the United States.[26] Even in these hybrid cafeterias, however, the Randolph-Sheppard Act continues to apply to any solicitations for services that will not be performed by military personnel, providing that the requested services constitute operating a cafeteria.[27]

In *Washington State Division of Services for the Blind v. United States*, a state licensing agency contended that Randolph-Sheppard Act applied to a solicitation for services at one of these hybrid cafeterias. The Court disagreed, holding that because only janitorial and custodial services were sought, it was not an abuse of discretion of violation of law for the contracting officer to determine that the solicitation was not for the operation of a cafeteria.[28] The state licensing agency did not challenge, and hence the Court did not address, whether the government needed to seek a limitation on the Randolph-Sheppard Act to operate these cafeterias or whether there is some inherent right to an "in-house" cafeteria that is not covered by the Act. Similarly, in the Randolph-Sheppard arbitration in *Alaska Division of Vocational Rehabilitation v. Department of Defense*, there was no challenge to the use of a hybrid cafeteria and therefore no discussion of any supposed right to operate "in-house" cafeterias.[29]

---

[26] 20 U.S.C. § 107.

[27] *Mississippi Dep't of Rehab. Servs. v. United States*, 61 Fed. Cl. 20 (2004).

[28] 58 Fed. Cl. 781, 792, 796 (2003).

[29] R/S/97/2 (January 2000). The government's brief refers to the summary of the arbitration opinion printed in the Federal Register, not the opinion itself. For the Court's reference, the opinion is attached as Exhibit 15.

The Randolph-Sheppard Act applies to all cafeterias "operated by contract or otherwise."[30] An "in-house" cafeteria is "otherwise" operated. Here, the Air Force does not seek to involve its personnel in cafeteria operations for training purposes, which could justify a limitation on the application of the Randolph-Sheppard Act. It merely chose to change the funding stream for the cafeteria from appropriated to non-appropriated funds. Once renovated using non-appropriated funds, the Buckley cafeteria's on-going operations will be funded from profits, not from any government funds. There is no reason that the Air Force cannot use the same non-appropriated funds to re-open the cafeteria and then hand operations over to the blind manager. If doing so would adversely affect the interests of the United States, the Air Force must follow the procedures set out in 20 U.S.C. § 107(b) to obtain permission from the Secretary of Education to operate an "in-house" cafeteria as a limitation on the operation of a vending facility.

### D. The Randolph-Sheppard Act applies if any portion of a facility is a cafeteria.

The Air Force implies that the Buckley cafeteria may include full table service that would not be covered by the Randolph-Sheppard. The administrative record does not support that contention. Even if true, however, the inclusion of additional services does not defeat the Randolph-Sheppard priority.

Whatever concepts might have been considered at the outset of planning for the renovated cafeteria, the administrative record does not show any contemplation of full table service in the current plans. The food emporium may have "bus persons who will provide

[30] 20 U.S.C. § 107d-3(e); 34 C.F.R. § 395.33(a).

deliver food [sic]"[31] if it is not handed to the patron when proceeding through the food stations, but this busing service will be limited, as the budget for the cafeteria includes "customer pagers" to notify patrons that their order can be picked up.[32]

Even if the Air Force should change its mind and offer some full table service, the Randolph-Sheppard Act will still apply. The Act provides that "limited waiter or waitress service" can be provided in a cafeteria.[33] In any event, so long as any portion of the facility is a cafeteria, the Randolph-Sheppard Act applies to the entire operation. Although the Air Force attempts to rely on Department of Defense policy for the contrary proposition,[34] the Department of Defense has no authority to interpret the Randolph-Sheppard Act. Congress designated the Rehabilitation Services Administration of the United States Department of Education as "the principal agency" to interpret and implement the Act, and charged the Commissioner of Rehabilitation Services with prescribing regulations relating to the operation of cafeterias on federal property.[35] As such, the Commissioner's opinions are entitled to deference.[36] According

[31] Restaurant Validation Analysis at 11, A.R. 191.

[32] *Id.* at 36, A.R. 216.

[33] 34 C.F.R. § 395.1(d).

[34] Gov't Br. at 20.

[35] 20 U.S.C. §§ 107a, 107d-3(e).

[36] *NISH v. Rumsfeld*, 348 F.3d 1263, 1270-71 (10th Cir. 2003); *NISH v. Cohen*, 247 F.3d 197, 201-02 (4th Cir. 2001); *Washington State Dep't of Servs. for the Blind v. United States*, 58 Fed. Cl. 781, 785-86 & n.7 (2003).

to the Commissioner, if any portion of a facility constitutes operation of a cafeteria, the Randolph-Sheppard Act applies to the entire operation.[37]

## II. THE AIR FORCE DOES NOT DISPUTE THAT IT HAS VIOLATED THE RENOVATION PROVISIONS OF THE RANDOLPH-SHEPPARD ACT.

As noted in Plaintiffs' initial memorandum at 10-11, the Randolph-Sheppard Act requires any federal agency that renovates a building to ensure that "the design for such construction, substantial alteration, or renovation includes a satisfactory site or sites for the location and operation of a vending facility by a blind person."[38] The Air Force does not dispute that it intends to renovate the High Frontier Dining Facility without including a satisfactory site for a Randolph-Sheppard vending facility in the renovated building. Colorado DVR and Mr. Rightsell will likely prevail on the merits of this uncontested issue during the arbitration. The Air Force's actions have displaced Mr. Rightsell from his facility and deprived him of the means of earning a livelihood, an irreparable harm that the Court can and should remedy through a preliminary injunction that allows him to operate the renovated cafeteria pending the outcome of arbitration.

## III. THE COURT HAS THE AUTHORITY TO ISSUE AN INJUNCTION PENDING ARBITRATION.

While the Air Force contends that the Court cannot decide this case on its merits because Randolph-Sheppard arbitration is required, it fails to address the question presented in this case: whether the Court can issue a preliminary injunction pending a decision on the merits from the arbitration panel. A requirement of administrative exhaustion does not affect a court's ability to hear a claim, only the timing of when it will do so. That timing can be altered to grant

[37] Letter from Hon. Joanne Wilson, Comm'r of Rehabilitation Servs. Admin., to A. Freeman (Aug. 11, 2003), Pls.' Ex. 16.

[38] 20 U.S.C. § 107a(d)(1)(B); *see also* 34 C.F.R. § 395.31(b).

preliminary relief pending the outcome of administrative remedies. Indeed, one of the primary cases on which the United States relies for its argument that exhaustion is mandatory, *Randolph-Sheppard Vendors of America v. Weinberger*, instructed that plaintiffs should do exactly what plaintiffs here have done: "[i]nstead of seeking a decision on the merits, *appellants should have sought a stay or an injunction against the contract awards pending arbitration*."[39]

Courts can issue a preliminary injunction to preserve the status quo while administrative proceedings are pending – the relief plaintiffs seek here. The Supreme Court has recognized that even when exhaustion of administrative remedies is required, courts retain power to "maintain the status quo by injunction pending review of an agency's action through the prescribed statutory channels. Such power has been deemed merely incidental to the courts' jurisdiction to review final agency action . . . ." [40] As this Court has jurisdiction to review the arbitration panel's decision,[41] it has the incidental power to enter a preliminary injunction pending that decision.

As the D.C. Circuit has explained: "The Supreme Court has long recognized that federal courts possess a 'traditional power to issue injunctions to preserve the status quo while administrative proceedings are in progress'" so that "[i]f [a] court may eventually have jurisdiction of the substantive claim, the court's incidental equitable jurisdiction, despite the

---

[39] 795 F.2d 90, 110 (D.C. Cir. 1986) (emphasis added).

[40] *Arrow Transp. Co. v. Southern Ry. Co.,* 372 U.S. 658, 671, n. 22 (1963) (internal citations omitted).

[41] 20 U.S.C. §107d-2(a) and 34 C.F.R. §395.37(b) provide for appeal of the arbitration panel's decision as a final agency action under Chapter 7 of the Administrative Procedure Act; 42 U.S.C. § 1491(b) gives this Court jurisdiction over a violation of statute in connection with a procurement or proposed procurement and also provides for review pursuant to Section 706 of the APA.

agency's primary jurisdiction, gives the court authority to impose a temporary restraint in order to preserve the status quo pending ripening of the claim for judicial review."[42] A court "may entertain a motion for a preliminary injunction before administrative remedies have been exhausted if [an agency's action] will cause irreparable harm . . . ."[43]

In addition to this Court's inherent power to prevent irreparable harm, it has statutory authority to issue injunctions under the Administrative Procedure Act. Section 1491(b)(1) directs the Court to review procurement cases pursuant to Section 706 of the APA.[44] Under the APA, the court to which a case will be taken on appeal from an administrative proceeding "on such conditions as may be required and to the extent necessary to prevent irreparable injury . . . may issue all necessary and appropriate process to postpone the effective date of an agency action or to preserve status or rights pending conclusion of the review proceedings"[45]

In *Randolph-Sheppard Vendors of America v. Weinberger*, vendors and other groups brought suit to enjoin the Department of Defense from soliciting a nationwide food service contract.[46] The case was dismissed for failure to exhaust administrative remedies, but the D.C. Circuit emphasized that "[i]nstead of seeking a decision on the merits, *appellants should have*

---

[42] *Jackson v. District of Columbia*, 254 F.3d 262, 268 (D.C. Cir. 2001) (internal citations omitted).

[43] *Komninos v. Upper Saddle River Bd. of Educ.*, 13 F.3d 775, 777 (3rd Cir. 1994).

[44] 28 U.S.C. § 1491(b)(4).

[45] 5 U.S.C. § 705.

[46] 795 F.2d 90 (D.C. Cir. 1986).

*sought a stay or an injunction against the contract awards pending arbitration*."[47] Here, plaintiffs have done exactly that.

The Randolph-Sheppard arbitration process is long, usually lasting a year or two. Mr. Rightsell will lose his livelihood while the arbitration is pending, resulting in irreparable harm to him for which the arbitration panel may not have the authority to grant redress. As noted in plaintiffs' initial memorandum, at least three other courts have granted preliminary injunctions pending arbitration in similar circumstances because of the consequences to the blind vendor and potential futility of remedies.[48] The United States offers no authority to the contrary, no cases at all finding that the court lacks jurisdiction to enter a preliminary injunction pending exhaustion of arbitration.

## IV. THE AIR FORCE'S FAILURE TO COMPLY WITH THE RANDOLPH-SHEPPARD ACT DOES NOT DEPRIVE THE COURT OF JURISDICTION.

Historically, this Court's jurisdiction over bid protest cases was based on the theory that the government was obligated under an implied-in-fact contract to treat bidders fairly.[49] "For the U.S. Court of Federal Claims, the Tucker Act operates as a waiver of sovereign immunity for non-tort suits against the United States premised on the Constitution, a statute or regulation, or either an express or implied contract with the United States."[50]

---

[47] 795 F.2d at 110 (emphasis added).

[48] *Minnesota v. Veterans Admin.*, Civil Action No. 4-87-540 (D. Minn. July 2, 1987), *aff'd sub nom. Minnesota v. Riley*, 18 F.3d 606 (8th Cir. 1994); *Howe v. Bolger*, 1984 WL 1131 (E.D. Wis. July 20, 1984); *Hudson v. Boxer*, 632 F. Supp. 1569 (D. Col. 1986).

[49] *Fire-Trol Holdings, LLC v. United States*, 62 Fed. Cl. 440, 444 (2004).

[50] *United States v. Testan*, 424 U.S. 392, 397 (1976), citing the precursor to 28 U.S.C. § 1491(a)(1); *see also United States v. Mitchell*, 463 U.S. 206, 215-16 (1983) ("[i]f a claim falls within the terms of the Tucker Act, the United States has presumptively consented to suit").

The Administrative Dispute Resolution Act of 1996 ("ADRA") amended the Tucker Act to expand this Court's jurisdiction over "any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."[51] It also waived the United States' sovereign immunity from non-monetary relief, granting the Court the power to "award any relief that the court considers proper, including declaratory and injunctive relief except that any monetary relief shall be limited to bid preparation and proposal costs."[52] In addition, the Randolph-Sheppard Act itself gives blind vendors a priority to operate cafeterias on federal properties and requires all federal agencies to provide them the opportunity to do so – a substantive right that State Licensing Agencies such as Colorado DVR may enforce against the United States.[53]

The Randolph-Sheppard Act requires the Air Force to contract cafeteria operations to Colorado DVR and Mr. Rightsell through direct negotiations or to provide them with a priority in a competitive solicitation.[54] Colorado DVR and Mr. Rightsell are prospective bidders or offerors who wish to obtain a contract to operate the renovated Buckley cafeteria. In a circular argument, the Air Force contends that its failure to entertain their offer deprives this Court of jurisdiction to rule upon that very failure. This is not so.

---

[51] 28 U.S.C. § 1491(b)(1).

[52] 28 U.S.C. § 1491(b)(2).

[53] *See, e.g.*, 20 U.S.C. §§ 107, 107d-1(b); 34 C.F.R. §§ 395.33, 395.37; *see Texas State Comm'n for the Blind v. United States*, 6 Cl. Ct 730, 735 (1984), *reversed on other grounds*, 796 F.2d 400 (Fed. Cir. 1986).

[54] 34 C.F.R. § 395.33.

**A. Because the Randolph-Sheppard Act is a procurement statute, the Court has jurisdiction under Section 1491(b)(1).**

Section 1491(b)(1) gives the Court authority to hear cases regarding "any alleged violation of statute or regulation in connection with procurement or a proposed procurement." The Randolph-Sheppard Act is a procurement statute. "The definition of 'procurement' contained in [CICA] is sufficiently broad to encompass the award of the cafeteria contract authorized by the RS Act . . . ."[55] "[A]doption of the contrary position – that the RS Act is not a procurement statue pursuant to CICA – would require a misreading and misapplication of both statutes."[56] Thus, cases regarding the application of the Randolph-Sheppard Act's priority for a blind vendor to operate a cafeteria on federal property are "in connection with" a procurement. The Air Force illogically argues that its failure to procure cafeteria services in accordance with the applicable procurement law means that the case is not related to a procurement.

As the Court of Appeals for the Federal Circuit has described jurisdiction in procurement cases, this Court may hear cases in which the plaintiffs allege "that the Air Force had failed to follow the regulations that were promulgated by the Department of Education and DOD to implement the [Randolph-Sheppard Act.]"[57] The government "promises to comply with duly promulgated regulations in conducting a procurement," and failure to follow regulations constitutes a breach of the government's duty of good faith and fair dealing.[58] On the other hand, an allegation that the regulations are invalid "is precisely the kind of allegation that does

---

[55] *NISH v. Rumsfeld,* 348 F.3d 1263, 1272 (10th Cir. 2003).

[56] *NISH v. Cohen*, 247 F.3d 197, 204 (4th Cir. 2001).

[57] *Southfork Sys., Inc. v. United States*, 141 F.3d 1124, 1134-35 (Fed. Cir. 1998).

[58] *Id.*

not implicate the duty of good faith and fair dealing."[59] "If a bidder wishes to challenge the validity of a regulation governing a procurement, the proper method of doing so it to bring an action in federal district court under the Administrative Procedure Act, 5 U.S.C. § 702."[60]

The Court's decision in *Fire-Trol Holdings, LLC v. United States* dealt with the second situation (an allegation that regulations were invalid) rather than the first (an allegation of failure to comply with regulations regarding how to procure services). In *Fire-Trol*, the plaintiff alleged that the United States Forest Service "established a rule without going through the notice-and-permit procedures required by the APA . . ." and violated CICA.[61] The Forest Service is required by statute to set quality standards for its purchase of fire retardants.[62] In 2005, it changed its standards to bar certain chemicals that Fire-Trol used in its fire retardants. If this change required notice and comment under the APA, as Fire-Trol contended, the case should have been heard in federal district court. The rule change did not bar Fire-Trol from bidding for any future contracts, but Fire-Trol feared that a fair consideration of its bid would reveal that it was not compliant with applicable standards, which would necessarily result in someone else winning the contract. Policy changes that might affect the outcome of a future procurement do not implicate "implied contracts with prospective bidders to consider their bids fairly."[63]

Here, by contrast, the claim is not that a regulation or policy is invalid, but that the Air Force has failed to follow a regulation, resulting in the loss of opportunity to compete at all.

---

[59] *Id.*

[60] *Id.*

[61] 62 Fed. Cl. 440, 443 (2004).

[62] 62 Fed. Cl. at 443.

[63] 62 Fed. Cl. at 444.

Such a claim is cognizable under *Southfork.* The Air Force intends to renovate and run a cafeteria. The applicable regulations apply to "operation of a cafeteria . . . whether by contract or otherwise" and require the Air Force either to negotiate directly with Mr. Rightsell and Colorado DVR or allow them to compete in a competitive solicitation.[64] Plaintiffs submitted an offer when they attempted to exercise the Randolph-Sheppard priority.[65] Instead of considering this offer by following one of the two prescribed methods of determining whether the SLA and Mr. Rightsell can operate the cafeteria at a reasonable price, the Air Force simply declared itself exempt from the law. Plaintiffs' complaint is that the Air Force has breached its duty to fairly and honestly consider their bid by refusing to consider it at all.

Where the government's failure to comply with Randolph-Sheppard requirements results in the loss of the statutorily-required opportunity to negotiate an agreement, "[s]tanding . . . does not depend on a showing that blind vendors, through a state licensing agency, applied for, and did not receive, a permit to operate a vending facility a military base. The lack of notice alone constitutes a concrete injury under the Act. . . ."[66]

The Randolph-Sheppard Act is a procurement law.[67] Under that law, the Air Force is required to negotiate with Colorado DVR or offer it the opportunity to bid to operate the cafeteria. Its failure to engage in a required procurement is actionable conduct. The inability to

---

[64] 34 C.F.R. § 395.33(a), (b), and (d).

[65] Letter from T. Poole to R. Henline (July 28, 2006), A.R. 80.

[66] *Randolph-Sheppard Vendors of America v. Weinberger*, 795 F.2d 90, 99 (D.C. Cir. 1986).

[67] *NISH v. Rumsfeld,* 348 F.3d 1263 (10th Cir. 2003); *NISH v. Cohen*, 247 F.3d 197, 404 (4th Cir. 2001.

submit an offer because of the government's illegal conduct is an injury over which the Court has jurisdiction.[68]

**B. The Air Force has and will enter into numerous contracts or "other arrangements" to operate the Buckley cafeteria.**

The Air Force seeks to equate the word "procurement" in Section 1491(b) (1) with "formal solicitation for the operation of a cafeteria," but it cites no case to support this proposition, which is not valid for Randolph-Sheppard cases. The Randolph-Sheppard Act does not require a formal solicitation for cafeteria services – this is merely an option if a federal agency chooses not to negotiate directly with the state licensing agency.[69] Here, while the Air Force has not issued a formal solicitation for operation of a cafeteria, it has entered and will enter into several discrete contracts to operate a cafeteria.

The Air Force admits that it has entered into a contract to purchase food for the renovated cafeteria.[70] It intends to enter into another contract for coffee products.[71] It has hired a manager to run the cafeteria.[72] It plans to spend $75,000 to purchase menu boards, uniforms, lights, and

---

[68] *Impressa Construzioni Geom. Domenico Garufi v. United States,* 52 Fed. Cl. 826, 828 (2002) ("the loss of an opportunity to compete on a level playing field for a contract" constitutes irreparable harm); *United Int'l Investigative Servs., Inc. v. United States,* 41 Fed. Cl. 312, 323 (1998) ("The opportunity to compete for a contract and secure any resulting profit has been recognized to constitute significant harm."); *Seattle Sec. Servs., Inc. v United States,* 45 Fed. Cl. 560, 571 (1999).

[69] 34 C.F.R. § 395.33(b) and (d).

[70] R. Henline Decl. ¶ 10(a ), Gov't App. 3.

[71] *Id.*; various e-mails, A.R. 90-91, 154-56.

.
[72] S. Rightsell Second Decl. ¶¶ 4, 5, Pls.' Ex. 17.

other accoutrements for the cafeteria.[73] At some point, it will have to hire the cooks, bus boys, cashiers, and other staff needed to work in the cafeteria.

Were all of these goods and services obtained under one contract, there would be no dispute that the Air Force had contracted for cafeteria services. The Air Force cannot avoid the requirements of the Randolph-Sheppard Act by entering into numerous, separate contracts for the different goods and services needed to operate the cafeteria, and then claim that because no one contract standing alone constitutes operation of a cafeteria, the Act no longer applies.

Colorado DVR and Mr. Rightsell are potential offerors to provide all of these goods and services, but they have been thwarted in making an offer by the Air Force's refusal to follow the Randolph-Sheppard Act.

### C. Both Colorado DVR and Mr. Rightsell are Interested Parties Objecting to a Violation of Statute and Regulation in Connection with a Procurement or Proposed Procurement.

The ADRA expanded this Court's jurisdiction to encompass "an interested party objecting to . . . any alleged violation of statute or regulation in connection with a procurement or a proposed procurement."[74] The Air Force quotes the Federal Circuit's decision that "standing under § 1491(b)(1) is limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract."[75] Plaintiffs are such prospective bidders. If the Air Force is required to comply with the Randolph-Sheppard cafeteria provisions at Buckley, it will be required to negotiate directly with

[73] Restaurant Validation Analysis at 36, A.R. 216.

[74] 42 U.S.C. § 1491(b)(1).

[75] *AGFE, AFL-CIO v. United States*, 258 F.3d 1294, 1302 (Fed. Cir. 2000).

the plaintiffs for a contract to operate the renovated cafeteria or else to allow plaintiffs to bid for that contract.[76] In either case, plaintiffs are prospective bidders for that contract.

The Air Force's reliance on this Court's opinion in *Fire-Trol* for the proposition that the ADRA does not apply to a federal agency's refusal to engage in a procurement required by statute is misplaced. *Fire-Trol* did not involve the violation of a statute that requires a procurement and did not consider how Section 1491(b)(1) applies to the refusal to engage in a procurement as mandated by statute. That opinion quoted an old, pre-ADRA decision regarding the need for an outstanding solicitation.[77] But the relevant language regarding violation of a statute in connection with a proposed procurement was not added until a decade after *Omega World Travel* was decided.

The plain language of Section 1491(b)(1) allows actions by "an interested party objecting to a . . . violation of statute or regulation in connection with . . . a proposed procurement." Refusal to conduct a procurement required by statute falls squarely within the scope of that provision, and a party that is the intended beneficiary of the mandatory procurement is an interested party under the ADRA.

## V. MR. RIGHTSELL HAS STANDING TO PROTECT HIS LIVELIHOOD.

Because Mr. Rightsell will be the operator of the Buckley Air Force Base cafeteria pursuant to a specific statutory scheme, he is an actual or prospective bidder within the meaning of the Competition in Contracting Act. Were he not already a plaintiff in this act, he would also have a right to intervene pursuant to RCFC 24.

---

[76] 34 C.F.R. § 395.33.

[77] 62 Fed. Cl. at 444, quoting *Omega World Travel, Inc. v. United States*, 9 Cl. Ct. 623, 628 (1986).

### A. Mr. Rightsell is an actual bidder or offeror within the meaning of CICA.

In order for the Randolph-Sheppard Act and the Competition in Contracting Act to be read harmoniously, blind vendors must be considered "actual or prospective bidders or offerors" under CICA. The Randolph-Sheppard Act provides that "*blind persons* shall be licensed to operate vending facilities on federal properties."[78] It requires that "priority be given to *blind persons*" to operate vending facilities, including cafeterias.[79] With regards to cafeterias, federal agencies must establish "*the ability of blind vendors to operate a cafeteria* in such a manner as to provide food service at a comparable cost as that available from other providers . . . . ."[80] Department of Defense regulations confirm that "*[t]he blind will be given a priority in award of contracts* to operate cafeterias"[81] and require officials to ensure that "operators are in fact State licensed blind vendors . . . ."[82]

State licensing agencies are used as intermediaries in formalizing the arrangements under which a blind vendor operates a cafeteria. The Federal Circuit has explained this relationship: "an SLA can respond, *on behalf of a blind vendor*, to a solicitation for offers of cafeteria services and *the licensed vendor will be given priority in award* if the SLA's offer is ranked among the qualified submitted proposals."[83] This relationship does not make a blind vendor akin to a

---

[78] 20 U.S.C. § 107(a) (emphasis added).

[79] 20 U.S.C. § 107(b) (emphasis added).

[80] 34 C.F.R. § 395.33(b) (emphasis added).

[81] 32 C.F.R. § 260.3(b) (emphasis added).

[82] 32 C.F.R. § 260.4(c)(4).

[83] *Southfork Sys. v. United States*, 11 F.3d 1124, 1127 (Fed. Cir. 1998) (emphasis added).

subcontractor or employee, as was erroneously assumed in *Division of the Blind v. United States.*[84] The rights and duties of an employee or subcontractor are purely a creature of contract. By contrast, a blind vendor has a statutory right to operate vending facilities and cafeterias on federal properties, and all federal agencies have a statutory obligation to honor that priority. Because blind vendors are injured parties when the government violates the Randolph-Sheppard Act, "blind vendors would have standing to sue in their own right . . . ."[85]

If the Buckley cafeteria were procured pursuant to the Randolph-Sheppard priority, Mr. Rightsell, not Colorado DVR, would be responsible for providing all goods and services under the contract. Mr. Rightsell, not Colorado DVR, would receive all payments due to the contractor under the contract. Colorado DVR will function as an intermediary for negotiating the contract because that procedure is required by the Randolph-Sheppard regulations. Mr. Rightsell, however, was and is the real party in interest who stands to benefit or lose from the Air Force's decision regarding the Buckley cafeteria.

Under these circumstances, Mr. Rightsell should be considered an offeror or bidder within the meaning of 31 U.S.C. § 3551. The intent of the Randolph-Sheppard priority in this case is for Mr. Rightsell to provide cafeteria services at Buckley, thus benefiting him. If blind vendors like Mr. Rightsell are not interested parties under CICA, then it would be left to the whim of the State agency to decide when their rights can be vindicated. Although Colorado DVR has joined in prosecuting this case, other vendors may not be so fortunate. Their SLAs may be unable or unwilling to act on their behalf for budgetary, political, or other reasons,

---

[84] 53 Fed. Cl 147 (2002).

[85] *Randolph-Sheppard Vendors of America*, 795 F.2d at 99-100.

leaving vendors with no recourse against illegal actions by federal agencies unless they can file suit for themselves.

**B. Mr. Rightsell has the right to intervene under RCFC 24.**

Because Mr. Rightsell has significant interests in this matter that may as a practical matter be impaired by this action, he should be permitted to intervene pursuant to RCFC 24(a)(2) if the Court believes that he is not a "bidder" or "offeror." Both this Court and other courts have allowed Randolph-Sheppard vendors to intervene in cases in which the applicability of the Randolph-Sheppard Act is at issue.[86] Mr. Rightsell's interest is direct and immediate, and may be lost by the direct legal operation of a judgment in favor of the Army.[87]

Mr. Rightsell's right to a priority to operate the Buckley cafeterias is not diminished by the statutory scheme that requires that the contract be perfected through Colorado DVR as an intermediary. In *Trbovich v. United Mine Workers of America*, Mr. Trbovich filed a complaint with the Secretary of Labor regarding suspected improprieties in a union election.[88] The Secretary, and only the Secretary, was authorized by statute to bring suit against the union, which the Secretary did.[89] Mr. Trbovich sought to intervene in that lawsuit. The Supreme Court allowed the intervention. Union members have statutory rights against their unions.[90] Enforcing

---

[86] *See, e.g., Automated Commc'n Sys., Inc. v. United States*, 49 Fed. Cl. 570, 574 (2001); *NISH v. Cohen*, 191 F.R.D. 94, 98 (E.D. Va. 2000) (allowing vendor and others to intervene where third party challenged application of the Randolph-Sheppard priority); *see also NISH v. Rumsfeld*, 348 F.3d 1263 (10th Cir. 2003).

[87] *See American Maritime Transp. Inc. v. United States*, 870 F.2d 1559, 1561 (Fed. Cir. 1989).

[88] 404 U.S. 528 (1972).

[89] *Id.* at 530

[90] *Id.* at 538-39.

those rights through the Secretary of Labor gives effect to Congress's policy of channeling all complaints about union elections through a central point to avoid piecemeal litigation by different union members in different fora.[91] It does not affect an individual member's right to intervene to enforce his personal rights once that policy has been vindicated.

Mr. Rightsell's interests may not be adequately represented by Colorado DVR. It is Mr. Rightsell, not Colorado DVR who has the greatest economic interest in obtaining this contract. Colorado DVR, as a state agency, is subject to budgetary and political concerns unrelated to this lawsuit that may cause it to take positions different from those Mr. Rightsell seeks to advance, or even to withdraw entirely.

Under Rule 24(a), the burden on the applicant of demonstrating a lack of adequate representation should be treated as "minimal."[92] The applicant need only show that the existing parties "may be" inadequate in representing the applicant's interests.[93] Colorado DVR is protecting Colorado's public interest in promoting opportunities for blind entrepreneurs, not Mr. Rightsell's personal interest in obtaining this contract. While their interests are similar, "they may not always dictate precisely the same approach to the conduct of the litigation."[94]

The Court also has discretion under RCFC 24(b) to allow intervention when the movant's claims have common issues of law or fact with the existing parties and no undue delay or prejudice would result. Mr. Rightsell's claims are based on the same facts and legal issues as

---

[91] *Id.* at 529-30.

[92] *Trbovich v. United Mine Workers of America*, 404 U.S. 528, 538 n.10 (1972).

[93] *Id.*

[94] *Id.*

Colorado DVR's claims. Because he is already named as a party in this case, no undue delay or prejudice will result from changing his status to intervenor.

Because Mr. Rightsell has the right to participate in this case, either because he is a "bidder" or "offeror" or because he has the right to intervene, his status provides no reason to deny injunctive relief.

## VI. THE AIR FORCE PROVIDES NO OTHER REASON TO DENY INJUNCTIVE RELIEF.

The Air Force submits a laundry list of reasons why injunctive relief should not be granted, none of which are explained in any detail and none of which are sufficient bases on which to deny injunctive relief.

As noted in plaintiffs' initial brief, Department of Defense policy prohibits the Air Force and its Non-Appropriated Funds Instrumentalities ("NAFI's") from "enter[ing] into contracts or agreements . . . that will result in the loss of jobs under [the Randolph-Sheppard Act.]"[95] The Air Force claims that this policy memorandum does not establish a private right of action.[96] This is irrelevant – it establishes that Colorado DVR and Mr. Rightsell will likely prevail on the merits on this case in arbitration because the Air Force is flouting the Randolph-Sheppard Act and Department of Defense policy.

The Air Force then argues, confusingly, that because 10 U.S.C. § 2492 authorizes NAFI's to operate cafeterias and be paid from appropriated funds and because the Air Force does not intend to use appropriated funds in this case, the Department of Defense policy directive has not

---

[95] Mem. of D. Chu, Under Sec'y of Defense, to Secretaries of the Military Dep'ts (Dec. 29, 2004), Pl. Ex. 12.

[96] Gov't Br. at 22.

been violated.[97] Section 2492 applies only to overseas operations and makes no mention of the source of funds used. The Defense Department policy directive, however, specifically references "NonAppropriated Fund Procurement Policy" and prohibits contracts or agreement with NAFI's that result in loss of jobs for blind vendors (with no reference to the source of funds from which the blind vendor was paid or from which the "contracts or arrangements" are to be paid). Here, the Air Force admits that it intends to enter into arrangements with its NAFI to operate food services. Food services were previously provided by a blind vendor. The Air Force's actions fall squarely within the scope of the Department of Defense memorandum prohibiting arrangements with NAFI's that prejudice blind vendors.

Next, the Air Force argues that allowing Mr. Rightsell to operate the renovated Buckley cafeteria would violate the Anti-Deficiency Act because "there are no appropriated funds and no bona fide need for continuing the contracted operation . . . ."[98] Plaintiffs have not asked the Court to require the Air Force to exercise the option years in the contract under which Mr. Rightsell previously operated the Buckley cafeteria. They ask the Court to require the Air Force to comply with the Randolph-Sheppard Act with respect to who will operate the renovated cafeteria. If there were no need for a cafeteria or no funds to operate it, the Air Force would not be renovating and re-opening one.

Regardless of whether the Air Force operates the cafeteria by contract funded with appropriated monies or though a NAFI using other monies, it must abide by the Randolph-Sheppard Act. If it so chooses, it can instruct its NAFI to contract with Colorado DVR and Mr. Rightsell to operate the cafeteria. The Air Force or its NAFI can use whatever funds they had

[97] *Id.*

[98] Gov't. Br. at 23.

planned to use pay for the renovated cafeteria, including allowing the operator to earn a profit from its sales. But they cannot use internal divisions or funding sources to circumvent the Randolph-Sheppard Act.

**Conclusion**

The Air Force intends to operate food services at Buckley Air Force Base that fall within the Randolph-Sheppard regulations' definition of a cafeteria. Those regulations require the Air Force to offer Colorado DVR and Mr. Rightsell the opportunity to operate this cafeteria. There is no exception for "in-house" cafeterias or the source of funds used to pay for the operations. Mr. Rightsell and Colorado DVR are potential offerors that want to provide cafeteria services, and the Air Force is obligated by the Randolph-Sheppard regulations to procure those services a manner that considers their offer, whether by formal solicitation or direct negotiation. The Air Force's attempt to violate a procurement law, obtain the goods and services nonetheless, and then claim that because of its violation there is no "procurement" – and hence no remedy for its violation – is both circular reasoning and a violation of a statute and regulation in connection with a procurement or proposed procurement. It should not be countenanced and should be enjoined pending the outcome of the pending arbitration.

Respectfully submitted,

JOHN W. SUTHERS
Attorney General
State of Colorado

By: /s/ Andrew D. Freeman
Andrew D. Freeman
Special Assistant Attorney General
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
(410) 962-1030

(410) 385-0869 (fax)
E-mail: adf@browngold.com

Kathryne C. Gwinn (of counsel)
First Assistant Attorney General
State Services Section
1525 Sherman Street, 5th Floor
Denver, Colorado 80203
(303) 866-56549
(303) 866-5671 (fax)
E-mail: kc.gwinn@state.co.us

Attorneys for plaintiff Colorado Department of Human Services/Division of Vocational Rehabilitation

/s/ Andrew D. Freeman

Andrew D. Freeman
Shelly Marie Martin (of counsel)
Brown, Goldstein & Levy, LLP
120 East Baltimore Street, Suite 1700
Baltimore, Maryland 21202
(410) 962-1030
(410) 385-0869 (fax)
adf@browngold.com
smm@browngold.com

Attorneys for plaintiff Steven Rightsell

Dated: October 23, 2006

**CERTIFICATE OF SERVICE**

I hereby certify that on this 23rd day of October, 2006, a copy of the foregoing Reply in Support of Plaintiffs' Motion for Preliminary Injunction and Opposition to Defendant's Motion to Dismiss was filed electronically and served via the Court's electronic filing system.

/s/ Andrew D. Freeman