# EXHBIT 2

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SPECIAL EDUCATION
AND REHABILITATIVE SERVICES
REHABILITATION SERVICES ADMINISTRATION

Rec'd
AUG 20 2002

COMMONWEALTH OF KENTUCKY
CABINET FOR WORKFORCE DEVELOPMENT
DEPARTMENT FOR THE BLIND

COMPLAINANT

vs

UNITED STATES DEPARTMENT OF DEFENSE
AND DEPARTMENT OF THE ARMY
CASE NO. R-S/01-11

RESPONDENT

* * * * * * * * *

# ARBITRATION DECISION AWARD


**W SCOTT THOMSON** — Panel Arbitrator
6001 Wagram Way
Louisville KY 40222

**James E Shane**, — Panel Arbitrator
Brigadier General, USA (ret)
Executive Director
Office of the Governor
Kentucky Commission on Military Affairs
66 Wilkinson Blvd
Frankfort KY 40601

**Joseph C Luman**, Esq — Panel Arbitrator
1660 L Street NW #506
Washington DC 20036

Complainant is the Kentucky Department of the Blind acting by and through the Commissioner, 209 St. Claire St, PO Box 757, Frankfort, KY 40602-0757.

Respondent is the United States Department of the Army, Secretary of the Agency, with The Honorable Thomas E White, 101 Agency, Pentagon, Washington, DC 20310-0101, acting by and through the Director of Contracting, Building 2174, 13½ St and Indiana, Fort Campbell, KY 42223-5358.

September 13, 2001, the Kentucky Department of the Blend [KDB] filed a complaint with the Commissioner of the United States Department of Education, Office of Special Education, Rehabilitation Services (RSA), pursuant to the authority granted by the Randolph-Sheppard Act at 20 USC ¶ 107-1(b), demanding Arbitration against the United States Department of the Army acting by and through the Director of Contracting, Fort Campbell, KY.

October 23, 2001 the Commissioner notified the KDB of the procedures to be followed for the Arbitration and identified the issue

to be decided. Subsequent to receipt of this correspondence, the KDB filed a revised statement and amended complaint clarifying issues to be addressed to and by the Arbitration panel. November 6, 2001 the KDB submitted to the agency a request pursuant to the Freedom of Information Act, 5 USC ¶ 552(a)(3).

---

The Arbitration was conducted May 13, 2002 at the Charles W McDowell Center, Louisville, KY. The parties acknowledge there is no dispute of facts. The issue to be decided concerns the interpretation of the R-S Act and its implementing regulation. Both parties filed post-Arbitration briefs.

Complainant proffers the Agency has engaged in a pattern of conduct calculated to eliminate the KDB and its blind licensee from performing services in military dining facilities (cafeteria) at Fort Campbell, KY. "*This constitutes a willful violation of the spirit and intent of the R-S Act and implementing regulation in regulation promulgated by both the Department of Education (DOE Title 34 CFR part 395 and Department of Defense, Title 32 CFR part 260). The Agency failed to follow requested procedure set forth in the R-S Act in*

*implementing regulations prior to placing any limitation on the placement or operation of military dining facility (cafeteria) by the KDB."* It requests the Arbitration panel to declare that the requirements set forth in new Solicitations are covered by the R-S Act, and to cancel the new Solicitation and engage in direct negotiations with the KDB for the requirements to be performed in military cafeterias.

February 15, 1996, the KDB was awarded contract No.DAKF 22-96-D-0205 to perform cafeteria type service in Military dining facilities at Fort Campbell, KY. Specifically, cafeteria attendants' duties consist of Full Food and Dining Facility attendant services. The KDB assigned performance of the contracting department to James E. Hardin, a qualified blind, licensed vendor under the R-S Act. He subsequently entered into a joint venture with KBD and formed First Choice Food Services to perform contract requirements. First Choice had satisfactorily performed food and dining facility attendant services at Fort Campbell, KY from March 8, 1996 until the expiration of the contract on September 30, 2001.



THOMSON

Stephen M. Johnson, Director for the Kentucky Business Enterprise Program wrote the agency January 21, 2000 requesting direct negotiations with the KDB for the continuation of food services at Fort Campbell, KY. No response to this request was provided by the Agency.

---

*Direct negotiations between the Agency and KDB without a competitive procurement are expressly permitted by regulation implementing the R-S Act 34 CFR 395.33(d) provides:*

*Notwithstanding the requirements of paragraphs (a) and (b) of this section which provides for a competitive procurement, with the SLA as an offeror, the federal . . . Agency may afford priority in the operation of cafeterias by blind vendors on federal property through direct negotiations with state licensing agency whenever such . . . agency determines . . . that such operation can be provided at a reasonable cost with food of high quality.*

August 9, 2000 a meeting was held with the Agency's contracting personnel to discuss continuation of the food service requirements at Fort Campbell, KY. The Agency refused to enter into direct negotiations with the KDB for continuation of such services in its Military dining facilities (cafeteria).

Denise M. Placido, commissioner for the KDB wrote the Agency April 17, 2001 requesting the Agency enter into direct negotiations with KDB for continuation of military food services at Fort Campbell, KY. The Agency did not respond to the KDB's request.

March 2001 the Agency, without explanation, discontinued ordering the performance of full food services under the contract effective April 1, 2001. First Choice thereafter performed only what the Agency would classify as Dining Facility Attendant Services. First Choice performed Dining Facility Attendant Services for seven months under a contract awarded under the R-S Act. The Agency never explored whether Dining Facility Attendance Services were covered by the R-S Act.

June 20, 2001 Directory of Contracting at Fort Campbell, KY posted an announcement in the ***Commerce Business Daily*** (CBD). The advertisement announced the Agency's intent to issue a new solicitation for performance of Dining Facility Attendant Services at Fort Campbell, KY which had been performed by First Choice since



THOMSON

April 1, 2001. The announcement of the procurement would be limited to Small Business Administration certified personnel. The Agency refused to enter into direct negotiation with the KDB pursuant to the R-S Act. The Agency refused procurement for Fort Campbell, KY Dining Facility (Cafeteria) pursuant to the "*competitive*" provisions of the R-S Act.

Subsequent to the issuance of the CBC announcement. The Honorable Paul E. Patton, Governor of Kentucky, wrote the Secretary of the Army, July 25, 2001 expressing his concern "*It is in violation of the spirit and intent of the R-S Act and its implementing regulation.*" August 14, 2001 the Agency amended its CBD announcement. It issued a solicitation for Dining Facility Attendant. The new solicitation was to be administered as a SBA 8(a) set aside procurement and not as a Randolph-Shepard procurement. Its contract performance was tentatively scheduled to begin December 1, 2001.

August 28, 2001 the Acting Secretary of the Army, Kenneth J. Oscar wrote Governor Patton informing him the R-S Act was not applicable to the follow-on procurement of services under the

solicitation. The Agency continued with KDA's a one month contract with First Choice to only provide Dining Facilities Attendant Services from September 1, 2001 through September 30, 2001. Subsequently, the Agency awarded a six month contract with a six month option to KCA for continuation of Dining Facility Attendants.

---

Department of Defense General Counsel (DODGC) acknowledges the Randolph-Shepard Act (R-S Act) is generally applicable to appropriated funded contracts for Military Dining Facilities.

> *The Memoranda set forth new guidance to clarify the relationship between the contracting preferences established by the Small Business Act. We are simultaneously pursuing a legislative initiative to exclude Military Dining Facilities from R-S Act applicability. [emphasis added]*
>
> *Does the R-S Act apply? The R-S Act may not apply when the contract is for discrete services rather than the overall operation of a dining facility? If the services to be provided are a limited number of discrete services (mess attendant RKP services) military personnel retains the overall operation of the cafeteria then the cafeteria is operated in-house and R-S does not apply.*
>
> *For all existing contracts not awarded pursuant to R-S evaluate the services before exercising the options. If the R-S Act would not apply, based on the DODGC guidance, then proceed in exercising all options.*



THOMSON

The Department of the Army referring solicitation and contracting follows the above Memoranda Dining Facility attendance. "*The (GAO) July 14, 1999 embraced this new DOD policy— effectively reversing earlier Army guidance to the contrary.*" The R-S Act program-preferences is only to be followed when the Agency's acquisition strategy is to use full and open competition. This is no priority of use between R-S and JWOD.

August 15, 2001 a further Memoranda provides a synopsis for Dining Facility Attendance Services of July 20, 2001. It indicates this is to be a set-aside for SBA certified eligible firm. Accordingly, as an amendment for solicitation/modification of contract DAKF 23-96-D-0205 is proper.

This solicitation is in derogation to the R-S Act as modified in 1974. The purpose to be achieved by the June 20. 1936 Randolph-Shepard Act is to provide blind persons with employment enlarging the economic opportunity of the blind and stimulating the blind to greater efforts in striving to make themselves self-supporting.

To do this Congress established priorities to the blind to afford them an opportunity to provide services at a reasonably competitive price.

In the 1974 the Randolph-Shepard Act Amendment added to section 3a requirement that to the maximum extent feasible blind vending facilities should be placed in areas where Federal employees work. The GAO had directed that cafeteria minority enterprises and employee groups were to be given preference in accord with the intent of the Randolph-Shepard Act. It established certain circumstances under which blind persons should be given preference. The Randolph-Shepard Act authorizes blind persons licensed by state agencies to operate vending stands on Federal property.

> The "*Randolph-Shepard Act is one of the most practical and effective employment opportunities for blind persons. The committee expects every official controlling federal property to make every possible effort to work cooperatively with the Secretary of Health, Education and Welfare, the Commissioner of the Rehabilitative Services Administration and the state licensing agencies to foster the expansion of the Randolph-Shepard program to its fullest potential as rapidly as possible.*
>
> *It was incumbent that the Secretary, Commissioner, and the Office of the Blind and visually handicapped to show great initiative, creative and vigorous action.*



THOMSON

Vending machines and minority business enterprises had not been introduced on Federal property to the detriment of the Randolph-Shepard program and in violation of the spirit of the law. Its attention was directed toward the establishment and protection of blind vending operations. This is emphasized by the inclusion of a priority. It urges the suitability of blind vendors to use its efforts accordingly.

The Army food service program contracts for food service functions and food service activity. It has identified three types of cafeteria services: a full food service FFS (b) dining facility attendant (DFA) and (c) Management and Food Production (M&FP). Cafeterias were added to embrace the effect of vending type operations.

July 1, 2001, Title 34, Vol. 2, parts 300 to 399 in the Code of Federal Regulations it defines a cafeteria to be a "*food dispensing facility providing a broad variety of preferred food and beverages (including hot meals) primarily through the use of a line where the customer serves himself from placed selections*." A cafeteria may be fully automatic or some limited waiter or waitress services. In accord


THOMSON

with the Randolph-Shepard Act of 1936 and as amended in 1974 it includes cafeteria as a type of vending machine operation. I must conclude that dining facility attendants in this setting is appropriately deemed to be services under the Randolph-Shepard Act. To exclude the dining facilities attendant services would frustrate and is inconsistent with the priority afforded blind persons in military settings. There is no doubt that blind persons can adequately perform Dining Facility Attendant work. Only because this is not a "*full service cafeteria*" with cooking and preparation of food being performed by Army personnel does this contest arrive. Army personnel is to be trained in food service preparation as an integral part of Army sufficiency in foreign locations. To deny the blind persons to perform cafeteria work at military installations because food preparation is performed by the Army is to deny blind persons the effect of having priority for such work.



THOMSON

ARBITRATION AWARD

Dining Facility Attendants are contained in the Agency proposal for Food Attendant Services type work. The Respondent shall promptly negotiate with the KDB for such services as covered by R-S Act amendments.

26 JULY 2002

W. Scott Thomson

W SCOTT THOMSON
Panel Arbitrator

James E Shane

James E Shane BG, USA (Ret)
Panel Arbitrator

Concur
8 Aug 2002

Joseph C Luman
Attorney
Panel Arbitrator



THOMSON

UNITED STATES DEPARTMENT OF EDUCATION
OFFICE OF SPECIAL EDUCATION AND REHABILITATIVE SERVICES
REHABILITATION SERVICES ADMINISTRATION

AUG 20 2002

COMMONWEALTH OF KENTUCKY
CABINET FOR WORKFORCE DEVELOPMENT
DEPARTMENT FOR THE BLIND — COMPLAINANT

VS. — CASE NO. R-S/01-11

UNITED STATES DEPARTMENT OF DEFENSE
AND DEPARTMENT OF THE ARMY — RESPONDENT

*****************************

**CONCURRING OPINION**

The Kentucky Department for the Blind ("KDB"), the State licensing agency ("SLA") under the Randolph-Sheppard Act, 20 U.S.C. §§ 107 *et seq.* ("the R-S Act"), protests the issuance of an exclusionary solicitation that bans it from negotiating or competing for the follow-on contract for the military dining facilities services it performed at Fort Campbell, Kentucky since 1996. The Contracting Office for the Department of the Army ("the Agency") at Fort Campbell, Kentucky issued Solicitation No. DAKF23-01-R-0212 ("new Solicitation") that permits only Small Business Administration (SBA) certified 8(a) businesses to compete for award and performance of dining facility attendant services.

The Agency asserts that the dining facility attendant services no longer come under the authority of the R-S Act priority because the full food component of the previous contact had been eliminated. The Agency did not seek to justify this

limitation on the application of the R-S Act to the Secretary of the United States Department of Education as required by the federal law and regulations; rather the Agency simply excluded KDB from participation in the new solicitation.

Based on the May 13, 2002 arbitration proceedings conducted at the Charles W. McDowell Center, Louisville, Kentucky; and the parties' pleadings, exhibits, documentation, and cited legal authority, I concur in the majority arbitration award directing the Agency to engage in direct negotiations with the KDB to perform the requirements under the new Solicitation No. DAKF23-01-R-0212.

**PROCEDURAL HISTORY**

On September 13, 2001, the KDB filed a Complaint with the Commissioner of the United States Department of Education, Office of Special Education and Rehabilitation Services, Rehabilitation Services ("RSA"), pursuant to the authority granted by the Randolph-Sheppard Act, 20 USC §§ 107-1(b) and 107d-2 and the implementing regulation at 34 CFR 395.37, demanding arbitration against the United States Department of the Army, acting by and through the Directorate of Contracting at Fort Campbell, Kentucky. The RSA Commissioner acknowledged receipt of the KDB's Complaint on September 17, 2001.

On October 23, 2001, the RSA Commissioner notified the KDB of the procedures to be followed for the arbitration and identified the issues to be decided. Subsequent to receipt of this correspondence, the KDB filed a revised statement and Amended Complaint clarifying the issues to be addressed in by the Arbitration Panel. The Agency proffered its Answer to the KDB's Amended Complaint on May 13, 2002, at the outset of the arbitration.

**FACTUAL BACKGROUND**

The Agency recognized and adhered to the requirements of the R-S Act in 1996 when it awarded Contract No. DAKF 23-96-D-0205 to the KDB to perform cafeteria services in military dining facilities at Fort Campbell following submission of a competitive bid by the KDB. On February 15, 1996, the KDB was awarded Contract No. DAKF23-96-D-0205 ("the Contract") to perform cafeteria type services in military dining facilities at Fort Campbell. Specifically, the cafeteria operations consisted of full food and dining facility attendant services.

Consistent with the purposes of the R-S Act, the KDB assigned performance of the Contract requirements to James E. Hardin, a qualified blind licensed vendor under the R-S Act. Mr. Hardin subsequently entered into a joint venture agreement with KCA Corporation and formed First Choice Food Service, a Joint Venture ("First Choice"), to perform the contract requirements. First Choice satisfactorily performed both full food and dining facility attendant services at Fort Campbell from March 8, 1996 until the expiration of the contract term.

During performance of that contract, the Agency eliminated full food services from the requirements of the KDB. In March of 2001, the Agency, without explanation, discontinued ordering the performance of full food services under the Contract effective April 1, 2001. First Choice therefore performed only what the Agency would classify as dining facility attendant services since April of 2001. By the Agency's own decision, First Choice performed only dining facility attendant services for six months under a contract awarded under the R-S Act. During that period of time, the Agency never questioned whether dining facility attendant services only were covered by the R-S Act.

The Agency then entered into a one month contract with the KDB through First Choice again to provide only dining facility attendant services from September 1, 2001 through September 30, 2001. After the completion of this one month contract, the Agency awarded a six month contract with a six month option period to KCA Corporation for the continuation of dining facility services. KCA Corporation began performance under this contract on October 1, 2001 and continues to the present.

The new Solicitation No. DAKF23-01-R-0212 was posted in the Commerce Business Daily ("CBD") on June 20, 2001 and modified on August 14, 2001. The advertisements announced the Agency's intent to issue the new Solicitation for performance of dining facility attendant services at Fort Campbell, which had been performed by First Choice from April 1, 2001 to September 30, 2001. The announcement further provided the procurement would be limited to Small Business Administration certified 8(a) business entities. Neither the KDB nor First Choice qualify as a Small Business Administration certified 8(a) business.

**CONCURRENCE**

The KDB proved from 1996 through 2001 that the dining facility attendant services at Fort Campbell can be performed to the Agency's satisfaction under the R-S Act. All parties agreed that service was not an issue and that the KDB satisfactorily fulfilled the contract requirements for military dining facility services. Conversely, no proof was submitted by the Agency that it would be adversely affected by the continued performance of dining facility attendant services at Fort Campbell by KDB.

The record establishes the Agency engaged in conduct calculated to eliminate the KDB and its blind licensee from performing services in military dining facilities at Fort Campbell, Kentucky in violation of the spirit and intent of the R-S Act and the implementing regulations promulgated by both the Department of Education ("DoE"),

Title 34 CFR Part 395, and Department of Defense ("DoD"), Title 32 CFR Part 260. In addition, the Agency failed to follow the required procedure set forth in the R-S Act and implementing regulations prior to placing any limitation on the placement or operation of military dining facilities operated by the KDB.

The Agency lacks authority under the R-S Act or implementing regulations to make a unilateral determination that services performed in military dining facilities that have been determined to come within the definition of a "cafeteria" under the R-S Act are no longer covered. Since the dining facility attendant services to be performed pertain to the operation of a "cafeteria" then the services are covered by the R-S Act. The United States Court of Appeals for the Fourth Circuit acknowledged that military dining facilities come within the definition of "cafeteria" under the R-S Act. *Nish and Goodwill Services, Inc. v. Cohen*, 247 F.3d 197 (4th Cir. 2001). Similarly, the General Counsel of DoD, after reviewing and analyzing the R-S Act, the applicable regulations, and other DoE memoranda, determined that "the assertion that the Act does not apply to military dining facilities cannot withstand analysis." Memo. of Judith A. Miller, General Counsel of DoD (Nov. 12, 1998). There can be no doubt that the R-S Act applies to military dining facilities on Department of Defense installations.

Nothing in the R-S Act or implementing regulations reasonably can be construed to limit the applicability of the R-S Act to the performance of certain services performed in military dining facilities. Rather, the Agency depended exclusively on the in-house interpretation issued by Acting Assistant Secretary of the Army (Acquisition, Logistics and Technology) Kenneth J. Oscar in various memoranda throughout the 1990's. Mr. Oscar has been an outspoken opponent of the R-S Act and its application to military dining facilities.

Rather than enforce the law as written by Congress and interpreted by the Department of Education, Mr. Oscar has chosen to lead a campaign against the R-S Act and its application to military dining facilities. In a memorandum dated March 22, 1999, Mr. Oscar proclaims that "we are simultaneously pursuing a legislative initiative to exclude military dining facilities from R[andolph]-S[heppard] applicability." Mr. Oscar developed the following procedure to assist Agency contracting officials in limiting the application of the R-S Act in military dining facilities.

> Does the R-S Act apply? The R-S Act may not apply when the contract is for discrete services rather than the overall operation of a dining facility. If the services to be provided are a limited number of discrete services (mess attendant or KP services) and military personnel retain the overall operation of the cafeteria, then the cafeteria is operated "in-house" and R-S does not apply. This analysis should be applied to situations where a single "umbrella" food service contract covers multiple dining facilities. In applying this analysis, consider the following factors: 1) the total number of meals served by contractors versus the total served by military personnel, 2) the total number of contractor personnel versus total number of military personnel and 3) the total number of contractor-operated facilities versus military operated facilities.

Oscar Memorandum dated March 22, 1999. Thus, Mr. Oscar's plan to circumvent the purpose and intent of the R-S Act is to have contracting officials sanitize any statement of work for dining facility attendant services to exclude any food preparation or handling requirements and have "military personnel retain the overall operation of the cafeteria."

As stated by the majority opinion, this dispute arises because the full food component of the solicitation has been removed. That maneuver by the Agency contracting officials transparently orchestrates Mr. Oscar's strategy to eliminate the participation of the KDB under the R-S Act from the new solicitation for cafeteria operations at Fort Campbell. Yet, there is absolutely no legal authority cited in Mr. Oscar's memorandum to support the Agency's position that the R-S Act does not apply

"when the contract is for discrete services rather than the overall operation of a dining facility." Oscar Memorandum dated March 22, 1999. The Agency, through Mr. Oscar's memorandum, has simply engrafted this exception into the R-S Act and implementing regulation. This is the same unsupported analysis used by the Agency's Contracting Officer at Fort Campbell to determine the R-S Act would not apply to the new Solicitation for military dining services at Fort Campbell.

Despite Governor Paul E. Patton's request to the Secretary of the Army that the Agency reconsider its decision to exclude the KDB from competing for dining facility attendant services at Fort Campbell, Mr. Oscar's response on August 28, 2001 to Governor Patton summarily stated that the R-S Act was not applicable to the follow-on procurement of services under the Solicitation. There is no justification for the Agency's expedient exception to the R-S Act and implementing regulations.

The DoE is charged with implementation of the R-S Act. Its interpretation of the R-S Act, not the Department of the Army's, is controlling. *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S. Ct. 2778, 81 L.Ed.2d 694 (1984); *see also Nish and Goodwill Services, Inc. v. Cohen*, 247 F.3d 197, 201- 02 (4th Cir. 2001)(discussing the application of the *Chevron* to interpretation of R-S Act by Department of Education); *Nish v. Rumsfield*, 188 F. Supp. 2d 1321, 1324-25 (D NM 2002)(same). The DoE has not determined that dining facility attendant services are not covered by the R-S Act. If the Agency was concerned about whether the R-S Act applied to the new Solicitation, it could have sought the guidance of the DoE. It did not.

Unlike the Agency, the KDB requested assistance from the DoE in reconciling the apparent differing interpretations as to whether the R-S Act would apply to dining

facilities at Fort Campbell. In response to the KDB's inquiry, Mark E. Shoob, Deputy Commissioner for RSA responded by letter dated June 12, 2001 as follows:

> According to section 2(a)(1) of the Act, RSA is the "principal agency for carrying out this Act. . ." RSA has explicitly and consistently stated that ***the Act clearly covers all types of food service operations on military bases***, including military troop dining facilities . . . .

Shoob letter dated June 12, 2001. (Emphasis added). Dining facility attendant services are an integral part of food service operations in military dining facilities and, therefore, must be covered by the R-S Act.

The Agency cannot justify its position to except dining facility attendant services under the new Solicitation by improperly characterizing them as "janitorial services." Dining facility attendant services are classified as food sanitation services and are coded under the North American Industry Classification System ("NAICS"), Subsector 722-Food Services and Drinking Places. The services set forth under the new Solicitation therefore are equally important to the operation of a military cafeteria as the cooking and service of the meals. Without the food sanitation services, there could be no food preparation. The interrelationship between food sanitation and preparation is apparent in the new Solicitation that requires the contract manager to have supervisory experience in managing cafeteria style facilities. Solicitation No. DAKF23-01-R-0212, Section C-1. (Emphasis added). Further, the description of the services to be performed also makes it readily apparent that dining facility attendant services are an integral part of the operation of a military cafeteria. The Agency's self-serving pronouncement that dining facility services are not covered by the R-S Act do not make them any less essential to the operation of a military cafeteria or covered by the R-S Act.

There is no legal justification or authority to support the position of the Agency that the R-S Act has no application to dining facility attendant services. The purposeful removal of food preparation or handling services from the new Solicitation for dining facility attendant services does not remove it from the coverage of the R-S Act.

If, in fact, the Agency legitimately disputed the application of the R-S Act to dining facility attendant services, it was required to obtain the consent of the Secretary of the United States of Education to that limitation. Consistent with the letter and spirit of the R-S Act and its implementing regulations with respect to Federal procurements for cafeteria operation services, the R-S Act takes precedence over all other award priority or preference programs. Having already been performed successfully by the KDB under the authority of the R-S Act, the dining facility attendant services could not be procured outside the ambit of the R-S Act without the DoE Secretary's approval. There can be no "limitation on the placement or operation of a vending facility [by a blind vendor licensed by an SLA pursuant to the R-S Act]" *unless* (1) the agency has first submitted to the Secretary of Education a written finding that operation of a vending facility by a blind vendor would adversely affect the interests of the United States *and* (2) the Secretary agrees that the agency's finding is justified and publishes such finding in the Federal Register. *See* 20 USC §107(b).

The Agency's own regulations implementing the R-S Act similarly provide:

> (1) This priority [in award of contracts to operate cafeterias] will not be accorded when the on-site official determines, after conferring with the Head of the DOD component, that the interest of the United States would be adversely affected if the priority were accorded.
>
> (2) ***Any determination that according the priority would be adverse to interests of the United States must be fully justified in writing*** through the head of the DOD component concerned (who will consult with the Assistant

> Secretary of Defense (Manpower, Reserve Affairs and Logistics))(ASD(MRA&L)). The justification shall be sent to the [Secretary of Education], who has authority to determine whether the failure to accord the priority is justified by the circumstances. ***The determination by the [Secretary of Education] must be published in the Federal Register and is binding upon the DOD component.***

(Emphasis added).

Based on 20 USC §107(b), services for all vending facilities and cafeterias must be procured pursuant to the R-S Act and the award priority it provides for SLAs and their blind vendors. Agencies, including the Army, can only "opt out" of the R-S Act if they seek permission from the Secretary of Education and the Secretary's decision permitting an agency to "opt out" of the R-S Act is published in the *Federal Register*. Therefore, the Agency admittedly did not followed the requirements of 20 USC §107(b) which provides as follows:

> ***Any limitation*** on the placement or operation of a vending facility based on a finding that such placement or operation would adversely affect the interests of the United States shall be fully justified in writing to the Secretary, who shall determine whether such limitation is justified. A determination made by the Secretary pursuant to this provision shall be binding on any department, agency, or instrumentality of the United States affected by such determination. The Secretary shall publish such determination, along with supporting documentation, in the Federal Register.

The evidence presented to the arbitration panel clearly reflects there was no effort made on the part of the Agency to even consult with the DoE to determine whether such a limitation was justified.

The Agency's issuance of the new Solicitation amounts to a "limitation on the placement or operation" of vending facility services procured pursuant to the R-S Act. The Agency has not justified in writing how the United States' interests are adversely affected by conducting the follow-on procurement for dining facility attendant services

pursuant to the R-S Act, and the Secretary of Education has not published his concurrence with such a finding in the *Federal Register*. Thus, the new Solicitation violates the plain and unambiguous language of 20 USC §107(b).

As recognized by the majority opinion, the successful performance of the contract by the KDB, Mr. Hardin, and First Choice clearly confirms that a licensed blind vendor can provide the required cafeteria operation services at Fort Campbell at a comparable price and comparable high quality as other providers of such services. Thus, the R-S Act applies to the procurement for these services.

Since the procured services are determined to be covered by the R-S Act, the KDB, as the SLA, must be afforded an opportunity to participate. In this case, direct negotiations are appropriate. Direct negotiations between the Agency and the KDB without a competitive procurement are expressly permitted by regulations implementing the R-S Act. Specifically, 34 CFR 395.33(d) provides:

> Notwithstanding the requirements of paragraphs (a) and (b) of this section [which provide for a competitive procurement, with the SLA as an offeror], ***Federal ... agencies may afford priority in the operation of cafeterias by blind vendors on Federal property through direct negotiations with State licensing agencies*** whenever such . . . agency determines . . . that such operation can be provided at a reasonable cost with food of a high quality comparable to that currently provided . . . .

(Emphasis added).[1]

The Agency has failed to present a modicum of evidence that it did anything to comply with the requirements of the R-S Act and its implementing regulations prior to

[1] The only discretion the Agency has to award a follow-on contract for the Contract that the KDB currently performs is to either enter into direct negotiations with the KDB under 34 CFR 395.33(d) *or* require the KDB to compete, as it did in 1995, pursuant to 34 CFR 395.33(a) and (b).

excluding the KDB from its procurement for services in its military cafeterias. The Agency acted in direct contravention of the R-S Act and its implementing regulations by determining that dining facility attendant services were not covered by the R-S Act and by issuing the new Solicitation without including the priority afforded by the R-S Act. I concur in the majority award that dining facility attendant services are covered by the R-S Act and the Agency is directed to engage in direct negotiations with the KDB for its dining facility attendant service requirements at Fort Campbell. I would further direct that should good faith negotiations fail between the Agency and KDB then the Solicitation be issued to permit the KDB to compete under the R-S Act.

James E. Shane

James E. Shane, Brigadier General, USA (ret.)
Panel Arbitrator
Dated: 8 August 2002

BEFORE THE SECRETARY

DEPARTMENT OF EDUCATION

SEP - 5 2002

Rec'd

STATE OF KENTUCKY
Complainant

Case No. R/S/01-11

v.

DEPARTMENT OF THE ARMY
Respondent

DISSENTING OPINION

By its terms, the Randolph-Sheppard program grants a priority to blind vendors for the "operation of a cafeteria". In 1996, despite high-level contentions that a concession vending program was not suited to procurements using tax dollars, the authorities at Fort Campbell dutifully awarded its mess hall contracts to a blind vendor supported by the Kentucky Department for the Blind. Last year, after making military personnel responsible for operational responsibilities formerly performed by the contractor, the command reasoned that it need not continue using the Randolph-Sheppard procedures since the blind vendor was no longer "operating a cafeteria".

As the Army itself made these changes, albeit for other reasons, the Kentucky agency argues that they should not be used to justify a change in the contract's status. The agency asked for arbitration because it believed that once a Randolph-Sheppard contract is awarded, subsequent operational changes should not remove it from the program. The agency also contends that the requirement for "operation" can be satisfied by a lesser degree of management that the standard relied upon by the Army. This is where the issue is joined, as set out in the very first part of the Army's post-hearing brief.

These were the concerns brought to this arbitration. A considerable amount of effort and money would be involved were the Army to re-award these large contracts pursuant to the recommendation of this arbitration. I do not believe the proposed award addresses them sufficiently to justify a change in what the Amy has elected to do. (Although identified by the chair as "my Decision in this matter", the document bears the title "Kentucky Department for the Blind's Post-arbitration Brief" and reads accordingly).

To determine the underpinnings of the decision, we must rely on the analytic section of the opinion. Although a careful reading of the beginning of the opinion (p. 4) discloses the critical fact that only one blind individual is benefiting, the decision page does not reflect this. Instead, it treats Randolph-Sheppard as an employment program for blind

workers, speaking of "blind persons" performing "Dining Facility Attendant work". (p 13). We cannot know if this reflects only imprecise wording or the panel chair's understanding, but it is this section that must supply the rationale for the decision. It does not. The decision does not rest on any justifiable foundation and should not be the basis for any action.

The analytic section supporting that recommendation is essentially a single page. That section used words that suggest a profound misunderstanding of why this proceeding was held in the first place. In holding that the Army erred in purchasing mess attendant services under a program other than Randolph-Sheppard, the holding makes the point that blind people are able to perform them:

"There is no doubt that blind persons can adequately perform Dining Facility Attendant work." (p. 13)

This point was never addressed by the Army, let alone disputed, because it was not at issue in this arbitration. This contract did not employ any blind persons as mess attendants. The aims of Randolph-Sheppard were served by a single blind vendor managing the cafeteria operations in several mess halls, and his abilities were never at issue. Mess attendant activities like bussing tables and wiping them were performed by employers of the large commercial concern, a "partner" of the blind manager, which was actually responsible for performing the work.

The Army's withdrawal of these multi-million dollar contracts from the coverage of the Randolph-Sheppard program occurred because the "operational" portion was no longer included, having been assigned to military personnel for training and deployment reasons. With this being the major contention on which the arbitration turned, one would expect the opinion to discuss it. We find only this summary sentence:

"To deny the blind persons to perform cafeteria work at military installations because food preparation is performed by the Army is to deny blind persons the effect of having priority for such work." (p. 13)

There are no blind persons seeking to "perform cafeteria work" at Fort Campbell. The priority is not for "such work as food preparation" but more to oversee those charged with food preparation. The Randolph-Sheppard priority is "to operate a cafeteria", and it runs to a single manager rather than to a group of blind workers.

The parties deserve an opinion that addresses the issue of whether a change in operational' scope justifies withdrawing a contract from the Randolph-Sheppard program. Instead, we have one whose decision is clearly set out but not explained. Whatever the degree of understanding, the characterizations on the decision page of this opinion portray the issue so erroneously that they undercut the recommendation that presumably is based on that portrayal.

Through a series of circumstances, a tripartite panel has issued a decision with no input from the party representing the side ruled against. This was not intentional on the part of the panel chair, but it was nonetheless unfortunate. It negated the supposed advantage of having party arbitrators familiar with the issues. In this instance, the only panel member with experience with the complexities of the Randolph-Sheppard contract issues had no influence on the proposed award. As a consequence, the chair had no sounding board who could have alerted him to the nature of the program they were reviewing and pointed out places where the draft award mischaracterizes the process.

Assuming that my input might have made a difference in this award, leading to either a better justification for this award or a different conclusion, may be self-indulgent. In this proceeding, unlike the three others I have participated in, the panel chair chose not to engage in discussions with the party arbitrators or ask for recommend drafts but to draw up his own opinion and then send it to them. I regret that the draft arrived at my office when I was vacationing with my family and had already been filed when I read it and called the chair. In none of the other arbitrations did the chair conform so precisely to the recommended time frame for submitting the award, and in one in Illinois the party arbitrator for the State was given several weeks to write a dissent. However, the time frames are there and the panel chair felt compelled to adhere to them. I am thus left to deal with a document that I wish I had reviewed, for then it would either have been altered somewhat or I could whole-heartedly take issue with it. As it is, I am in the uncomfortable position of offering a critical analysis that the writer cannot rebut.

As one who helped select the chair, and found him quite cordial and pleasant at the hearing, I regret having to take such sweeping issue with the decision he wrote. However, it is simply not fair to the parties, nor to the system, to process the chair's draft as a panel award.

Joseph C. Luman, Panel member
Dated 09/05/02