shall not apply at the prime contract level to any contract for operation of a military dining facility entered into with a State licensing agency as of the date of enactment of the "no-poaching" provision, for example, Fort Lee, Fort Carson, and Kirtland AFB prime contracts. As contracts with State licensing agencies expire, the DOD will solicit competitive proposals under the R-SA.

4. For contracts not covered by the "no-poaching" provision:

a. The contracts will be competed under the R-SA when the DOD solicits a contractor to exercise management responsibility and day-to-day decision-making for the overall functioning of a military dining facility, including responsibility for its staff and subcontractors, where the DOD role in the contract is generally limited to contract administration functions described in the Federal Acquisition Regulation (FAR) Part 42 (48 CFR, Chapter 1, Part 42).

b. In all other cases, the contracts will be set aside for JWOD performance (or small businesses if there is no JWOD nonprofit agency capable or interested) when the DOD needs dining support services, (e.g., food preparation services, food serving, ordering and inventory of food, meal planning, cashiers, mess attendants, or other services that support the operation of a dining facility) where DOD food service specialists exercise management responsibility over and above those contract administration functions described in FAR Part 42.

c. The presence of military personnel performing dining facility functions does not necessarily establish the inference that the Government is exercising management responsibility over that particular dining facility.

5. In accordance with FAR Part 8, if dining support services are on or will be placed on the Procurement List, any State licensing agency that is awarded a contract for operation of that military dining facility under the R-SA shall award a subcontract for those services.

6. In order to promote economic opportunities for blind vendors and to increase the number of blind persons who are self-supporting, the R-SA requires that State licensing agencies provide blind persons education, training, equipment and initial inventory suitable for carrying out their licenses to operate vending facilities in federal buildings. The Parties believe that the R-SA program should encourage to the maximum extent possible the employment of people who are blind. Accordingly, through its rule-making procedures ED will encourage State licensing agencies who assert the R-SA "priority" for a multi-facility contract for operation of military dining facilities to assign at least one blind person per military dining facility in a management role.

7. The DOD shall continue to be able to use the "Marine Corps model" for regional contracts for operation of military dining facilities at several installations or across State lines. In this model, the DOD may designate individual dining facilities for subcontract opportunities under the Small Business Act, JWOD or other preferential procurement programs, and may designate some facilities in which military food service specialists may train or perform cooking or other dining support services in conjunction with contractor functions. State licensing agencies are eligible under the R-SA to bid on contracts based upon this model.

8. METHOD OF AFFORDING THE RANDOLPH-SHEPPARD "PRIORITY."— Defense Department contracts for the operation of a military dining facility must be awarded as the result of full and open competition, unless there is a basis for direct negotiations (e.g., the only source available to provide the services is a State licensing agency, or an exception to the Competition in Contracting Act applies). When competing such contracts, contracting officers shall afford State licensing agencies a priority under the R-S Act when (1) the State licensing agency has demonstrated that it can provide such operation at a fair and reasonable price, with food of high quality comparable to that available from other providers of cafeteria services and comparable to the quality and price of food currently provided to military service members; and (2) the State licensing agency's final proposal revision, or initial proposal if award is made without discussions, is among the highly ranked final proposal revisions with a reasonable chance of being selected for award. In this context, the term "final proposal revision" is a reference to the description in FAR Subpart 15.307. The term "fair and reasonable price" means that the State licensing agency's final proposal revision does not exceed the offer that represents the best value (as determined by the contracting officer after applying its source selection criteria contained in the solicitation) by more than five percent of that offer, or one million dollars, whichever is less, over all performance periods required by the solicitation.

9. The contracting officer may award to other than the State licensing agency when the head of the contracting activity determines that award to the State licensing agency would adversely affect the interests of the United States and the Secretary of Education approves the determination in accordance with the R-SA.

10. The Parties will promptly implement complementary regulations reflecting the joint policy herein. In addition, the Parties believe that statutory changes as described in Attachment 1 will implement the joint policy regarding "no poaching." We believe these actions will significantly clarify and improve the application of JWOD and R-SA to military dining facilities contracts.