IN THE UNITED STATES COURT OF FEDERAL CLAIMS
(BID PROTEST)

| | | |
|---|---|---|
| COLORADO DEPARTMENT OF HUMAN SERVICES, DIVISION OF VOCATIONAL REHABILITATION, | ) | |
| and | ) | |
| STEVEN RIGHTSELL, | ) | |
| Plaintiffs, | ) | |
| | ) | No. 06-666C |
| v. | ) | |
| | ) | (Judge Miller) |
| THE UNITED STATES, | ) | |
| Defendant. | ) | |

**DEFENDANT'S SUPPLEMENTAL RESPONSE MEMORANDUM**

Pursuant this Court's order, dated October 26, 2006, defendant, the United States, respectfully submits its supplemental response memorandum discussing the significance of Labat-Anderson, Inc. v. United States, 346 F. Supp. 2d 145 (D.D.C. 2004), and LABAT-Anderson, Inc. v. United States, 65 Fed. Cl. 570 (2005) (hereinafter collectively referred to as "LABAT-Anderson") with respect to plaintiffs' contentions regarding the Court's jurisdiction to grant the relief.

LABAT-Anderson cannot be read for the proposition that a plaintiff does not need a "procurement" or "proposed procurement" in order to bring a bid protest. The Tucker Act expressly requires that a bid protest brought challenging "any alleged violation of statute or regulation" be " in connection with a procurement or a proposed procurement." 28 U.S.C. § 1491(b)(1). While the Federal Circuit in Ramcor Servs. Group, Inc. v. United States, 185 F.3d 1286, 1290 (Fed. Cir. 1999) stated that 1491(b)(1) "is very sweeping in scope . . . and does not require objection to the actual contract procurement," this does not mean that a plaintiff may bring a claim without an actual (or proposed) contract procurement, but rather provides that a plaintiff may challenge matters related to such procurement, without challenging the underlying procurement itself. Specifically, Ramcor Services Group involved a challenge to the override of

an automatic stay in a procurement protest filed with the General Accounting Office. Accordingly, there was a formal procurement involved, even if the case before the Court of Federal Claims was not directly challenging the procurement itself.

Similarly, all of the cases cited by LABAT-Anderson for the proposition that the Court had standing to review LABAT-Anderson's claims involved a procurement or proposed procurement. Specifically, Corel Corporation v. United States, 165 F. Supp.2d 12 (D.D.C. 2001) involved standardization of a computer programs at an agency (pursuant to a sole source procurement exception), to be procured by an indefinite delivery/indefinite quantity contract and an Government-wide agency contract with an outside contractor.[1] Phoenix Air Group, Inc. v. United States, 46 Fed. Cl. 90 (2000), involved the sole source procurement of flight training services from an outside vendor without competition. Finally, CCL, Inc. v. United States, 39 Fed. Cl. 780 (1997), the Government procured services by modifying a outside Government contractor's indefinite delivery/indefinite quantity contract without engaging in any competitive acquisition procedures. While in such instances there was no formal solicitation, there was at least some form of procurement. Indeed, the entire foci of these challenges was the anticompetitive nature of lack of a competitive procurement, rather than any lack of a procurement or proposed procurement.

LABAT-Anderson itself also revolved around a procurement of services from an outside vendor. Specifically, the Government terminated the protestor's contract in order to issue a procurement of the identical services from a different vendor. 346 F. Supp.2d at 154. The Government temporarily sought to utilize an emergency Interim Government Operation (without going through the OMB-Circular A-76 process), while it prepared for formal recompetition. Id. While the district court broadly characterized each step as a procurement or proposed

[1] The application of Corel Corporation v. United States, 165 F. Supp.2d 12 (D.D.C. 2001) to the present dispute is complicated by the fact that the district court first determined it had Federal question subject matter jurisdiction pursuant to Title 28, United States Code section 1331, before analyzing its possible jurisdiction pursuant to the Tucker Act. 165 F. Supp.2d at 22.

procurement (although it admitted that the decision to offer services in house was only "arguably" a procurement), each step was ultimately linked to the re-procurement from an outside vendor, and the court's logic cannot be sustained absent such re-procurement. The mere termination or expiration of a contract does not normally give rise to a bid protest, nor does the mere performance of services in-house. See ABF Freight System, Inc. v. United States, 55 Fed. Cl. 392, 397 (2003) ("The court does not see how a plaintiff asserting claims pertaining to a contract it has made with the government could be a "disappointed bidder for bid protest purposes."). It is only when such actions are specifically linked to a viable procurement or proposed procurement that a party has the standing to file a bid protest in this Court.

In contrast with such cases, the present scenario lacks any such procurement or viable proposed procurement. As clearly set forth in the record, plaintiffs' contract was not renewed because of budgetary reasons and not because the Government was to issue a re-procurement. AR 73-74, 79, 85-86; Welch Decl. The military dining facility that plaintiffs operated has been closed, and the program which allowed for the use of appropriated funds for such purpose was terminated. Accordingly, this situation is distinctly different from the OMB-Circular A-76 process that was discussed in LABAT-Anderson, in which the Government is taking an identical existing function in-house.[2]

At the same time as the expiration of plaintiffs' contract, Buckley Air Force Base began to discuss what, if anything, should be placed in the location vacated by the appropriated funds military dining facility. See Henline Decl. ¶ 7. No consideration was been given to contracting with outside vendors for the operation of any services within this space, nor has any solicitation been prepared. Henline Decl. ¶ 13. While the Government has been carefully studying the option of renovating the facility for some form of food service operations (without the use of appropriated funds), and is considering having this facility operated internally by a Government

[2] Further, the OMB-Circular A-76 cost comparison process does not apply to contracts for the operation of food services by Nonappropriated Fund Instrumentalities. AFI 38-203, ¶ 7.1 (July 19, 2001).

Nonappropriated Fund Instrumentality ("NAFI"), the Government's mere internal considerations do not yet rise to the level of a procurement or proposed procurement.[3] There is no contract or memorandum of understanding with the NAFI for operation of the facility, nor any draft contract or memorandum for the same. There is no final decision by a contracting officer or the base commander that a food services will be acquired internally. There are no blueprints for the renovation, no agreements regarding payment of the cost of renovations, and no contract for renovations. The furthest that the process has progressed is a restaurant validation analysis, which merely compiles the data that would allow for the Air Force to decide to permit the NAFI to operate food services at the closed facility. See AR 181-224. At best, Buckley Air Force Base has expressed some preferences, but mere preferences are not the same as a "procurement" or a "proposed procurement."

Plaintiffs argue that the Government has "awarded" a contract to its NAFI, permitting this Court to review its Randolph-Sheppard claims. Pl. Supp. Mem. 3-4. This supposed contract, however, has no connection to the operation of the facility or plaintiffs' claims. Specifically, the Air Force has negotiated the addition of the Buckley Air Force Base NAFI to the Air Force Services Agency Prime Vendor Food Contract.[4] This is a food and supplies contract which allows the Buckley Air Force Base NAFI to issue a delivery order for food items and supplies. It does not involve the operation of any facility, cafeteria, or other vending, or even provide an option to operate such facility. Indeed, plaintiffs do not and cannot challenge the addition of the Buckley Air Force Base NAFI to this contract; plaintiffs' claims are focused upon requiring the Government to contract with them to "operate" a "cafeteria," or otherwise engage in no

[3] The relief sought by plaintiffs demonstrates that they misapprehend the nature of any renovations. Any renovations would be paid for by the party that seeks to operate the new facility. The Government does not intend to expend appropriated funds for any renovation.

[4] In preparing this supplemental memorandum, the Government determined that the modification to the Air Force Services Agency Prime Vendor Food Contract was not included in the original administrative record. Accordingly, the Government is filing a motion to supplement the administrative record to include such document with this memorandum.

operations in the vacated space. There is, however, no viable procurement or proposed procurement for the "operation" of a "cafeteria," nor concrete plans for the use of the space to be challenged.

Alternatively, plaintiffs present a novel analysis of their situation, asserting that the Randolph-Sheppard Act is an "offer," and that the letter they sent to Buckley Air Force Base constituted an "acceptance," resulting in a "proposal" upon which the Government must act. Pl. Supp. Mem. 2. In this analysis, there is no need for a Government issued procurement or proposed procurement, since it is the vendor, and not the Government, that creates the proposed procurement. No case law, however, supports the proposition that the Randolph Sheppard Act as an open ended offer. Indeed, while the Act does provide priority for the operation of a cafeteria when a solicitation has been issued, it does not require the Government to issue a solicitation, does not apply to all food service operations. Plaintiffs implicitly acknowledge this later in their memorandum, when they note that the Government may issue a solicitation, negotiate with a state agency, or even seek a waiver of the Randolph-Sheppard Act.

Further, as noted above, plaintiffs claims are distinguishable from those in LABAT-Anderson in that plaintiffs cannot be considered "incumbent contractors." In LABAT-Anderson, the plaintiff's contract had expired, and the Government sought to take the identical operations in-house, then contract out for such services at a later date. In the present case, the plaintiffs previously operated an appropriated funds military dining facility. Plaintiffs' contract expired and was not renewed for strictly budgetary reasons. There are no plans to operate another appropriated funds military dining facility. Indeed, any renovations or operations currently being considered by the Government for the space vacated by the plaintiffs will not involve the use of appropriated funds. Food services are being considered, but such operations would significantly differ from plaintiffs' operations. As noted in our initial brief, at this time it is unclear as to the form that such food service operations, if any, would take.

If anything, plaintiffs' claims in this case are closer to those of the plaintiff in Alaska Central Express, Inc. v. United States, 50 Fed. Cl. 510 (2001), than those of the plaintiff in LABAT-Anderson. In Alaska Central Express, Inc., a small airlines contract with the Postal Service for the delivery of mail was canceled. Id. at 513-14. Filing its action as a "bid protest" pursuant to 28 U.S.C. § 1491(b)(1), the airline requested an injunction essentially "reinstating it" a mail carrier. Id. Much like the plaintiffs in this case, the airline asserted a "quasi-entitlement" to a contract based upon its interpretation of statute. Noting that "no solicitation or request for proposals [had] taken place, or that no bid or competitive proposal [had] been tendered," the Court dismissed the airline's claim for lack of jurisdiction. Id. at 516. According to the court, "[s]tanding under section 1491(b)(1) is 'limited to actual or prospective bidders or offerors whose direct economic interest would be affected by the award of the contract or by failure to award the contract.' Plaintiff is not a bidder or offeror." Id. at 519; see also Motorola Inc. v. United States, 988 F.2d 113, 114-15 (Fed. Cir. 1993).

Finally, any analysis of plaintiffs standing as an "interested party" necessarily hinges upon the status of subsequent operations, which remain unsettled and unripe for review. LABAT-Anderson did not analyze when a plaintiff's claim become "ripe" for review. Contrary to plaintiffs' erroneous assertions, the Government has not entered into any contract or memorandum with a NAFI for goods and services. The Government has added the NAFI onto its food supply contract, but this creates no obligations upon the part of either the Government or the NAFI to operate non-appropriated fund food services at Buckley Air Force Base. Any ruling by this Court would either be a ruling upon the expiration of a contract, or upon a set of hypothetical procurements, that have not yet risen to the level of a viable "proposed procurement." However, "[t]he oldest and most consistent thread in the federal law of justicability is that the federal courts will not give advisory opinions." CHARLES ALAN WRIGHT, ET AL., FED. PRAC. & PROC. § 2753 (West 2004). "[A]s an Article III tribunal, [the Court of Federal Claims] has no constitutional authority to grant an advisory opinion." Etowah

Manufacturing Co., Inc. v. United States, 215 Ct. Cl. 1067 (1978) (citing United States v. Testan, 424 U.S. 392 (1976); United States v. King, 395 U.S. 1 (1969)).

For these reasons and the reasons set forth in our response brief, we respectfully request that plaintiffs' compliant be dismissed for lack of standing.

**CONCLUSION**

For these reasons, defendant respectfully requests that its motion to dismiss be granted and that plaintiffs' complaint be dismissed.

Respectfully submitted,

PETER D. KEISLER
Assistant Attorney General

DAVID M. COHEN
Director

/s/ Todd M. Hughes
TODD M. HUGHES
Assistant Director

/s/ Steven M. Mager
STEVEN M. MAGER
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
1100 L Street, N.W.
Attn: Classification Unit, 8th floor
Washington, D.C. 20530
Tele: (202) 616-2377
Fax: (202) 305-7643
steven.mager@usdoj.gov

November 15, 2006

Attorneys for Defendant

**CERTIFICATE OF FILING**

I hereby certify that upon this 15th day of November, 2006, a copy of the foregoing "DEFENDANT'S SUPPLEMENTAL RESPONSE MEMORANDUM" was filed electronically. I understand that notice of this filing will be sent to all parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Steven M. Mager
Steven M. Mager
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice